**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

UNITED STATES OF AMERICA,

        *Plaintiff*,

    *v.*

ANTHONY ALBENCE, in his official
capacity as State Election Commissioner of
the State of Delaware,

        *Defendants.*

Case No. 25-cv-01453-RGA

---

<u>**BETHANY JENNINGS AND GEMMA LOWERY'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE AS DEFENDANTS**</u>

Elisabeth C. Frost*
Jacob D. Shelly*
Kevin Kowalewski*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Tel: (202) 968-4490
efrost@elias.law
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law

\* *Pro hac vice* applications forthcoming

DATED: December 18, 2025

Mark M. Billion (DE Bar No. 5263)
**BILLION LAW**
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: (302) 428-9400
markbillion@billionlaw.com

*Attorneys for Proposed Intervenors
Bethany Jennings and Gemma Lowery*

**TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

I.     Federal law has long made voter list maintenance a state responsibility, consistent
       with the constitutional separation of powers. ..................................................... 3

II.    The Department of Justice has embarked on an unprecedented campaign to collect
       personal voter registration data held by the states. ............................................ 4

III.   The Department of Justice sues Delaware to obtain its complete voter registration
       list........................................................................................................................ 6

IV.    Proposed Intervenors' sensitive personal information is placed in jeopardy by
       DOJ's demands. ................................................................................................... 7

LEGAL STANDARD.................................................................................................... 10

ARGUMENT ................................................................................................................. 11

I.     Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2)............... 11

       A.     This motion is timely. ............................................................................. 11

       B.     Proposed Intervenors have an interest in protecting their sensitive and
              personal information from improper disclosure to DOJ. ...................... 12

       C.     The existing parties do not adequately represent Proposed Intervenors............... 14

II.    Alternatively, Proposed Intervenors should be granted permissive intervention. ............ 17

CONCLUSION............................................................................................................... 19

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*1789 Found. Inc. v. Fontes*,
  No. CV-24-02987-PHX-SPL, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) ..................... 18

*Alabama ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) ................................................................. 7

*Am. Farm Bureau Fed'n v. EPA*,
  278 F.R.D. 98 (M.D. Pa. 2011)....................................................................... 12

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013)......................................................................................... 3

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) ..................................................................... 16

*Bellitto v. Snipes*,
  No. 16-CV-61474, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016) ................................. 16

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
  701 F.3d 939 (3d Cir. 2012)........................................................................... 11

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022)................................................................................ 2, 15

*Bone v. XTO Energy, Inc.*,
  No. CV 21-1460, 2023 WL 5431139 (D. Del. Aug. 23, 2023) ............................... 11, 14

*Brennan v. N.Y.C. Bd. of Educ.*,
  260 F.3d 123 (2d Cir. 2001)........................................................................... 16

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
  No. 18 CIV. 11657, 2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020) ................................. 18

*CogniPower LLC v. Fantasia Trading, LLC*,
  No. CV 19-2293-CFC, 2021 WL 327389 (D. Del. Feb. 1, 2021) ................................... 17

*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*,
  54 F.3d 156 (3d Cir. 1995)............................................................................. 14

*Foster v. Love*,
  522 U.S. 67 (1997)....................................................................................... 3

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ....................................................................... 14

*H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*,
  797 F.2d 85 (2d Cir. 1986) ............................................................................. 18

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
  2005 WL 2465898 (D. Del. May 18, 2005) ..................................................... 18

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018) ......................................................................................... 3

*In re Chocolate Confectionary Antitrust Litig.*,
  No. Civ.A. 1:08MDL1935, 2008 WL 4960194 (M.D. Pa. Nov. 18, 2008) ..................... 14

*In re Sealed Case*,
  237 F.3d 657 (D.C. Cir. 2001) ....................................................................... 13

*Indian River Recovery Co. v. The China*,
  108 F.R.D. 383 (D. Del. 1985) ....................................................................... 12

*Intell. Ventures I LLC v. AT&T Mobility LLC, No.*,
  CV 12-193-LPS, 2014 WL 4445953 (D. Del. Sept. 8, 2014) ........................... 17

*Kalbers v. U.S. Dep't of Just.*,
  22 F.4th 816 (9th Cir. 2021) .................................................................... 13, 14

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ........................................................................... 7

