**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>  v.<br><br>ANTHONY ALBENCE, in his official capacity as State Election Commissioner of the State of Delaware,<br><br>        *Defendant*. | C.A. No. 25-cv-01453-RGA |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF LATIN AMERICAN COMMUNITY CENTER, LA ESPERANZA, DELAWARE COALITION AGAINST DOMESTIC VIOLENCE, AND JOSE MATTHEWS TO INTERVENE AS <u>DEFENDANTS</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    I.   DOJ's Efforts to Obtain Private Voter Information........................................ 3

    II.  The United States' Plans to Unlawfully Use and Share Voter Information ................ 6

    III. Proposed Intervenors ....................................................................................... 9

ARGUMENT....................................................................................................................... 11

    I.   Movants Are Entitled to Intervene as a Matter of Right............................... 11

        A.  The Motion to Intervene Is Timely. ............................................... 12

        B.  Proposed Intervenors Have a Sufficient Interest in the Litigation................. 13

        C.  Disposition of this Case Would Impair the Proposed Intervenors' Interests. ............................................................................................. 15

        D.  The State Election Commissioner's Interests Differ from Those of Proposed Intervenors. ................................................................... 16

    II.  In the Alternative, the Court Should Grant Permissive Intervention.......................... 18

CONCLUSION.................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**

*American Farm Bureau Federation v. United States Enviromental Protection Agency*,
278 F.R.D. 98 (M.D. Pa. 2011)................................................................................ 16, 17, 19

*American Federation of State, County, & Municipality Employees., AFL-CIO v. Social Security Administration*,
No. 1:25-cv-596-ELH, (D. Md. Jan. 16, 2026)................................................................... 8, 9

*Berger v. North Carolina State Conference of the NAACP*,
597 U.S. 179 (2022)....................................................................................................... 18

*Bone v. XTO Energy, Inc.*,
No. CV 21-1460, 2023 WL 5431139 (D. Del. Aug. 23, 2023) ............................................ 12

*Brody ex rel. Sugzdinis v. Spang*,
957 F.2d 1108 (3d Cir. 1992)........................................................................................... 19

*Choike v. Slippery Rock University of Pennsylvania of State System of Higher Educuation*,
297 F. App'x 138 (3d Cir. 2008) ...................................................................................... 12

*CogniPower LLC v. Fantasia Trading, LLC*,
No. CV 19-2293-CFC, 2021 WL 327389 (D. Del. Feb. 1, 2021) ........................................ 13

*Donaldson v. United States*,
400 U.S. 517 (1971)........................................................................................................ 13

*Jet Traders Investment Corp. v. Tekair, Ltd.*,
89 F.R.D. 560 (D. Del. 1981) .......................................................................................... 13

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ................................. 16, 17, 18

*Kleissler v. United States Forest Service*,
157 F.3d 964 (3d Cir. 1998)................................................................................... 11, 12, 16

*MiiCs & Partners America, Inc. v. Toshiba Corporation*,
No. CV 14-803-RGA, 2016 WL 11488672 (D. Del. June 15, 2016) .................................... 12

*Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995)......................................................................................... 12, 15

*PA Fair Elections v. Pennsylvania Department of State*,
337 A.3d 598 (Pa. Commw. Ct. 2025) ................................................................................ 7

*Pennsylvania v. President United States of America*,
  888 F.3d 52 (3d Cir. 2018) ............................................................................ 13, 14, 16

*Republican National Committee v. Aguilar*,
  2024 WL 3409860 (D. Nev. July 12, 2024) ........................................................... 19

*Town of Chester v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017) ............................................................................................... 13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................... 14

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972) ............................................................................................... 16

*United States v. Amore*, No. 1:25-cv-00639-MSM-PAS
  (D.R.I. Jan. 6, 2026) ................................................................................................ 2

*United States v. Galvin*, 1:25-CV-13816
  (D. Mass Jan. 6, 2026) ............................................................................................. 2

*United States v. Nago*, No. 25-cv-522-LEK-RT
  (D. Haw. Jan. 5, 2026) ............................................................................................. 2

*United States v. Oliver*, No. 25-cv-01193
  (D.N.M. Dec. 19, 2025) ........................................................................................... 2

*United States v. Scanlan*, No. 25-cv-371-AJ
  (D.N.H. Jan. 5, 2026) ............................................................................................... 2

*United States v. Schmidt*, No. 2:25-cv-1481-CB
  (W.D. Pa. Jan. 16, 2026) .......................................................................................... 2

*United States v. Simon*, No. 25-cv-3761
  (D. Minn. Jan. 6, 2026) ............................................................................................ 2