*Kitzmiller v. Dover Area Sch. Dist.*,
  229 F.R.D. 463 (M.D. Pa. 2005) ..................................................................... 17

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998) .............................................................. 11, 15, 16

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
  659 F.3d 421 (5th Cir. 2011) ......................................................................... 13

*League of Women Voters of N.C. v. North Carolina*,
  No. 1:13CV660, 2014 WL 12770081 (M.D.N.C. Jan. 27, 2014) ..................... 18

*Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc., /SRF*,
  2015 WL 5163035 (D. Del. Sept. 3, 2015) ..................................................... 13

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) .................................................................................. 12

*Pennsylvania v. President U.S.*,
    888 F.3d 52 (3d Cir. 2018) ....................................................................... 12, 14, 16

*Powell v. Benson*,
    No. 20-CV-11023, 2020 WL 5229104 (E.D. Mich. Sept. 2, 2020) ................................. 13

*Pub. Int. Legal Found., Inc., v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) .................................................................. 18

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ............................................................................... 3

*Select Retrieval LLC v. AmeriMark Direct LLC*,
    No. CV 11-812-RGA, 2013 WL 3381324 (D. Del. July 3, 2013) ................................... 12

Minute Order, *United States v. Bellows*,
    No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025), ECF No. 49 ...................................... 2

*United States v. Benson*,
    No. 1:25-cv-01148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) ..................... 2, 13, 15

Minute Order, *United States v. Oliver*,
    No. 1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025), ECF No. 9 .................................... 2

*United States v. Oregon*,
    No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) ............................. 2, 13, 16

Minute Order, *United States v. Weber*,
    No. 2:25-cv-09149 (C.D. Cal. Nov. 24, 2025), ECF No. 70 ......................................... 17

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. art. I, § 4, cl. 1 ....................................................................................... 3

52 U.S.C. § 1305 ................................................................................................. 2, 12

52 U.S.C. § 20501(b) ................................................................................................ 3

52 U.S.C. § 20507(a) ................................................................................................ 3

52 U.S.C. § 20507(g) ................................................................................................ 3

52 U.S.C. § 21083(a) ................................................................................................ 4

15 Del. C. § 304(h) ......................................................................................................... 2

Fed. R. Civ. P. 24(a) ...................................................................................................... 2

Fed. R. Civ. P. 24(b) ............................................................................................. 11, 17

**Other Authorities**

Delaware Elections, *About Agency*, Delaware.gov,
    https://elections.delaware.gov/aboutagency.shtml........................................... 16

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
    Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD ........................... 4

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
    Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD ......................... 4

H.R. Rep. 86-956 (1959)................................................................................................ 7

*Justice Department Sues Four Additional States and One Locality for Failure to Comply
    with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025),
    https://perma.cc/2WYV-SRQP ...................................................................... 6

*Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration
    Rolls*, U.S. Dep't of Just. (Sept. 16, 2025), https://perma.cc/2F92-EEXT ....................... 6

*Justice Department Sues Six Additional States for Failure to Provide Voter Registration
    Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/3C7K-MXQC ....................... 6

*Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S.
    Dep't of Just. (Sept. 25, 2025), https://perma.cc/PE2W-7F9J ........................... 6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department
    Requests for Voter Information*, Brennan Center for Justice (Dec. 5, 2025),
    https://perma.cc/W66R-UJXN ...................................................................... 4

Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*,
    N.Y. Times (Aug. 26, 2025), https://perma.cc/ZB7V-R645 ............................... 8

Nick Corasaniti, *Election Officials Press Trump Administration Over Election Data*, N.Y.
    Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-
    officials-trump-voter-data.html........................................................................ 8

## NATURE AND STAGE OF THE PROCEEDINGS

On December 2, 2025, the U.S. Department of Justice filed this suit against the State Election Commissioner of the State of Delaware, Anthony Albence.  D.I. 1. Plaintiff filed a motion to compel production of Delaware's voter records the same day. D.I. 3, 4. Defendant has not yet appeared or answered or otherwise responded to the Complaint, and no schedule has been issued.