*United States v. Territory of the Vigin Islands*,
  748 F.3d 514 (3d Cir. 2014) .................................................................................... 16

*United States v. Weber*, No. 25-cv-09149
  (C.D. Cal. Nov. 19, 2025) .................................................................................... 2, 15

**Statutes**

11 Delaware Code § 9612 ............................................................................................. 14

15 Delaware Code § 1303 ........................................................................................ 11, 14

15 Delaware Code § 304(h) .......................................................................................... 14

5 U.S.C. § 552a ................................................................................................ 14, 18

52 U.S.C. § 20507 .................................................................................................. 6

52 U.S.C. § 20703 ................................................................................................ 16

Delaware Code § 9612 ......................................................................................... 10

Delaware Code § 9613 ......................................................................................... 10

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*,
N.Y. TIMES, Oct. 22, 2025 ..................................................................................... 7

Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*,
PROPUBLICA, July 13, 2024 ................................................................................. 7

Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*,
LANCASTERONLINE, July 21, 2024 ..................................................................... 7

Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*,
VOTEBEAT, Feb. 12, 2024 ..................................................................................... 7

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*,
N.Y. TIMES, Sept. 9, 2025 ..................................................................................... 6

Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*,
PROPUBLICA, Aug. 26, 2025 ................................................................................ 7

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*,
N.Y. TIMES MAGAZINE, Nov. 16, 2025 ................................................................ 6

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*,
PA. CAP.-STAR, Aug. 27, 2025 ............................................................................. 7

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*,
STATELINE, Sept. 12, 2025 .................................................................................... 6

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*,
NPR, June 29, 2025 ........................................................................................................ 7

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information,
Brennan Center for Justice (updated Dec. 19, 2025) ..................................................... 3

Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*,
POLITICO, Jan. 20, 2026 ................................................................................................ 8

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*,
DEMOCRACY DOCKET, June 12, 2025 ........................................................................... 7

Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a murky assist from DOGE*,
NPR, May 22, 2025 ........................................................................................................ 8

Press Release, U.S. Department of Justice, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026) ................................................... 5

Press Release, U.S. Department of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025) ................................................................................................................................ 5

Press Release, U.S. Department of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025) ........................................................... 5

Press Release, U.S. Department of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025) ............................... 5

Press Release, U.S. Department of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025) ................................. 5

Press Release, U.S. Department of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025) .............................................. 5

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025 ................................................... 6

*Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*,
NPR, Dec. 10, 2025 ........................................................................................................ 8

**Rules**

Fed. R. Civ. P. 24(a) ............................................................................................................... 2

Fed. R. Civ. P. 24(b) ......................................................................................................... 2, 19

Fed. R. Civ. P. 24(c) ............................................................................................................... 1

The Latin American Community Center ("LACC"), La Esperanza, the Delaware Coalition Against Domestic Violence ("DCADV"), and Jose Matthews (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) or, in the alternative, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Proposed Intervenors append to this motion a proposed motion to dismiss by way of a response to the United States' Complaint, while reserving the right to supplement their response to the Complaint within the time allowed for response by Rule 12 after intervention is granted. *See* Fed. R. Civ. P. 24(c).[1]

## INTRODUCTION

The United States seeks to force Delaware to turn over voters' sensitive personal information and data. It has been widely reported that the United States intends to use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement.

Proposed Intervenors are the Latin American Community Center ("LACC") and La Esperanza, non-partisan nonprofit organizations that support, provide services for, and promote civic engagement among Delaware's Latino community; the Delaware Coalition Against Domestic Violence ("DCADV"), a non-partisan nonprofit coalition of agencies and individuals working to stop domestic violence and support domestic violence survivors in Delaware; as well as Jose Matthews, an individual voter whose personal data is at risk in this litigation. Proposed Intervenors have a strong interest in preventing the disclosure of Delaware's sensitive non-public voter data. As organizations serving the needs of immigrants and survivors of domestic violence and providing these vulnerable groups with essential services, as well as civic engagement

---

[1] Proposed Intervenors conferred with Plaintiff, Defendant, and the existing Intervenor-Defendants regarding this motion. Defendant consents to the motion, and Plaintiff and the existing Intervenor-Defendants take no position.

opportunities and programs, LACC, La Esperanza, and DCADV understand that a threat to voter data confidentiality would disrupt their core services and could lead to direct harms to their constituents and members. The interests of registered voters in Delaware, including Mr. Matthews and members and constituents of Proposed Intervenor organizations, are also at stake here.