## SUMMARY OF ARGUMENT

1.  The U.S. Department of Justice recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. Although nearly all of the states that have received this demand have refused to turn over confidential voter information protected by state law, DOJ has initiated a series of lawsuits against a subset of these states, seeking to judicially compel their compliance. Among the newest tranche of these lawsuits is this one, which DOJ initiated against Defendant, the State Election Commissioner, on December 2, 2025. As in the nearly identical lawsuits that DOJ brought against more than a dozen states before it, DOJ asks this Court to compel the production of Delaware's complete and unredacted voter registration list, including sensitive and private information about every voter in the state. Unlike in several of its earlier lawsuits, however, DOJ has abandoned two of its prior three claims, and now alleges only that it is entitled to this information under the Civil Rights Act of 1960, purportedly to investigate suspected violations of two other federal laws: the NVRA and HAVA. DOJ's claim is meritless and this assault intrudes not only on Delaware's constitutional prerogative to maintain and protect its own voter registration list but also on the privacy of individual Delaware voters who have good reason to fear their personal information being handed over to the federal government.

2.  Accordingly, Bethany Jennings and Gemma Lowery (together, "Proposed Intervenors")

1

move to intervene in this suit to defend against the federal government's overreach. They seek to protect their privacy rights and prevent the improper disclosure of their sensitive and personal information to DOJ. Delaware law expressly shields sensitive voter information like social security and driver's license numbers from public disclosure. 15 Del. C. § 304(h), (i); *id.* § 1305. DOJ's requested relief would run roughshod over these privacy protections.

3.    Proposed Intervenors are entitled to intervention as of right because they have significant interests that are at serious risk of impairment by this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). In particular, they have an interest in ensuring that their own sensitive and personal information is not improperly disclosed to DOJ. While Defendant has thus far resisted making any unlawful disclosures, Defendant has not issued a blanket refusal. As a governmental defendant, the Election Commissioner must consider the "broader public-policy implications" of the issues presented in this suit, while Proposed Intervenors are solely concerned with protecting their privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)). Recognizing this tension, multiple other federal courts have granted intervention as of right to similarly situated parties in DOJ's parallel suits in other states. *See United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025); *United States v. Benson*, No. 1:25-cv-01148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025).[1]

4.    Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b). Doing so will ensure that Delaware voters have a voice in this litigation, which ultimately

---

[1] Other courts have granted motions to intervene by similar parties in these cases where intervention, like here, was unopposed. *See* Order, *United States v. Oliver*, No. 1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025), ECF No. 9; Order, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025), ECF No. 49.

concerns the disclosure of their sensitive and personal information.

Counsel for Proposed Intervenors made a reasonable effort to reach agreement with Plaintiff and Defendant on the matters set forth in this motion. Plaintiff takes no position on the motion. Defendant does not oppose the motion.

## STATEMENT OF FACTS

**I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states primary responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of*

*Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added).

## II.    The Department of Justice has embarked on an unprecedented campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter such as date of birth, driver's license number, and social security number. To date, DOJ has sent demands to at least forty states, with plans to make similar demands on all fifty.[2] It seeks to use the data to create a national voter database that will, in turn, be used to try and substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[3] The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[4]

Nevertheless, as part of that campaign, DOJ sent Delaware a letter on July 11, 2025, demanding, among other things, Delaware's "statewide voter registration list." Compl. ¶ 19, D.I.

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (Dec. 5, 2025), https://perma.cc/W66R-UJXN; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[3] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD.

[4] *See* Martinez-Ochoa, O'Connor & Berry, *supra* note 1 (reporting that thus far only two states—Indiana and Wyoming—appear to have given DOJ everything it sought).

1; *see also* D.I. 4-1. Defendant, the State Election Commissioner, responded on July 25 that the State would "fully respond[] to the requests and issues raised by [the] July Letter, in a manner consistent with Delaware's obligations under the NVRA and its duties under Delaware law, in due course." D.I. 4-2 at 1. On August 14, DOJ reiterated its requests, demanding that Delaware produce "all fields" from its voter registration database, including each registrant's "state driver's license number or the last four digits of the registrant's social security number." D.I. 4-4 at 1.