Proposed Intervenors are entitled to intervene as of right under Rule 24 as this motion is timely, their rights and interests are at stake, and those rights and interests are not adequately represented by Defendant—who unlike Proposed Intervenors, is a state actor, subject to broader considerations external to the legal issues presented in this case—or the existing intervenor-Defendants. Proposed Intervenors' unique concerns, perspective, and motivation to interrogate the purpose of the sweeping request for non-public voter data will ensure full development of the record and aid the Court in its resolution of this case. Indeed, in similar cases addressing expansive demands for states' sensitive voter information, non-profit organizations and individual voters have been granted intervention. *See, e.g.*, Order, *United States v. Schmidt*, No. 2:25-cv-1481-CB (W.D. Pa. Jan. 16, 2026), D.I. No. 105; Minute Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026); Minute Order, *United States v. Galvin*, 1:25-CV-13816 (D. Mass Jan. 6, 2026), D.I. No. 30; Order, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 6, 2026), D.I. No. 90; Minute Order, *United States v. Nago*, No. 25-cv-522-LEK-RT (D. Haw. Jan. 5, 2026), D.I. No. 20; Order, *United States v. Scanlan*, No. 25-cv-371-AJ (D.N.H. Jan. 5, 2026), D.I. No. 23; Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), D.I. No. 25; Minute Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 19, 2025), D.I. No. 70.

Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

2

## BACKGROUND

**I.      DOJ's Efforts to Obtain Private Voter Information**

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands to produce voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Jan. 30, 2026), https://perma.cc/2LWK-HXHN.

On July 11, 2025, DOJ sent a letter to Delaware State Election Commissioner Anthony Albence, which propounded several questions regarding Delaware's voter list maintenance procedures and requested that Delaware provide information about purported "registered voters identified as ineligible to vote," for example, due to non-citizenship or a felony conviction. Pl.'s Mot. to Compel, Ex. 1, Ltr. from Michael Gates to Anthony Albence dated July 11, 2025, D.I. No. 4-1 ("July 11 Letter"); Compl. ¶¶ 18–19. The letter also requested an electronic copy of Delaware's entire statewide voter registration list, including "all fields," and asked Delaware to provide this information within 14 days. July 11 Letter; Compl. ¶ 19. The July 11 Letter referenced the NVRA and HAVA but did not mention the Civil Rights Act ("CRA"). *See id.* On July 25, 2025, Commissioner Albence replied, noting that "[w]e anticipate fully responding to the requests and issues raised in your July Letter, in a manner consistent with Delaware's obligations under the NVRA and its duties under Delaware law." Pl.'s Mot. to Compel, Ex. 2, Ltr. from Anthony Albence to Maureen Riordan and Michael Gates from July 25, 2025, D.I. No. 4-2 ("July 25 Letter"); Compl. ¶ 21. Commissioner Albence also explained that their office would "provide a copy of Delaware's voter registration list, pursuant to [state law] and consistent with the state's obligations under the NVRA," but would not provide the fields that are "protected from disclosure under Delaware law." July 25 Letter.

On August 4, 2025, DOJ sent a letter asking for responses by August 15, 2025. Pl.'s Mot. to Compel, Ex. 3, Ltr. from Maureen Riordan and Michael Gates to Anthony Albence dated August 4, 2025, D.I. No. 4-3 ("August 4 Letter"); Compl. ¶ 22.  On August 6, 2025, the Delaware Deputy Attorney General sent an email to DOJ, noting that she was "in the process of reviewing" DOJ's request, and asking for more information about the application of the federal Privacy Act of 1974 to Delaware's statewide voter file, including how DOJ would "store and maintain the information," and the "citation within the Federal Register to the system of records under which DOJ intends to collect and maintain the records." Email from Emily Burton to Maureen Riordan and DOJ Voting Section dated August 6, 2025, https://perma.cc/99L5-DRQN ("August 6 Email").

On August 14, 2025, DOJ followed up with a letter stating that the electronic copy of the statewide voter registration list "must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." Pl.'s Mot. to Compel, Ex. 4, Letter from Harmeet Dhillon to Anthony Albence dated August 14, 2025, D.I. No. 4-4 ("August 14 Letter"); Compl. ¶ 23. This time, DOJ also cited the CRA as authority for its request and noted that the "purpose of the request is to ascertain Delaware's compliance with the list maintenance requirements of the NVRA and HAVA," but did not elaborate further in this regard or refer to any compliance deficiencies with respect to those statutes' requirements, and did not address the specific questions about the Privacy Act of 1974 raised in the August 6 Email. *See* August 14 Letter.