On August 15, Defendant responded with a ten-page letter, carefully answering each of the questions posed by DOJ's July 11 inquiry regarding Delaware's procedures for keeping accurate voter rolls. *See* D.I. 4-5. Though Defendant expressed "willing[ness] to provide a copy of Delaware's public voter registration list," it stopped short of promising to provide "sensitive, personally identifying information (such as social security numbers)," and reiterated its request for "clarification" "as to the application of the 1976 Privacy Act upon the Federal Department of Justice's receipt, storage, and maintenance of the personal information stored within the public version of Delaware's voter registration." D.I. 4-5 at 8–9. The letter went on to state that Delaware would "evaluat[e] the legal authority" previously provided by DOJ, and that Delaware would "further respond" to those arguments and DOJ's requests "in due course." D.I. 4-5 at 9.

Defendant sent a second letter to DOJ on September 16. D.I. 4-6. It stated that Defendant would not "comply with [DOJ's] request for a list of Delaware voters, sortable by political party, locatable by address, and cross-referenceable by social security number and drivers' license number, until" Defendant could "understand how" to "do so in a lawful manner." D.I. 4-6 at 4. The letter also made clear that the State's "full version" of its registration list "does not contain all of the information fields" requested by DOJ. D.I. 4-6 at 8.

Around the same time as DOJ was making these demands of Delaware, it made similar demands to scores of other states, the vast majority of which have refused to turn over highly sensitive personal voter information. Beginning in September 2025, DOJ began filing lawsuits against some—but not all—of these states. On September 16, DOJ brought actions against Oregon and Maine, alleging in both cases that DOJ was entitled to the information it sought under three statutes: the NVRA, HAVA, and the Civil Rights Act of 1960.[5] On September 25, DOJ filed another set of lawsuits, this time against California, Michigan, Minnesota, New York, New Hampshire, and Pennsylvania.[6] Again, DOJ brought its claims under all of these same three statutes, excepting only the NVRA claim in states that are exempt from the NVRA.

## III.    The Department of Justice sues Delaware to obtain its complete voter registration list.

On December 2, DOJ announced that it had sued a third group of states—Delaware, Maryland, New Mexico, Rhode Island, Vermont, and Washington.[7] As in the prior suits against other states, DOJ seeks to compel Delaware to provide its full statewide voter registration list "with all fields," including either voters' "state driver's license number, or the last four digits of their Social Security number." Prayer for Relief, Compl. Unlike the earlier suits, however, DOJ alleges only one claim, asserted under Section 303 of the Civil Rights Act of 1960. Although DOJ claims that it is doing so to evaluate Delaware's list-maintenance efforts under the NVRA and HAVA, *see e.g.*, Compl. ¶ 19, it does not bring a claim under either of those statutes.

---

[5] *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025), https://perma.cc/2F92-EEXT.

[6] *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/PE2W-7F9J.

[7] *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/3C7K-MXQC. Ten days later, DOJ also sued four additional states: Colorado, Hawaii, Massachusetts, and Nevada. *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025), https://perma.cc/2WYV-SRQP.

Section 303 is a Civil Rights-era law that permits DOJ to review certain records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted Section 303 to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom*. *Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961).

DOJ, however, admits that it is *not* seeking to enforce the laws that Section 303 is meant to facilitate nor is it investigating the unconstitutional denial of the right to vote. Instead, DOJ claims to be evaluating Delaware's NVRA and HAVA compliance, but those laws have their own separate procedures and enforcement mechanisms. Section 303 is not a roving authorization for the federal government to demand any voter information it wants from any state for any purpose the federal government can conceivably concoct. Accordingly, Section 303 does not require the disclosure DOJ seeks here.

## IV. Proposed Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands.

Proposed Intervenors include civically-engaged, registered Delaware voters, Bethany Jennings and Gemma Lowery, who seek to participate in this litigation in their capacities as impacted voters, and who are very concerned that their sensitive and personal information will be disclosed to DOJ if its efforts prevail, *see* Declaration of Bethany Jennings ("Jennings Decl."); Declaration of Gemma Lowery ("Lowery Decl."). Delaware law guarantees voters like Lowery and Jennings that the sensitive personal information they disclose when registering to vote—such

as driver's license numbers and partial social security numbers—"shall not be subject to []
inspection." 15 Del. C. § 1305(a).

In addition to defending their privacy interests, Proposed Intervenors have well-founded
concerns about DOJ's intended use of their sensitive personal voter information. These concerns
are especially acute given that they hold political views and engage in civic activities disfavored
by the current presidential administration, which has repeatedly disregarded privacy protections
over sensitive personal data.[8] *See* Jennings Decl. ¶ 10; Lowery Decl. ¶ 9.