On August 15, 2025, Commissioner Albence sent a letter with detailed responses to questions from DOJ's July 11 Letter, explaining how Delaware's program of voter list maintenance complies with federal law. Pl.'s Mot. to Compel, Ex. 5, Ltr. from Anthony Albence to Maureen Riordan and Michael Gates from August 15, 2025, D.I. No. 4-5 ("August 15 Letter");

4

Compl. ¶ 26. Commissioner Albence also described concerns regarding DOJ's request under the 1974 Privacy Act, and asked for "any authority" for disclosing "non-public, sensitive, personally identifying information (such as social security numbers)." August 15 Letter. Commissioner Albence sent another letter on August 21, 2025, reiterating these points and addressing DOJ's "new demand" under the CRA, which implicated "serious and important requirements" from a legal and practical perspective. Ltr. from Anthony Albence to Maureen Riordan and Michael Gates dated August 21, 2025, https://perma.cc/Y7RY-73V8 ("August 21 Letter"). Finally, on September 16, 2025, Commissioner Albence sent a letter explaining why the "August 14 letter does not pose a valid request for information under the CRA," and again citing the Privacy Act and Delaware state law prohibiting disclosure of the requested information. Pl.'s Mot. to Compel, Ex. 6, Ltr. from Anthony Albence to Maureen Riordan and Michael Gates dated September 16, 2025, D.I. No. 4-6 ("September 16 Letter"); Compl. ¶ 27.

The United States responded by filing this lawsuit, which is one of at least twenty-five similar suits seeking disclosure of sensitive voter data.[2] The same day, the United States also filed a motion to compel the production of these records. Mot. to Compel, D.I. No. 3.

---

[2] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026), https://perma.cc/3L8Q-SJM5; Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

**II.      The United States' Plans to Unlawfully Use and Share Voter Information**

According to extensive public reporting, DOJ's requests for sensitive voter data from Delaware and other states do not appear to relate to voter list maintenance under the NVRA or HAVA, the statutes invoked in the August 14 Letter. Rather, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ and DHS. *Id.*; *see also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09. One article extensively quoted a lawyer who recently left DOJ's Civil Rights Division describing DOJ's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAGAZINE, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

These efforts are reportedly being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside the government who have previously sought to disenfranchise voters and overturn elections.[3] These actors and their associates have previously sought to compel states to engage in aggressive purges of registered voters, and have abused voter data to make mass challenges to disenfranchise voters. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 599 n.1 (Pa. Commw. Ct. 2025) (dismissing as meritless complaint brought by "PA Fair Elections," a group affiliated with current DHS official Heather Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to HAVA).[4]

According to public reporting, DOJ also recently asked staffers from the new "Department of Governmental Efficiency" ("DOGE") to identify noncitizens in state voter rolls by matching

---

[3] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://perma.cc/R8ZU-GGZZ (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAP.-STAR, Aug. 27, 2025, https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://perma.cc/CE7A-6RY6; Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://perma.cc/E87D-XDRX; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://perma.cc/J8VZ-X4N4 (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://perma.cc/5W2N-SS2Q.

[4] *See, e.g.*, Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*, VOTEBEAT (Feb. 12, 2024), https://perma.cc/HQ9C-TMT7 (discussing Honey's "false" claims regarding voting in Pennsylvania in 2020 and her extensive collaboration with Mitchell); *see also* Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*, LANCASTERONLINE (July 21, 2024), https://perma.cc/K92T-L288 (describing Mitchell meeting with PA Fair Elections).

voter data with data from the Social Security Administration.[5] DOJ officials have since claimed that "we've checked 47.5 million voting records" and found "several thousand non-citizens who are enrolled to vote in Federal elections," though public reporting indicates these efforts are producing false positives—*i.e.*, that they are flagging U.S. citizens as being non-citizens who are ineligible to vote.[6] A recent federal court filing by DOJ on behalf of the U.S. Social Security Administration corroborates how United States officials have been seeking to use voter data in conjunction with DOGE-inspired data-matching and aggregation techniques and have been working with outside "election integrity" advocates seeking to deny election results in those efforts:

> [I]n March 2025, a political advocacy group contacted two members of SSA's DOGE Team with a request to analyze state voter rolls that the advocacy group had acquired. The advocacy group's stated aim was to find evidence of voter fraud and to overturn election results in certain States. In connection with these communications, one of the DOGE team members signed a "Voter Data Agreement," in his capacity as an SSA employee, with the advocacy group. He sent the executed agreement to the advocacy group on March 24, 2025.

Notice of Corrections to the Record at 5, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH, D.I. No. 197 (D. Md. Jan. 16, 2026); *see also* Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, POLITICO, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245. The filings, which do not specify the terms of the "Voter Data Agreement" or the activities taken pursuant to it, also indicated that around the same period, DOGE actors shared

---

[5] *E.g.*, Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a murky assist from DOGE*, NPR, May 22, 2025, https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizenvoting.