**Bethany Jennings.** Bethany Jennings has been a registered Delaware voter since 2023.
Jennings Decl. ¶ 2. Ms. Jennings is an Associate Professor of Law at Delaware Law School and
Director of Delaware Law School's Legal Information Center. Jennings Decl. ¶ 3. Prior to entering
academia, Ms. Jennings represented LGBTQIA+ clients in private practice in the areas of family
law, estate planning, and legal gender marker and name changes. Jennings Decl. ¶ 4. Ms. Jennings
is civically engaged in her community; she regularly expresses her political views by attending
political rallies and protests like the "No Kings Rally," interacts with her elected representatives,
and strongly believes in the importance of voting. Jennings Decl. ¶ 5.

Ms. Jennings is worried about the implications of DOJ's lawsuit to obtain Delaware's voter
information—including her own; any disclosure of her personal, sensitive information will harm

---

[8] Public reports have indicated, for example, that the Department of Government Efficiency
(DOGE) placed the security of millions of Social Security numbers at risk through improper
maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-
Blower Says*, N.Y. Times (Aug. 26, 2025), https://perma.cc/ZB7V-R645. Election officials from
multiple states have publicly questioned whether the Trump Administration misled them regarding
the purpose of its requests for voter information, citing reports that DOJ had shared voter
information with the Department of Homeland Security. *See* Nick Corasaniti, *Election Officials
Press Trump Administration Over Election Data*, N.Y. Times (Nov. 18, 2025),
https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html.

her as a Delaware voter. Jennings Decl. ¶ 9. When Ms. Jennings registered to vote, she trusted Delaware to safeguard her personal, confidential information. Jennings Decl. ¶ 7. But Ms. Jennings does not share that same faith in the federal government; she is worried that DOJ will not maintain appropriate procedures to protect her voter data from nefarious actors, and that these disclosures will put her at a greater risk of identity theft. Jennings Decl ¶¶ 7, 9. This issue hits home for Ms. Jennings: she has received numerous notifications from an information services company that her personal information was subject to data breaches. Jennings Decl. ¶ 8. And she has done what she can to safeguard her information—when she moved to Delaware from Utah, she paid for a commercial service to remove her personal information from publicly available websites. Jennings Decl. ¶ 8.

Ms. Jennings has no faith that the federal government will use voter information for the limited purposes for which she disclosed it. Jennings Decl. ¶ 10. As a professor who holds political beliefs at odds with the current presidential administration, Ms. Jennings is worried that the federal government will use sensitive voter data and voter history to target citizens, including herself, for their free expression. Jennings Decl. ¶ 10. This breach of privacy will be detrimental to her level of civic engagement, including her willingness to engage in protected speech at political rallies and protests. Jennings Decl. ¶ 10.

**Gemma Lowery.** Gemma Lowery has been a registered Delaware voter for approximately 40 years. Lowery Decl. ¶ 2. She is also civically engaged in her local community and regularly expresses her political views by supporting and volunteering for political campaigns. Lowery Decl. ¶ 3. Ms. Lowery is also involved with several local organizations that promote civic engagement and electoral participation, such as Indivisible Highlands and Beyond, and Delaware Women for Inclusion. Lowery Decl. ¶ 3. She helps organize and attend events and protests, and encourages

people in her network to be politically engaged by using social media. Lowery Decl. ¶ 3. She also helps people register to vote, drives them to polling places, and volunteers to answer election hotline calls from people who are trying to exercise their voting rights. Lowery Decl. ¶ 4.

Ms. Lowery trusts her state officials to safeguard her unredacted voter file information, but she does not have that same level of trust in the federal government. Lowery Decl. ¶ 5. As someone who previously received notification that her personal data suffered a security breach, Ms. Lowery strongly believes that if DOJ is successful in obtaining the information it seeks in this litigation, it will harm her personally as a Delaware voter because the federal government will not take precautions to keep that data secure, and will not use that information solely for the limited purposes for which she disclosed it to her state officials. Lowery Decl. ¶¶ 6–7.