[6] December 5, 2025 Post by @AAGDhillon https://x.com/AAGDhillon/status/1997003629442519114; *see* Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR, Dec. 10, 2025, https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens.

unknown amounts of Social Security data on an unapproved third-party server, in a "manner [that] is outside SSA's security protocols." Notice of Corrections to the Record, *supra*, at 6.

## III.    Proposed Intervenors

Proposed Intervenor Latin American Community Center ("LACC") is a non-partisan nonprofit organization committed to, *inter alia*, empowering the Latino Community in Delaware through education, advocacy, partnerships, and exceptional services, and promoting non-partisan civic participation among this community. Ex. A, Decl. of Maria Matos ("Matos Decl.") ¶¶ 4–5. For example, LACC has trained its staff to offer voter registration services to all eligible constituents and has also facilitated voter registration events and provided transportation to voters in need. *Id.* ¶ 5. LACC serves thousands of clients each year in Delaware, including many naturalized citizens. *Id.* ¶ 4. LACC's core mission and work would be greatly impacted by disclosure of Delaware's unredacted voter roll, since the efficacy of its civic engagement work depends upon the confidence of their constituencies in the confidentiality of their data. Many of LACC's clients and constituents would be very concerned if their sensitive personal information were shared with the federal government and would likely be deterred from participating in LACC's core work in civic engagement and voter registration. *Id.* ¶¶ 5, 7–10. LACC also provides family support services for survivors of domestic violence, a group with heightened concerns about how disclosure of their personal information would impact their safety and well-being, and these individuals may be particularly deterred from LACC's voter registration services. *Id.* ¶ 11.

Proposed Intervenor La Esperanza is a non-partisan nonprofit organization committed to assisting Latinos and immigrant families on their journey to achieve stability, integration, and success. Ex. B, Decl. of Bryant Garcia ("Garcia Decl.") ¶ 4. La Esperanza serves approximately 3,000 clients per year in Delaware. *Id.* ¶ 4. Among its programs, La Esperanza serves many clients navigating the process of becoming naturalized citizens, including through citizenship classes. *Id.*

9

As a core part of its services, La Esperanza also promotes non-partisan civic participation and voter registration among the Latino community, including clients that the organization helps through the process of becoming naturalized citizens. *Id.* ¶¶ 4–5. Eligible voters will be less likely to take advantage of La Esperanza's core services related to voting and civic engagement if they think their sensitive personal data would be shared with the federal government. *Id.* ¶¶ 7–8, 10.

Proposed Intervenor Delaware Coalition Against Domestic Violence ("DCADV") is a non-partisan nonprofit organization striving to promote conditions that eliminate domestic violence, advocating for survivors of domestic violence and their families, and providing resources, programs, and services for these survivors and families. Ex. C, Decl. of Sue Ryan ("Ryan Decl.") ¶ 4. DCADV has approximately 48 individual dues-paying members in Delaware in addition to four board-approved member agencies and three supporting member organizations. *Id.* ¶ 5. Those members include eligible, registered Delaware voters, whose personal data will be provided to DOJ if the United States prevails in this lawsuit. DCADV is committed to survivor privacy as a core aspect of its work to bolster the safety and well-being of survivors of domestic violence. *Id.* ¶¶ 8, 10–11. Further, DCADV and its member organizations recognize the importance of promoting civic engagement within the domestic violence survivor community and the paramount importance of the confidentiality of survivor data in this aspect of their work. *Id.* ¶¶ 8–11. Survivors of domestic violence in Delaware are eligible for confidentiality protections to help ensure safety from their abusers, and many survivors rely on these state protections to keep their addresses confidential, including in Delaware's statewide voter file. *See* 11 Del. C. §§ 9612, 9613 (establishing Address Confidentiality Program through which eligible Delawareans, including "victim[s] of domestic violence," are provided a substitute address to keep their actual address confidential); 15 Del. C. § 1303 (allowing eligible Delawareans, including survivors of domestic

10

violence participating in the Address Confidentiality Program, to have their addresses removed from the public voter records); Ryan Decl. ¶¶ 6–7. Thus, disclosure of the statewide voter file—including the addresses of survivors of domestic violence—would greatly undermine DCADV's mission of advocating for and ensuring the safety of survivors of domestic violence by compromising their confidential information, and would also deter survivors of domestic violence from voter registration and civic engagement. Ryan Decl. ¶¶ 8–11.