Ms. Lowery is further concerned about the underlying reason why the federal government wants this information to begin with. Ms. Lowery has seen reporting about federal agencies improperly sharing personal information and believes that the current Presidential administration will target political opponents with investigations, termination of employment, and even criminal prosecution. Lowery Decl. ¶ 9. She is also concerned that if Delaware releases its sensitive voter information, it will be "much harder" for her to convince members of her community to engage in political expression and the electoral process. Lowery Decl. ¶ 10. She fears that the chilling effect may be especially strong for young Delawareans who may be registering to vote for the first time, and that some of these potential voters will decide not to register at all to protect this personal information. Lowery Decl. ¶ 10. She is also concerned that losing young voters will have lasting effects on the future of democratic participation in Delaware. Lowery Decl. ¶ 10.

## LEGAL STANDARD

The Third Circuit has "interpreted Rule 24(a)(2) to require proof of four elements from the

applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). Alternatively, a nonparty may be permitted to intervene under Rule 24(b) if it has submitted a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).[9]

## ARGUMENT

### I.    Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).

#### A.    This motion is timely.

Proposed Intervenors' motion is timely. "To determine whether [an] intervention motion is timely," courts in the Third Circuit consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 939, 949 (3d Cir. 2012) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)). DOJ filed suit on December 2, and this motion follows just a little over two weeks later—before any case schedule has been set, before any Defendants have appeared or answered, and while this case remains at the preliminary stage. *See Bone v. XTO Energy, Inc.*, No. CV 21-1460, 2023 WL 5431139, at *3 (D. Del. Aug. 23, 2023) (recognizing intervention motion as timely "because discovery . . . ha[d] not

---

[9] Proposed Intervenors submit a Proposed Answer as required by Rule 24, *see* Ex. A, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

yet commenced"); *Select Retrieval LLC v. AmeriMark Direct LLC*, No. CV 11-812-RGA, 2013 WL 3381324, at *2 (D. Del. July 3, 2013) (same where motion filed less than four months after scheduling order). Granting intervention would not alter any existing deadlines, and Proposed Intervenors will abide by any future deadlines set by the Court or agreed to by the existing parties; there is no conceivable prejudice to any existing party. *See Mountain Top Condo. Ass'n*, 72 F.3d at 370 (finding no prejudice where "there were no depositions taken, dispositive motions filed, or decrees entered during the four year period in question"). Proposed Intervenors satisfy the timeliness factor for intervention as of right.

**B.    Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ.**

To satisfy the second and third elements of Rule 24(a)'s test, "the Supreme Court has held that an applicant must assert an interest that is significantly protectable" by "demonstrat[ing] that its interest is specific to it, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Pennsylvania v. President U.S.*, 888 F.3d 52, 58 (3d Cir. 2018) (cleaned up) (citations omitted). Satisfying this requirement is less demanding than establishing an Article III injury-in-fact because "[a]n intervenor need not have standing." *Indian River Recovery Co. v. The China*, 108 F.R.D. 383, 386 (D. Del. 1985); *see Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 107 n.3 (M.D. Pa. 2011) (collecting authority).

Proposed Intervenors satisfy that standard here. Jennings and Lowery have protectable privacy interests in maintaining the confidentiality of their sensitive identifying information. Jennings Decl. ¶¶ 7–9; Lowery Decl. ¶¶ 5–8. They strenuously oppose the release of such information—which is protected from disclosure by state law, 15 Del. C. § 1305. *See generally* Jennings Decl.; Lowery Decl. They are also credibly concerned about the consequences of the

disclosure of their sensitive information to DOJ, both because of the potential risk of data breaches that would expose them to identify-theft scams, and because of the potential for retaliation by the federal government against voters who engage in political advocacy work disfavored by the current administration. Jennings Decl. ¶¶ 7–10; Lowery Decl. ¶¶ 5–9.