Jose Matthews is an eligible, registered voter in Delaware. Ex. D, Decl. of Jose Matthews ("Matthews Decl.") ¶ 2. He is concerned about how the federal government may use his personal data if disclosed, as well as how the federal government's request may deter other eligible voters in Delaware from voting. *Id.* ¶¶ 4–6. As the son of a survivor of domestic violence, whose own family's safety was put at risk when their personal information was not kept confidential, Mr. Matthews has also seen firsthand the importance of maintaining confidentiality protections for vulnerable Delawareans, and is deeply concerned that disclosure of Delaware's entire unredacted voter file could compromise the safety and well-being of Delaware voters, including survivors of domestic violence like his mother and others in similar circumstances. *See id.* ¶ 7.

## ARGUMENT

### I.   Movants Are Entitled to Intervene as a Matter of Right.

In the Third Circuit, a party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must prove four elements: (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the litigation"; (3) "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action"; and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citation omitted). Courts construe these factors consistent with a "policy preference which, as a matter of judicial economy, favors intervention over subsequent

11

collateral attacks." *Id.* at 970 (citation omitted). Because Proposed Intervenors satisfy each of these requirements, intervention should be granted.

### A. The Motion to Intervene Is Timely.

The Third Circuit has identified three factors to assess timeliness of a motion to intervene: (1) "the stage of the proceeding"; (2) "the prejudice that delay may cause the parties"; and (3) "the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The "timeliness of a motion to intervene is determined from all the circumstances" and in the court's "sound discretion." *Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*, 297 F. App'x 138, 140 (3d Cir. 2008) (quotation marks and citation omitted).

This motion is timely. The United States filed this suit on December 2, 2025, D.I. No. 1, and upon learning of it, Proposed Intervenors promptly prepared this motion. Defendant has not yet filed a response to the Complaint, meaning that the case is at its earliest stage. Defendant waived service of a summons, so that the first upcoming substantive deadline—when responses to the Complaint are due—is February 9, 2026. *See* Waiver of the Service of Summons, D.I No. 7; *see also* Unopposed Motion and Proposed Order to Extend Time, D.I. No. 19 (ordering extension of time so that the same deadline would apply to responses to Plaintiff's Motion for Production of Records, D.I. No. 3). This Court has routinely found motions to intervene timely under such circumstances. *See, e.g.*, *Bone v. XTO Energy, Inc.*, No. CV 21-1460, 2023 WL 5431139, at *3 (D. Del. Aug. 23, 2023) ("Motions to intervene filed by individuals or entities with a purported interest in the litigation within several months of ascertaining their interest generally are considered timely, especially when little to no discovery has been conducted."); *MiiCs & Partners Am., Inc. v. Toshiba Corp.*, No. CV 14-803-RGA, 2016 WL 11488672, at *2–3 (D. Del. June 15, 2016) (granting intervention as of right where motion was filed twenty-one months after lawsuit was filed, where "almost no proceedings of substance on the merits have occurred" (internal

quotation marks and citation omitted)).

Here, given the early stage of this litigation, before any major deadlines have passed and before any rulings on the merits, intervention will not unduly delay or prejudice the existing parties. *E.g.*, *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 568 (D. Del. 1981) (even where movant provided no particular "reason for the eight month delay between the completion of the pleadings and its motion to intervene," finding that "where discovery has not been completed, there have been no significant decisions on the merits considered or decided, and the parties could not be prejudiced by that delay, the motion must be considered timely"). Additionally, Proposed Intervenors will abide by the same schedule adopted by the Court. *See CogniPower LLC v. Fantasia Trading, LLC*, No. CV 19-2293-CFC, 2021 WL 327389, at *1 (D. Del. Feb. 1, 2021) (explaining that a party "has not alleged that it will be prejudiced by intervention; nor could it, as [proposed intervenor] has agreed to abide by the existing Scheduling Order").

### B. Proposed Intervenors Have a Sufficient Interest in the Litigation.

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Under Rule 24(a)(2), a protectable interest is any "cognizable legal interest" that is more than a mere "interest of a general and indefinite character." *Pennsylvania v. President U.S. of Am.*, 888 F.3d 52, 58 (3d Cir. 2018).[7] Here, Proposed Intervenors offer multiple, independently sufficient interests.

*First*, Proposed Intervenors have a right to privacy in the sensitive data sought, *i.e.*, the entire unredacted voter file, with "all fields," including "state driver's license number, or the last

---

[7] Proposed Intervenors need not separately establish Article III standing because they seek to intervene as Defendants, and because Defendant seeks the same ultimate outcome as Proposed Intervenors, namely, dismissal or denial of the claims brought by the United States. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439-40 (2017); *Pennsylvania v. President U.S. of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018).