Proposed Intervenors' concerns about the confidentiality and privacy of their sensitive information constitute a legally protectible interest that supports intervention: "Courts have found that the threat of disclosure of confidential or privileged information constitutes an interest that may be affected and impaired." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. CV 14-874-SLR/SRF, 2015 WL 5163035, at *2 (D. Del. Sept. 3, 2015) (collecting cases); *see also Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records). Just in the past several weeks, two district courts agreed in granting intervention to voters and organizations that represent voters in similar DOJ-filed suits in Oregon and Michigan. *See Oregon*, 2025 WL 3496571, at *1–2; *Benson*, 2025 WL 3520406, at *3–5.[10]

Disclosure of Proposed Intervenors' confidential information would impair their interests. Once their information is handed over to DOJ, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (citation omitted) (finding impairment when intervenor's confidential information was

---

[10] The fact that Proposed Intervenors' privacy interests implicate the right to vote bolsters the interest here as well, as voters have a substantial interest in preserving their "right to vote privately," *Powell v. Benson*, No. 20-CV-11023, 2020 WL 5229104, at *5 (E.D. Mich. Sept. 2, 2020), and in ensuring that their right to vote is not unlawfully burdened, *e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding voting right interest was "a sufficient interest to satisfy Rule 24(a)(2)").

at risk of disclosure); *see Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995) (observing that impairment focuses upon the "practical consequences of the litigation"); *Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). DOJ's demand for Proposed Intervenors' confidential information is thus "antithetical" to Proposed Intervenors' "efforts to maintain the confidentiality" of that information. *In re Chocolate Confectionary Antitrust Litig.*, No. Civ.A. 1:08MDL1935, 2008 WL 4960194, at *1 (M.D. Pa. Nov. 18, 2008).

### C.    The existing parties do not adequately represent Proposed Intervenors.

Proposed Intervenors cannot be assured adequate representation from the existing parties if they are denied intervention. "[A]n applicant's interests are not adequately represented if they diverge sufficiently from the interests of the existing party, such that the existing party cannot devote proper attention to the applicant's interests." *President U.S.*, 888 F.3d at 60 (cleaned up). A proposed intervenor "need only show that 'representation of his interest '*may be*' inadequate." *Bone*, 2023 WL 5431139, at *5 (quoting *Mountain Top*, 72 F.3d at 368). "[T]he burden of making that showing should be treated as minimal." *Id.* (quoting *Mountain Top*, 72 F.3d at 368).

The existing parties—all government actors—do not adequately represent Proposed Intervenors' interests. DOJ, for one, seeks to forcibly compel production of Delaware's unredacted state voter registration list and protected information, which will directly impair Proposed Intervenors' interests. Though Defendant has not yet acquiesced to these demands, Defendant does adequately represent Proposed Intervenors' interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government

defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler*, 157 F.3d at 972. As such, Proposed Intervenors' burden to show a prospect of inadequate representation is "comparatively light." *Id.*

The Supreme Court recently emphasized this very point in *Berger*. *See* 597 U.S. at 196. Public officials, the Court explained, must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Id.* (quoting *Trbovich*, 404 U.S. at 538–39). That means courts should not conduct the adequacy-of-representation analysis at too "high [a] level of abstraction." *Id.* Even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* (citation omitted). Even if Defendant also opposes the relief that DOJ seeks at a high level of abstraction, it does not follow that Defendant shares "identical" interests to private individual voters committed to voter engagement and turnout. *See id.*

Here, Defendant State Election Commissioner and Proposed Intervenors do not share "identical" interests. While Delaware has not yet acquiesced to DOJ's demand, Defendant has not closed the door entirely. Defendant stated he would "comply with [DOJ's] request for a list of Delaware voters, . . . cross-referenceable by social security number and drivers' license number" if it could be done "in a lawful manner." D.I. 4-6 at 4. As the District Court for the Eastern District of Michigan recently noted in its order granting intervention under nearly identical circumstances, a State's litigation position "could shift at any time." *Benson*, 2025 WL 3520406, at *6. That is partly because Defendant, a government officer, is required to enforce the NVRA and HAVA, in addition to state laws governing voter-roll maintenance. Indeed, the NVRA requires Defendant to

15

"balance competing objectives" of maintaining accurate and current voter rolls with access to the ballot box. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). Thus, by definition, Defendant has an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-CV-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests).