13

four digits of the registrant's social security number." Compl. ¶ 23. The Supreme Court has made clear that "disclosure of private information" is an injury "traditionally recognized as providing a basis for lawsuits in American courts," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)— and so Proposed Intervenors have "a cognizable legal interest" in avoiding its disclosure. *Pennsylvania v. President U.S. of Am.*, 888 F.3d at 58. Delaware specifies exactly what information from Delaware's voter registration list can be disclosed to different requesters, but in all cases protects sensitive information like social security numbers and driver's license numbers from disclosure. *See* 15 Del. C. § 304(h). Further, Delaware law specifically allows survivors of domestic violence, among others, to keep from "public inspection or copying" the person's address upon a showing of legitimate need and lawful purpose, such as where a petitioner participates in Delaware's Address Confidentiality Program. *See* 15 Del. C. § 1303; 11 Del. C. § 9612-13. The data sought is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly assembling. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation of any database "describing how any individual exercises rights guaranteed by the First Amendment," which includes exercising the right to vote). These privacy interests are significant to Proposed Intervenor Mr. Matthews, as well as the members, clients, and constituents of LACC, La Esperanza, and DCADV who are registered voters in Delaware. *See* Matthews Decl. ¶ 2; Matos Decl. ¶¶ 4–5, 12; Garcia Decl. ¶¶ 4–5, 10; Ryan Decl. ¶ 5.

*Second*, based on the United States' requests to Delaware and other States, the data sought could be used to challenge the registration of certain Delaware voters, including voters who are naturalized citizens (whose current citizenship status might not be reflected in databases that have out-of-date information), s*ee supra* p. 1, or impose fear of a challenge or purge and thereby chill voting. Numerous clients and constituents of LACC and La Esperanza, for example, fall within

14

the category of naturalized citizens. *See* Matos Decl. ¶ 4; Garcia Decl. ¶ 4.

*Third*, organizations like LACC, La Esperanza, and DCADV have protectable interests at stake as their core missions will be harmed if the relief that the federal government seeks is granted. Promoting civic engagement among the Latino community in Delaware is part of the core work of LACC and La Esperanza, but disclosure of sensitive voter data could deter these eligible voters from engaging with LACC and La Esperanza and registering to vote. Matos Decl. ¶¶ 5, 9; Garcia Decl. ¶¶ 5, 8. As a court held in a similar lawsuit filed by DOJ seeking California's unredacted voter file, "[t]he centralization of [voter] information by the federal government would have a chilling effect on voter registration which would inevitably lead to decreasing voter turnout as voters fear that their information is being used for some inappropriate or unlawful purpose." *Weber*, 2026 WL 118807, at *20. And disclosure of the unredacted Delaware voter file would undermine DCADV's mission to eliminate domestic violence and advocate for and serve survivors of domestic violence—a mission that requires protection of these survivors' confidentiality, which is "a foundational requirement when providing domestic violence services because it enhances safety and helps to protect victims of domestic violence from further abuse." Ryan Decl. ¶¶ 4, 8.

### C. Disposition of this Case Would Impair the Proposed Intervenors' Interests.

Proposed Intervenors' interests would be impaired if Plaintiff succeeds in obtaining its requested relief. To intervene as of right, proposed intervenors need only "demonstrate that their interest *might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top Condo Ass'n*, 72 F.3d at 368 (emphasis in original). Here, there is a significant risk of harm to Proposed Intervenors' interests.

The United States seeks to summarily dispose of Proposed Intervenors' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of its request. 52 U.S.C.

15

§ 20703; *see* Mot. to Compel, D.I. No. 3. This attempt to secure the irrevocable disclosure of private voter data at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests. Indeed, if DOJ is successful in obtaining Proposed Intervenors' private voter data, that "would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024) (quoting *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)).

**D. The State Election Commissioner's Interests Differ from Those of Proposed Intervenors.**

Finally, Proposed Intervenors meet their "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Pennsylvania v. President U.S. of Am.*, 888 F.3d at 60 (requiring movants to show only "that representation of his interest *may be* inadequate" (internal quotation marks and citation omitted) (emphasis in original)). "The possibility that the interests of the applicant and the parties may diverge 'need not be great,'" *Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (citation omitted), and a proposed intervenor need only show that "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of V.I.*, 748 F.3d 514, 519–20 (3d Cir. 2014).