The Delaware State Board of Elections is also a bipartisan body, meaning it must balance its own members' competing views. Delaware Elections, *About Agency*, Delaware.gov, https://elections.delaware.gov/aboutagency.shtml. Though the Board is not a named party in this lawsuit, Defendant is an "ex officio member of the State Board of Elections." *Id.*; *see also* D.I. 4-5 at 1. Defendant and the Board are reliant on federal dollars to administer elections, which provides an "interest in bringing [this] litigation to an end by settlement[]." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 133 (2d Cir. 2001). Under these circumstances, adequate representation of Proposed Intervenors' interests is hardly "assured." *Id.* (explaining this factor is met where parties' interests are not "so similar" as to assure adequacy of representation). As the district court in DOJ's Oregon litigation put it, the State has "broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenors would not make." *Oregon*, 2025 WL 3496571, at *2.

Unlike Defendant, Proposed Intervenors are focused entirely on maintaining the privacy of their sensitive personal information, whereas Defendant's competing obligations may incline the State to acquiesce to DOJ's demands. *See President U.S.*, 888 F.3d at 61 (finding inadequate representation when government had "numerous complex and conflicting interests" (quoting *Kleissler*, 157 F.3d at 973)). Proposed Intervenors have "a much stronger incentive" than

Defendant "to litigate this case to a judgment that would protect most fully" their own privacy interests. *CogniPower LLC v. Fantasia Trading, LLC*, No. CV 19-2293-CFC, 2021 WL 327389, at *2 (D. Del. Feb. 1, 2021); *see also Intell. Ventures I LLC v. AT&T Mobility LLC*, No. CV 12-193-LPS, 2014 WL 4445953, at *2 (D. Del. Sept. 8, 2014) (granting intervention where, although "Defendants maintain[ed] similar interests as Intervenors, they [were] not as well-situated to understand and defend" them).

Ultimately, the government entities and public officials on both sides of the case do not stand in the same shoes as Proposed Intervenors and thus do not sufficiently represent their interests, which are directly impacted by this matter's disposition.

## II.   Alternatively, Proposed Intervenors should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Proposed Intervenors satisfy Rule 24(b) because they assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b); *see also* Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 24, 2025), ECF No. 70 (granting permissive intervention in similar DOJ-filed suit). Proposed Intervenors have moved promptly and will abide by any schedule set by the Court or agreed to by the original parties; there will be no delay or prejudice. Proposed Intervenors' defense also requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. A (Proposed Answer).

Furthermore, under Rule 24(b), courts may "consider whether the proposed intervenors will add anything to the litigation." *Kitzmiller v. Dover Area Sch. Dist.,* 229 F.R.D. 463, 471 (M.D. Pa. 2005). Jennings and Lowery stand in different shoes than Defendant and are the only parties that give voice to the voters who are at risk of having their sensitive information disclosed as a consequence of DOJ's suit. *See supra* Argument § I.C. Proposed Intervenors will provide the Court

with a distinct viewpoint unencumbered by Defendant's obligations to balance competing policy objectives. *Cf. Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. CIV.A. 04-1337-KAJ, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (granting intervention where intervenor was "uniquely situated to understand and defend its own product"). The harms vulnerable voters face and the arguments that they advance will certainly contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (citing *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *see also Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, No. 18 CIV. 11657 (ER), 2020 WL 1432213, at *8 n.9 (S.D.N.Y. Mar. 24, 2020) (explaining the "unique perspective" of people "directly impacted" by challenged action and organizations serving such people would "greatly contribute to the Court's understanding of th[e] case" (citation omitted)). It is for these reasons that courts routinely grant permissive intervention to individual voters (or organizations representing them) to ensure their voices are heard when litigation implicates the rights of all voters. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc., v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (voting rights organizations); *League of Women Voters of N.C. v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (individual voters).

Because Proposed Intervenors' participation will assist rather than prejudice the efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that Proposed Intervenors may intervene as of right.

18

## CONCLUSION

For all of the foregoing reasons, Proposed Intervenors respectfully request that the Court grant them intervention as of right—or in the alternative, grant permissive intervention—to allow them to protect their sensitive personal information from disclosure.

December 18, 2025

Elisabeth C. Frost*
Jacob D. Shelly*
Kevin Kowalewski*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Tel: (202) 968-4490
efrost@elias.law
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law


*Pro Hac Vice* Applications Forthcoming

*Attorneys for Proposed Intervenors*
*Bethany Jennings and Gemma Lowery*

Respectfully submitted,

*/s/ Mark M. Billion*
Mark M. Billion
**BILLION LAW**
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: (302) 428-9400
markbillion@billionlaw.com