As a government officer, Commissioner Albence has a generalized interest in carrying out Delaware's legal obligations and minimizing burdens on governmental employees and resources. *See generally Kleissler*, 157 F.3d at 972 ("[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively

16

light."). Commissioner Albence must consider broader public policy concerns, such as the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors bring a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of an individual voter whose rights are at risk and of groups that support communities, including Delaware voters, with heightened concerns about the disclosure of their information to the federal government. *Compare Judicial Watch,* 2024 WL 3454706, at *5 ("The State Board has an interest in fulfilling its election obligations as required by the NVRA and Illinois law. Proposed Intervenors seek protection for their discrete set of members' voting rights and have an interest in preventing resource reallocation in doing so." (citation omitted)), *with, e.g.*, Matthews Decl. ¶¶ 2, 5 (discussing concern about disclosure of personal information as registered Delaware voter); Matos Decl. ¶¶ 4–5, 9, 11–12 (discussing LACC's civic engagement work, including with naturalized citizens); Garcia Decl. ¶¶ 4–5, 8, 10 (similar); Ryan Decl. ¶¶ 4–5, 8–11 (discussing importance of confidentiality to survivors of domestic violence). These diverging perspectives— between the government's general need to balance various considerations and Proposed Intervenors' more personal and particular interest in the privacy of their own data and that of their members or the communities they serve—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n*, 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders).

Indeed, there may be arguments and issues that Defendant may not raise that are critical to individuals and organizations like Proposed Intervenors. For example, individual voters have a more direct injury than states under the Privacy Act for misuse of their personal data, especially given that the Privacy Act grants individuals an express right to bring suit. *See* 5 U.S.C.

§ 552a(g)(1)(D) ("Whenever an agency fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"). As another example, courts have found a risk that considerations external to the issues presented by a case like this can motivate officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or of their members. *See Judicial Watch*, 2024 WL 3454706, at *5 (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

Proposed Intervenors also bring a different set of perspectives and interests than the existing set of intervenor-defendants. For example, multiple Proposed Intervenors provide a key perspective not yet represented in this litigation: the perspective of survivors of domestic violence, who have heightened concerns about risks to their safety and well-being if their personal information, including information in Delaware's statewide voter file, were to be disclosed. *See* Ryan Decl. ¶¶ 4–11; Matos Decl. ¶ 11; Matthews Decl. ¶ 7. Proposed Intervenors LACC and La Esparanza also represent the perspective of Latino immigrant communities in Delaware, including recently naturalized voters. Matos Decl. ¶¶ 4–5, 7–10, 12; Garcia Decl. ¶¶ 4–10. These perspectives are essential to this litigation and vindicating the rights of Proposed Intervenors.

## II.    In the Alternative, the Court Should Grant Permissive Intervention.

Even if the Court declines to grant intervention as of right, the Court should use its broad

18

discretion to grant permissive intervention. A court may grant permissive intervention when the motion to intervene is "timely," the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The decision whether to grant permissive intervention is "highly discretionary." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992). Permissive intervention is appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See, e.g.*, *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 ("In deciding whether to permit intervention under Rule 24(b), courts consider whether the proposed intervenors will add anything to the litigation." (internal quotation marks and citation omitted)).

As discussed above, this motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and their interests are not adequately represented by any of the existing parties. *See supra* pp. 13–19. And Proposed Intervenors' defense goes directly to the matters at issue, such as (1) whether federal law permits Plaintiff to force Delaware to give it the sensitive personal information sought; (2) whether federal and state legal privacy protections prohibit disclosure of that information; and (3) whether the United States' motivations for the data sought are permissible. Proposed Intervenors' distinct perspectives on the issues will complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it.

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Republican Nat'l Comm. v. Aguilar*, 2024 WL 3409860, at *1–3 (D. Nev. July 12, 2024) (permitting intervention by voter advocacy group as defendant in litigation seeking purge of voter

19

rolls). The Court should do the same here.

## CONCLUSION

For all these reasons, the Motion should be granted.

Dated: February 3, 2026                          Respectfully submitted,


Theresa J. Lee*                                  /s/ Andrew Bernstein
Jonathan Topaz*                                  Andrew Bernstein (#7161)
Sophia Lin Lakin*                                100 W. 10th St. #706
AMERICAN CIVIL LIBERTIES UNION                   Wilmington, DE 19801
FOUNDATION                                       Phone: (302) 551-6809 Ext. 119
125 Broad St., 18th Floor                        Email: abernstein@aclu-de.org
New York, NY 10004
(212) 549-2500                                   *Counsel for Proposed Intervenors Latin
tlee@aclu.org                                    American Community Center, La
jtopaz@aclu.org                                  Esperanza, Delaware Coalition Against
slakin@aclu.org                                  Domestic Violence, and Jose Matthews*

Patricia Yan*                                    * Application for admission *pro hac vice*
AMERICAN CIVIL LIBERTIES UNION                   forthcoming
FOUNDATION
915 15th St. NW
Washington, DC 20001
(202) 457-0800
pyan@aclu.org

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was served via the

Court's ECF system on all counsel of record on February 3, 2026.


<u>*/s/* Andrew Bernstein</u>
Andrew Bernstein