## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-01453- |
| | ) | RGA |
| ANTHONY ALBENCE, in his | ) | |
| official capacity as State Election | ) | |
| Commissioner of the State of | ) | |
| Delaware, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)
Director of Impact Litigation
Emily V. Burton (DE Bar No. 5142)
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, DE  19801
Tel.: (302) 683-8875
ian.liston@delaware.gov
*Counsel for Defendant*

Date: February 9, 2026

**TABLE OF CONTENTS**

I.      INTRODUCTION AND NATURE OF THE CASE ............................................................. 1

II.     RELEVANT STATUTORY AND FACTUAL BACKGROUND ....................................... 2

    A.    States Have Constitutional and Statutory Responsibility for Registering Eligible Voters, Administering Elections, and Maintaining Accurate and Current VRLs. ......................... 2

    B.    DOJ Demands an Unredacted Copy of Delaware's VRL Yet Fails to Answer Basic Questions about the Legality of Its Request. ...................................................................... 6

    C.    This Suit Is One of Many Nationwide that Implicate the Personal Information and Privacy Rights of Registered Voters. ................................................................................. 9

III.    SUMMARY OF ARGUMENT ........................................................................................ 10

IV.     ARGUMENT .................................................................................................................... 11

    A.    DOJ Has Failed to State a Claim under the CRA. ........................................................... 11
        1.    DOJ's Demand Fails the CRA's Basis-and-Purpose Requirement. ............................. 12
        2.    The CRA Does Not Apply to Delaware's Current VRL. ............................................. 15
        3.    The CRA Does Not Require the Electronic Transfer of a Searchable VRL ................ 16

    B.    DOJ's Demand Violates Federal and State Privacy Laws. .............................................. 17
        1.    DOJ's Demand Violates the Privacy Act ..................................................................... 17
        2.    DOJ's Demand Violates the E-Government Act. ......................................................... 19
        3.    DOJ's Demand Violates the Driver's Protection Privacy Act ..................................... 20
        4.    DOJ's Demand Violates Delaware's Privacy Protections. ........................................... 20

V.      CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers, D.C.*, 187 F. Supp. 848 (M.D. Ala. 1960), *aff'd In re Dinkens*, 285 F.2d 430 (5th Cir. 1961) ............................................................................. 13

*Albright v. United States*, 631 F.2d 915 (D.C. Cir. 1980) ............................................... 18

*Am. Civil Rights Union v. Phila. City Cmm'rs*, 872 F.3d 175 (3d Cir. 2017) ........................ 3, 15

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ....................................2, 11, 20

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ............................................... 3, 4, 15

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ............................................. 18

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ........................................... 11

*California v. Trump*, 786 F. Supp. 3d 359 (D. Mass. 2025) ........................................... 3, 18

*Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859 (D. Del. 1991) ........................ 9

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) ............................................................................................ 19

*Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010) ............................................... 11, 20

*Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324 (11th Cir. 2024) ....... 16

*Illinois State Bd. of Elecs. v. Socialist Workers Party*, 440 U.S. 173 (1979) ........................ 18

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) ..................................................... 12

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ............................................... 12, 13, 14

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ..................................................... passim

*Kusper v. Pontikes*, 414 U.S. 51 (1973) ................................................................. 18

*League of United Latin Am. Citizens (LULAC) v. Exec. Off. of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ......................................................................................... 2, 3, 18

*Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127 (3d Cir. 2018) ..................................... 17

*Pacific Coast Fed'n of Fishermen's Assocs., Inc. v. Nickels*, 150 F.4th 1260 (9th Cir. 2025) .... 14

*Patterson by Patterson v. FBI*, 893 F.2d 595 (3d Cir. 1990) ........................................... 18

*Patterson v. FBI*, 705 F. Supp. 1033 (D.N.J. 1989) ................................................... 18

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ........................... 4, 15

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ................................ 4, 15

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elecs.*, 996 F.3d 257 (4th Cir. 2021) ........... 4, 15

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ................................................... 6, 11

*Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004) ............................................... 12

*United States v. Adair*, 38 F.4th 341 (3d Cir. 2022) ................................................. 12

*United States v. State of Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ............................................................................................... passim

*United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ... passim

*Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025) ........................... 4, 15

## Statutes

15 Del. Code § 1305 ..................................................................................... 11, 20

15 Del. Code § 304 ................................................................................. 7, 11, 20

18 U.S.C. § 2721 *et seq.* ............................................................................. 11, 20

18 U.S.C. § 2725 ......................................................................................... 11, 20

2006 Delaware Laws Ch. 232 .............................................................................. 3

42 U.S.C. § 405 ................................................................................................... 4

5 U.S.C. § 552a .......................................................................................... passim

5 U.S.C. § 552a note ......................................................................................... 17

52 U.S.C. § 20501 ............................................................................................... 3

52 U.S.C. § 20503 ............................................................................................... 3

52 U.S.C. § 20504 ............................................................................................... 3

52 U.S.C. § 20505 ............................................................................................... 3

52 U.S.C. § 20506 ............................................................................................... 3

52 U.S.C. § 20507 ............................................................................... 3, 4, 14, 15

52 U.S.C. § 20508 ............................................................................................... 3

52 U.S.C. § 20510 ......................................................................................... 4, 15

52 U.S.C. § 20701 ................................................................................... 6, 10, 15

52 U.S.C. § 20701 *et seq.* .................................................................................... 5

52 U.S.C. § 20703 ........................................................................... 6, 10, 12, 16

52 U.S.C. § 20705 ............................................................................................... 6

52 U.S.C. § 21083 ................................................................................... 4, 5, 15

52 U.S.C. § 21085 ............................................................................................... 4

52 U.S.C. § 21111 ......................................................................................... 5, 15

52 U.S.C. §§ 21081-21085 ................................................................................. 4

Civil Rights Act of 1957, Pub. L. No. 85-315, 71 Stat. 634 (1957) .................... 5

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 ..................... 19

## Constitutional Provisions

U.S. Const. art. I, § 4 ..................................................................................... 1, 18

## Other Authorities

Black's Law Dictionary (4th ed. 1968) .............................................................. 12

Dep't of Justice, *Privacy Act of 1974: Systems of Records*, 68 Fed. Reg. 47610 (Aug. 11, 2003),
    https://perma.cc/4SR2-T86L ................................................................... 9, 19

Fed. R. Civ. P. 12 .............................................................................................. 11

H.R. Doc. No. 75 (1st Sess. 1959), *reprinted in* 10 Cong. Rec. 1922 (Feb. 5, 1959) .................... 5

H.R. Rep. No. 86-956 (1959) ............................................................................. 13

Off. of Mgmt. & Budget, Circular No. A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act* (Dec. 2016), https://perma.cc/3NKT-64HA ............................................................................................................................ 19

*Proposed Civil Rights Legislation: Hearing Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary,* 86th Cong., 1st Sess. (1959), https://perma.cc/H64U-GYMG. 5, 16

## I.    INTRODUCTION AND NATURE OF THE CASE

The Court should dismiss the United States' Complaint (D.I. 1) which seeks to enforce the U.S. Department of Justice's ("DOJ") written demand ("Demand"), Ex. 5, for an electronic copy of Delaware's unredacted voter registration list ("VRL"). The unredacted VRL includes the private and personal information of over 95% of Delaware's voting-age citizens, such as social security numbers, driver's license information, political affiliations, and voting histories. DOJ's Demand for such information ignores: (1) that the U.S. Constitution grants to states the power to administer elections; (2) the requirements and limitations of the statutes the DOJ cites; and (3) federal and state laws protecting the privacy of Delawarean voters' personal information.

The Constitution empowers states to set "the times, places, and manner" of holding federal elections, subject to Congress altering such rules. U.S. Const. art. I, § 4. Through the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), Congress assigned states—and only states—responsibility for making "reasonable effort[s]" to maintain current and accurate voter registration lists. These statutes do not obligate states to maintain lists entirely free of potentially ineligible voters; by contrast, they require procedures to protect against disenfranchisement by *improper* removal. HAVA and the NVRA constrain the federal government's role in this area. The U.S. Attorney General has no role in list maintenance and may only bring actions under the NVRA and HAVA for declaratory and injunctive relief to ensure states make such "reasonable effort[s]" and otherwise comply with HAVA and the NVRA.

DOJ alleges that it requires Delawareans' sensitive personal information to assess Delaware's compliance with the NVRA and HAVA. DOJ, however, did not bring this case under the NVRA or HAVA. And even if it had, federal caselaw applying the NVRA holds that sensitive voter information is not necessary or relevant to assess a state's compliance. Instead, DOJ brings

this case under Title III of the Civil Rights Act of 1960 ("CRA"). The CRA protects against race discrimination in voting and requires that election officials produce certain election-related records for DOJ's in-person inspection when DOJ articulates a legitimate basis and purpose for such request. DOJ claims that Defendant Anthony Albence, in his official capacity as State Election Commissioner ("Delaware"), violated the CRA by seeking assurances about the legal basis for DOJ's Demand rather than immediately sending an electronic copy of Delaware's full VRL.

DOJ's Complaint fails because the CRA does not support DOJ's request, and further because DOJ's request violates federal and state privacy laws. Overlaying the statutory failures, DOJ cannot use the CRA to usurp powers Congress assigned to States or to demand voter information that Congress never authorized it to collect. As for the CRA, DOJ did not state *any* "basis" for its CRA demand and included only an inadequate "purpose." In addition, a current VRL is not a CRA-covered record. Finally, inspection under the CRA is limited to inspection, reproduction, or copying at the Commissioner's office. DOJ's Demand also violates federal and state privacy laws. Each of these reasons alone, let alone together, supports dismissal. *See United States v. Weber,* No. 2:25-cv-09149, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026) (dismissing in its entirety DOJ's complaint seeking California's production of sensitive voter information); *United States v. State of Oregon,* No. 6:25-cv-01666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026) (dismissing DOJ's similar complaint against Oregon).

## II.    RELEVANT STATUTORY AND FACTUAL BACKGROUND

### A.    States Have Constitutional and Statutory Responsibility for Registering Eligible Voters, Administering Elections, and Maintaining Accurate and Current VRLs.

The constitution allocates to states "responsibility for the mechanics" of elections. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (citation modified). The constitution permits Congress, not the President, to modify states' procedures. *League of United Latin Am.*

2

*Citizens (LULAC) v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 194 (D.D.C. 2025) ("Congress—not the President—is the check on States' authority to regulate federal elections."); *see California v. Trump*, 786 F. Supp. 3d 359, 372-73 (D. Mass. 2025).

The Complaint seeks to enforce DOJ's Demand under the CRA for Delaware's VRL to enforce the NVRA and HAVA. Congress passed the NVRA in 1993 to increase participation in federal elections, protect against discriminatory and unfair election practices, promote the integrity of elections, and ensure accurate and current VRLs. 52 U.S.C. § 20501. The NVRA established voter registration requirements for federal elections, including registration through state motor vehicle offices, by mail, and via designated agencies. *Id.* §§ 20503(a), 20504-20506. Among other requirements, applicants attest to their citizenship under penalty of perjury, *id.*, and States must register eligible applicants and maintain accurate and current VRLs while protecting against improper voter removal, *id.* §§ 20504(c)(2)(C), 20506(a)(6)(A), 20508(b)(2), 20507.

To this end, the NVRA requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters . . . by reason of" the registrant's death or change in residence. *Id.* § 20507(a)(4). The NVRA includes a safe harbor form of voter list maintenance that a state could adopt to ensure its compliance. *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019).[1] Congress did not require "a general program of list maintenance that makes a reasonable effort to remove <u>any</u> ineligible voter." *Id.* at 1200; *see Am. Civil Rights Union v. Phila. City Cmm'rs*, 872 F.3d 175, 182-84 (3d Cir. 2017) (same).

Nor did Congress authorize federal participation in executing these duties; instead, it authorized DOJ to "bring a civil action . . . for such declaratory or injunctive relief as is necessary

---

[1] Delaware amended its laws related to VRL maintenance to conform to the NVRA's safe-harbor provision in 2006. 2006 Delaware Laws Ch. 232 (S.B. 162).

to carry out" the NVRA's requirements. 52 U.S.C. § 20510(a). Rather than expand the CRA's provisions to encompass the NVRA, Congress included a public-inspection right with respect to "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official list of eligible voters." 52 U.S.C. § 20507(i). Federal courts have consistently held that states may omit sensitive voter information when providing records to confirm their NVRA compliance under this provision. *See, e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elecs.*, 996 F.3d 257, 267-68, 268 n.9 (4th Cir. 2021); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).

DOJ claims to also seek to assess Delaware's compliance with HAVA, which Congress passed in 2002. 52 U.S.C. §§ 21081-21085. HAVA requires states to maintain a single centralized computerized statewide VRL that contains the name, registration information, and a unique identifier for each registered voter. *Id.* § 21083(a)(1)(A). HAVA also requires states to maintain their VRLs consistent with the NVRA, *id.* § 21083(a)(2), including by coordinating maintenance efforts among state agencies, *id.* §§ 21083(a)(1)(A)(iv), (a)(5)(B) (describing coordination between motor vehicle office and the Commissioner of Social Security); 42 U.S.C. § 405(r)(9) (requiring safeguards to ensure confidentiality of disclosed information). But "[n]othing in HAVA broadens the scope of the NVRA's list-maintenance obligations." *Bellitto*, 935 F.3d at 1202. Like the NVRA, HAVA simply requires States to use "[a] system of [VRL] maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters[.]" 52 U.S.C. § 21083(a)(4)(A). HAVA continued to leave "[t]he specific choices on the methods of compl[iance] . . . to the discretion of the State." *Id.* § 21085. As to citizenship, HAVA

4

specified that the federal form used for mail registration include two check boxes for the applicant to indicate whether they are a U.S. citizen and of voting age. 52 U.S.C. § 21083(b)(4)(A). Congress authorized DOJ to "bring a civil action . . . for such declaratory and injunctive relief . . . as may be necessary to carry out" HAVA's requirements. *Id.* § 21111.

Although both the NVRA and HAVA contain enforcement provisions, DOJ brought this action pursuant to the CRA. Title III of the CRA, 52 U.S.C. § 20701 *et seq.*, protects against race discrimination in voting. Despite passage of the Civil Rights Act of 1957, *see* Pub. L. No. 85-315, 71 Stat. 634 (1957), prior to the CRA, DOJ's lack of "authority to require the production of election records" posed a "serious obstacle" to DOJ's ability to investigate race discrimination in voting. H.R. Doc. No. 75 (1st Sess. 1959), *reprinted in* 10 Cong. Rec. 1922 (Feb. 5, 1959) (letter from President Eisenhower incorporated into the congressional record). The 1960 CRA was enacted to provide DOJ with access to registration records "essential to determin[ing] whether the denial of the franchise was in furtherance of a pattern of racial discrimination." *Id.* Then-Attorney General William P. Rogers specifically advocated for the record retention requirement to enable DOJ to investigate "complaints that qualified persons have been denied the right to vote" on account of race and "[t]o assemble the necessary proof of discrimination." *Proposed Civil Rights Legislation: Hearing Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 86th Cong., 1st Sess. 13-14 (1959) (statement by Honorable William P. Rogers, Att'y Gen. of the U.S.), https://perma.cc/H64U-GYMG.

The CRA does not authorize DOJ to demand sensitive voter information or usurp control of states' list-maintenance procedures. Under the CRA, election officers "shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office "all records and papers which come into [their] possession relating to any application,

registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. DOJ can demand in writing that "the person having custody, possession, or control of such record or paper" make it "available for inspection, reproduction, and copying at [the custodian's] principal office[.]" *Id.* § 20703. But any demand *must* "contain a statement of the basis and the purpose therefor." *Id.* Congress included that federal district courts "shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

**B.    DOJ Demands an Unredacted Copy of Delaware's VRL Yet Fails to Answer Basic Questions about the Legality of Its Request.**

The facts leading to the Complaint are both straightforward and odd. DOJ first contacted Delaware on July 11, 2025, requesting "information regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the [NVRA]." Ex. 1, at 1, DOJ Ltr. to Comm'r Albence (Jul. 11, 2025)[2]. DOJ asked Delaware to provide "[t]he current electronic copy of Delaware's computerized statewide voter registration list . . . as required by [HAVA]", "includ[ing] all fields contained within the list." *Id.* DOJ requested a "description of the steps . . . taken . . . to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA." *Id.* at 2. DOJ further requested explanations for Delaware's answers to the Election Assistance Commission's November 2024 Election Administration and Voting Survey ("EAVS"), and information regarding voters Delaware had removed from its voter registration list. *Id.* at 2.

---

[2] Exhibits 1 – 6 are copies of correspondence that are incorporated by reference in the Complaint (including the Justice Enterprise File Sharing (JEFS) form, which was attached to the July 31 email at page 1 of Ex. 3, and is copied beginning at page 4 of Ex. 3) (D.I. 1, ¶¶ 18-20, 21, 22, 23-25, 26, 27, 30).  Delaware's August 21 letter, Ex. 7, is also incorporated by reference to the Complaint D.I. 1, ¶¶ 18-27, 30, despite DOJ omitting that correspondence. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (Court may consider documents integral to the Complaint).

On July 25, 2025, Delaware responded that it was reviewing the requests and anticipated fully responding in due time. Ex. 2, at 1, Comm'r Albence Ltr. to DOJ (Jul. 25, 2025). In the interim, Delaware offered to provide an electronic copy of its public VRL "pursuant to [Del. Code tit. 15 § 304(h)]." *Id.* at 1-2 (citing legal authority supporting sufficiency of public VRL).

On July 31, 2025, DOJ directed Delaware to use DOJ's electronic file-sharing system to transmit Delaware's public VRL to the DOJ. Ex. 3, at 1-2, DOJ Email to Comm'r Albence (Jul. 31, 2025); *see also* Ex. 4, DOJ letter to Comm'r Albence (Aug. 4, 2025). The user-application form for DOJ's file sharing system required certification of compliance with federal law. Thus, Delaware asked DOJ whether DOJ understood the public VRL "to be subject to the Federal Privacy Act of 1974," and, if so, for "the [applicable] system of records" ("SORN") under which DOJ would maintain the VRL. Ex. 3, at 1, Email to DOJ from E. Burton (Aug. 6, 2025).

On August 14, 2025, DOJ sent another letter to Delaware. Ex. 5, DOJ Ltr. to Comm'r Albence (Aug. 14, 2025) (the "Demand"). Contrary to the Complaint's allegations, *see* D.I. 1, ¶ 25, DOJ's August 14 letter did not address how Delaware's voter information would be protected under the Privacy Act or reference any specific SORN permitting DOJ to maintain the information, *see* Ex. 5.[3] Instead, DOJ stated generally that the CRA's confidentiality protections, 52 U.S.C. § 20704, and the Privacy Act, 5 U.S.C. § 552a, would apply. *Id.* at 2-3 & n.2.

DOJ's Demand did not address Delaware's authority regarding the scope of inspection under the NVRA. Instead, DOJ invoked, for the first time, Title III of the CRA, to "demand[] an electronic copy of Delaware's complete and current VRL." *Id.* at 2. DOJ asserted that its purpose was to ascertain Delaware's compliance with the list-maintenance requirements of the NVRA and

---

[3] Delaware informed DOJ of the inaccuracy of DOJ's allegation in paragraph 25 of the Complaint. DOJ represented that it would amend the Complaint to correct the issue but has not yet done so. *See* Ex. 9, Emails between E. Burton and E. Neff (Jan. 21-22, 2026).

HAVA." *Id.* at 2. DOJ insisted that the VRL "must contain *all fields*" because "Congress plainly intended that [DOJ] be able to conduct an independent review of each state's list," and that "[a]ny statewide prohibitions are clearly preempted." *Id.* at 1 & n.1; *see also* D.I. 1, ¶ 9. DOJ cited no authority for its assertions other than its ability to enforce NVRA and HAVA. *Id.* at 1-2 & n.1.

On August 15, 2025, Delaware responded to DOJ's July 11 letter, providing detailed answers to DOJ's original requests for information about Delaware's list-maintenance procedures, explanations for its EAVS responses, and records of Delaware's VRL maintenance. Ex. 6, Comm'r Albence Ltr. to DOJ (Aug. 15, 2025). Delaware noted that DOJ had not addressed the authority in Delaware's July 25 response nor provided the information Delaware requested on August 6. *Id.* at 9. Nonetheless, Delaware reiterated its "willing[ness] to provide a copy of Delaware's public [VRL] . . . subject to resolving data security and confidentiality concerns." *Id.* at 8.

On August 21, 2025, Delaware responded to DOJ's Demand. Ex. 7, Comm'r Albence Ltr. to DOJ (Aug. 21, 2025). Delaware reiterated its "willing[ness] to provide information in a manner consistent with federal law (including the 1974 Privacy Act), as well as Delaware law," but explained that DOJ had both "fail[ed] to address the Delaware law that . . . does not permit [the State] to provide [all] fields [of the VRL]" and "declined to address" the federal cases that contradicted DOJ's position. *Id.* at 1-2. Delaware also explained that DOJ still had not adequately confirmed whether the Privacy Act applied to the VRL or identified the SORN that would govern. *Id.* at 2. Delaware stated it could not "lawfully provide [DOJ] with Delawareans' sensitive personal information unless these issues were resolved," but that it would respond to DOJ's CRA request by September 16, 2025. *Id.* at 2, 4.

On September 16, Delaware sent a second response to DOJ's Demand which reiterated that DOJ had not identified a valid purpose or basis for its request under the CRA. Ex. 8, at 2-3, Comm'r

Albence Ltr. to DOJ (Sept. 16, 2025). Delaware further explained that DOJ had not fully responded to Delaware's privacy-related questions, including its concern that DOJ sought Delawareans' data to compare it to other federal databases or for law-enforcement purposes. *Id.* at 4-6. DOJ never responded to Delaware's August 15, August 21, or September 15 letters, and DOJ never engaged with the information Delaware provided or answered Delaware's questions. Instead, on December 2, 2025, DOJ brought this lawsuit. D.I. 1, ¶¶ 10-11.

### C. This Suit Is One of Many Nationwide that Implicate the Personal Information and Privacy Rights of Registered Voters.

Delaware is not the only jurisdiction from which DOJ seeks troves of sensitive voter data. To date, DOJ has sued 24 States and the District of Columbia for unredacted copies of their VRLs.[4] To date, two district courts have dismissed DOJ's complaints in their entirety. *See Weber*, 2026 WL 118807 (California); *Oregon*, 2026 WL 318402.

According to the Complaint, though never communicated directly to Delaware, DOJ intends to maintain Delawareans' individual voter records among all other Civil Rights Division case files. *See* D.I. 1, ¶ 25 (identifying the applicable records system). The SORN that DOJ alleges it will apply to Delaware's VRL would permit the VRL to be available for "routine uses" and would permit its disclosure to, among other entities, Congress; federal, state, and local governmental agencies; DOJ contractors; and private individuals and organizations. *See id.*; Dep't of Justice, *Privacy Act of 1974: Systems of Records*, 68 Fed. Reg. 47610 (Aug. 11, 2003), https://perma.cc/4SR2-T86L. In other words, if provided to DOJ, the sensitive personal information that Delawareans provided to Delaware in order to vote—including their full dates of

---

[4] This Court can take judicial notice of these cases, which are matters of public record and listed in the Appendix, on a motion to dismiss. *See Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 861 (D. Del. 1991).

birth and government-issued identifying numbers—and records of these citizens' political affiliations and voting history, would be subject to wide-ranging use and disclosure.

## III.   SUMMARY OF ARGUMENT

This Court should dismiss the United States' claim. The CRA does not grant DOJ the broad power it asserts, and DOJ's Demand violates federal privacy law. *See Weber*, 2026 WL 118807, at *1-2, *8-10, *17-20; *Oregon*, 2026 WL 318402, at *1, *3, *7-13.

1.      The CRA requires DOJ to provide "a statement of the basis and the purpose therefor" for a demand. 52 U.S.C. § 20703. Neither the Demand nor the Complaint provide any "statement of the basis" for DOJ's Demand and the "purpose" articulated by DOJ—to assess voter list maintenance under the NVRA—is neither supported by the CRA (which authorizes investigations into prohibited racial discrimination in voting), nor consistent with the inspection sought. Moreover, under its plain terms, the CRA concerns records related to an election for federal office conducted within the past 22 months. *Id*. § 20701. Delaware's *current* VRL, the sole record sought in the Complaint, has not been used for any *prior* federal election. Finally, the CRA requires that records "be made available for [DOJ's] inspection, reproduction, and copying at the principal office of such custodian." *Id.* § 20703. The CRA does not require Delaware to provide a searchable electronic file containing close to a million Delawareans' sensitive voter records.

2.      The Complaint should also be dismissed as contrary to federal and state privacy laws. The Privacy Act of 1974, 5 U.S.C. § 552a, imposes substantive and procedural safeguards on any federal collection of individually identifiable information. The Privacy Act does not permit federal agencies to maintain records describing how any individual exercises First Amendment rights except under limited, inapplicable circumstances. *Id.* § 552a(e)(7). DOJ's mass acquisition of VRLs that include the political affiliations and voting history of almost a million Delawareans

appears to be precisely what the Privacy Act was enacted to prevent. The general SORN that DOJ cites in its Complaint does not address this defect. Moreover, DOJ's collection of VRLs also violates the Driver's Protection Privacy Act (DPPA), 18 U.S.C. § 2721 *et seq.*, with respect to "personal information" obtained from state motor vehicle records. *Id.* § 2725(3). Further, DOJ's Demand also would require Delaware to violate state privacy protections that prohibit the disclosure of sensitive voter information, including to other governmental agencies. *See* 15 Del. Code §§ 304(g)-(i), 1305. Delaware law respecting its citizens' sensitive voter information is not preempted by NVRA enforcement efforts. *See Farina v. Nokia Inc.*, 625 F.3d 97, 115-16 (3d Cir. 2010) (explaining conflict preemption generally); *see also Arizona*, 570 U.S. at 8-9 (explaining preemption under the Elections Clause); *Oregon*, 2026 WL 318402, at *12 (in VRL case, DOJ failed to show federal law preempts state law).

## IV.    ARGUMENT

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This Court "construe[s] the complaint in the light most favorable to the plaintiff[,]" but the plaintiff must "allege enough facts to state a claim to relief that is plausible on its face." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (citation modified). To make that determination, the Court will: (1) identify the statutory elements; (2) identify conclusory allegations that are not entitled to the assumption of truth; and (3) assume the truth of well-pleaded factual allegations and determine whether they plausibly give rise to a claim for relief. *Id.* at 221. This Court may consider "document[s] *integral to or explicitly relied* upon in the complaint" and "matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation modified).

### A.    DOJ Has Failed to State a Claim under the CRA.

DOJ's claim that Delaware violated 52 U.S.C. § 20703 by not providing DOJ an unredacted copy of Delaware's VRL fails as a matter of law for at least three independent reasons.

11

1.    DOJ's Demand Fails the CRA's Basis-and-Purpose Requirement.

When DOJ requests records under the CRA, DOJ must include "a statement of the basis and the purpose" for its demand. 52 U.S.C. § 20703. By using "the" in both "the basis" and "the purpose," the text is clear that these are separate requirements. *See Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004) (courts should give effect to every clause and word of a statute and avoid surplusage); *United States v. Adair*, 38 F.4th 341, 351 (3d Cir. 2022) (use of a definite article, such as "the," most often seeks to identify a distinct person or thing). When dismissing DOJ's complaint against California, the district court expressly held that "DOJ is required to offer a written statement of *both* the purpose and basis for its demands," which functions as a "critical safeguard that ensures the request is legitimately related to the purpose of the [CRA]." *Weber*, 2026 WL 118807, at *8-9; *see Oregon*, 2026 WL 318402, at *7-10 (basis-and-purpose showing).

Cases contemporaneous with the CRA's passage show that "the basis" for a demand is the factual reason for believing civil rights violations may have occurred, while "the purpose" explains how the records pertain to that determination. *See Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962); *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962). Dictionary definitions confirm as much. "Basis" means the "[f]undamental principle; groundwork; support; foundation; . . . [and] that upon which anything may rest[.]" Black's Law Dictionary (4th ed. 1968). "Purpose" is defined as "[t]hat which one sets before him to accomplish; an end, intention, or aim, object, plan, project." *Id.*

a.    *DOJ Has Provided No Basis for its Demand.*

Here, neither the Complaint nor DOJ's Demand articulated any basis—that is, factual foundation—whatsoever for seeking Delaware's VRL. *See* D.I. 1, ¶ 29 (conclusory allegation that the Demand "contain[ed] a statement of the basis and the purpose therefor."); Ex. 5, Demand. *See Oregon*, 2026 WL 318402, at *8-9 ("basis" means the factual basis, not the statutory basis).

DOJ cannot ignore the CRA's requirement that it provide a "basis" for its Demand. Even the earliest CRA cases, brought against the backdrop of widespread attempts to keep African Americans from voting, articulated a factual basis for the Attorney General's demand: "This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Lynd*, 306 F.2d at 229 n.6; *see also id.* 229 n.5; *Bruce*, 298 F.2d at 861. The district courts examining DOJ's complaints against California and Oregon dismissed those CRA claims for this flaw. *Weber*, 2026 WL 118807, at *9; *Oregon*, 2026 WL 318402, at *8-9.

b.    *Testing NVRA Compliance Generally Is Not a Purpose for Inspection under the CRA.*

Title III of the CRA was enacted to facilitate investigations into civil rights violations related to discrimination in voting. A valid statement of the basis and the purpose for an inspection under the CRA therefore must relate to such an investigation. The Complaint should be dismissed because the Demand does not meet this requirement.

Here, the legislative history of the CRA and the atmosphere in which it was enacted make clear its purpose. "The purpose of Title III is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956, at 7, 26 (1959); *Alabama ex rel. Gallion v. Rogers, D.C.*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd In re Dinkens*, 285 F.2d 430 (5th Cir. 1961) ("The legislative history leaves no doubt that [the CRA] is designed to secure a more effective protection of the right to vote."); *Bruce*, 298 F.2d at 863 (stating a registrar's claim of no wrongdoing could not overcome DOJ's demand in light of the stark racial disparity in the county's registered voters relative to unregistered eligible voters).

Cases applying the CRA echo its purpose. "Title III provides 'an effective means whereby preliminary investigations of registration practices can be made in order to determine whether such

practices conform to constitutional principles.'" *Lynd*, 306 F.2d at 225 (quoting *Rogers*, 187 F. Supp. at 853); *see also Weber*, 2026 WL 118807, at *8 ("The purpose of Title III is to detect voting-related racial discrimination."). *Lynd* met this standard: "The purpose of this demand is to examine aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." 306 F.2d at 229 n.6. But expanding the scope of the CRA to permit inspection for any reason, unrelated to the purposes of the CRA itself, would "sap the interpreted provision of all practical significance." *Pacific Coast Fed'n of Fishermen's Assocs., Inc. v. Nickels*, 150 F.4th 1260, 1271, 1273 (9th Cir. 2025).

Here, the Demand for Delaware's VRL has nothing to do with racial discrimination. Instead, DOJ's alleged purpose is to assess Delaware's compliance with the provisions of the NVRA that require "a general program that makes a reasonable effort to remove the names of" voters who are ineligible due to death or a change in residence. 52 U.S.C. § 20507(a)(4). Mere failure to purge voter registration lists of these ineligible voters would not automatically fall within Title III's scope. *See Bruce*, 298 F.2d at 863 & n.2 (noting that statistical evidence in a Title III proceeding indicating a failure to remove voters who moved away or died was "a matter which does not bear any particular importance to the present inquiry"). Put simply, "Title III was not passed as a tool for NVRA compliance." *Weber*, 2026 WL 118807, at *9. The CRA does not provide authority for DOJ's current investigation.

c.     *Delaware's VRL Does Not Measure Delaware's NVRA and HAVA Compliance.*

In any event, DOJ's HAVA and NVRA authority concerns the processes and procedures *used by Delaware* to maintain an accurate and current VRL—which are not part of the VRL itself. DOJ does not need the sensitive data of every individual on Delaware's VRL to assess whether Delaware has made "reasonable effort[s]" to maintain an accurate and current VRL. *See Weber*,

14

2026 WL 118807, at *9. Prior cases concerning inspection under the NVRA have specifically held that sensitive, private data of each individual citizen is not necessary to understand how Delaware implements programs and activities to ensure the accuracy and currency of its voter list. *See, e.g.*, *Torrez*, 160 F.4th at 1083 n.14; *Bellows*, 92 F.4th at 56; *N.C. State Bd. of Elecs.*, 996 F.3d at 267-68 & n.9; *Project Vote/Voting for Am., Inc.*, 682 F.3d at 339.

The plain text of the NVRA and HAVA belie DOJ's assertion that "Congress plainly intended that [the] Justice Department be able to conduct an independent review of each state's list" when it charged the Attorney General with enforcement of the NVRA and HAVA. Ex. 5, Demand, at 1 &, n.1; *see also* Compl., D.I. 1, ¶ 9. Each statute simply authorizes DOJ to seek declaratory and injunctive relief as necessary to ensure states fulfilled their federal obligations. *See* 52 U.S.C. §§ 20510(a), 21111. Those obligations include implementing programs to undertake "reasonable effort[s]" to maintain an accurate and current VRL, *see* 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A), and do not require the removal of every ineligible voter, *see Bellitto*, 935 F.3d at 1200; *Phila. City Cmm'rs*, 872 F.3d at 182-84; *see also Oregon*, 2026 WL 318402, at *2.

Because DOJ did not state an adequate purpose under the CRA, the Complaint fails.

### 2.    The CRA Does Not Apply to Delaware's Current VRL.

The Complaint also can be dismissed because Delaware's *current* VRL does not fall within the CRA's scope. The CRA requires states to retain records related to *prior* federal elections:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for [federal] office . . . are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.

52 U.S.C. § 20701. *See Lynd*, 306 F.2d at 226 ("[T]he papers and records subject to inspection and demand have been specifically identified by Congress.").

15

Here, DOJ's Demand does not seek records related to voting in a federal election that occurred in the past 22 months. *See* D.I. 1, ¶ 28 (referencing DOJ's August 14, 2025, letter); Ex. 5, Demand. DOJ simply omits relevant language when quoting Section 20701 (D.I. 1, ¶ 1) while seeking a copy of Delaware's *current* VRL, (D.I. 1, ¶¶ 19, 23; *id.* at p. 11). The current VRL does not fall within Section 20701, so DOJ lacks authority to "inspect[], reproduce[e], and copy[]" it under the CRA. 52 U.S.C. § 20703 (authority reaches only records covered by Section 20701).

3.    The CRA Does Not Require the Electronic Transfer of a Searchable VRL.

Finally, any records the Commissioner must produce under the CRA need only "be made available for inspection, reproduction, and copying at [his] principal office." 52 U.S.C. § 20703. The CRA does not require Delaware to transfer the VRL electronically to DOJ. *Cf.* D.I. 1, at 11; *see also id.* ¶¶ 20, 23. *See Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1332-34 (11th Cir. 2024) (reasoning for purposes of the NVRA's public-disclosure provision that electronic production is "an entirely different method of disclosure").

In proposing the scope of the Attorney General's access to voter records under the CRA, General Rogers was sensitive to charges that such power bestowed "might be viewed by some as an attempt by the federal government to interfere unduly with state control over voting records." *Proposed Civil Rights Legislation: Hearing Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 86th Cong., 1st Sess. 13-14 (1959) (statement by Honorable William P. Rogers, Att'y Gen. of the U.S.), https://perma.cc/H64U-GYMG. So, the CRA's access provision permits federal *inspection*, as opposed to *control*, of state voter records. Sixty-five years later, DOJ cannot broaden the CRA's scope to demand an electronic copy of the Delaware's unredacted VRL.

Adopting DOJ's expansive interpretation of inspection under the CRA also would conflict with the Privacy Act, 5 U.S.C. § 552a, and the NVRA and HAVA's adaptation to its restrictions. In 1959, voter records did not, unlike now, include "confidential, private papers and effects." *Lynd*,

306 F.2d at 231. Rather, when adopted, the CRA provided access to "public records which ought ordinarily to be open to legitimate reasonable inspection." *Id.* The "sensitive and identifying information" DOJ seeks here, not required for voter registration until HAVA's passage in 2002, is "private," protected under state law, "and not open to inspection by federal officials." *Weber*, 2026 WL 118807, at *9; *see also Oregon*, 2026 WL 318402, at *10-12.

When the NVRA and HAVA were enacted, Congress had placed restrictions on federal agencies' collection of records retrievable by individual identifiers based on growing threats to privacy from technological advances, including federal use of computerized matching programs. *See* 5 U.S.C. § 552a note. This Court should reject DOJ's argument that the CRA's on-site production provision, passed decades earlier in the context of paper records that lacked today's sensitive voter data, gives DOJ unfettered electronic access to Delawareans' unredacted voter files.

**B.   DOJ's Demand Violates Federal and State Privacy Laws.**

The Complaint also should be dismissed because DOJ's demand violates federal and state privacy laws. Delaware may prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense where "the defense is apparent on the face of the complaint and documents relied on in the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (citation modified). Delaware satisfies this standard, as set forth below.

1.   <u>DOJ's Demand Violates the Privacy Act.</u>

The Complaint can be dismissed because DOJ's demand for an unredacted copy of Delaware's VRL runs afoul of the Privacy Act. *See Weber*, 2026 WL 118807, at *17-18 (holding the demand for California's VRL unlawful under the Privacy Act on a motion to dismiss).

DOJ now concedes that the records it seeks are covered by the Privacy Act. D. I. 1, ¶ 25; *see also* 5 U.S.C. § 552a(a)(3)-(5) (defining "record," "maintain," and "system of records"). As such, DOJ must comply with the Act's requirements and may maintain only such information

about an individual as relevant and necessary to accomplish a statutory purpose or lawful executive order. *Id*. § 552a(e)(1). The Act bars DOJ from amassing information for a purpose that would exceed its power under the Constitution and federal law. *See LULAC*, 780 F. Supp. 3d at 194; *California*, 786 F. Supp. 3d at 372-73; U.S. Const. art. I, § 4.

The Privacy Act also prohibits federal agencies from collecting information of individual's exercise of First Amendment rights "unless expressly authorized by statute," or "by the individual about whom the record is maintained," or "unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7); *Patterson by Patterson v. FBI*, 893 F.2d 595, 602-03 (3d Cir. 1990) (interpreting "law enforcement activity" exception to encompass a relevancy standard); *Albright v. United States*, 631 F.2d 915, 918-20 (D.C. Cir. 1980) (recognizing the Act affords First Amendment rights special protection). None of these exceptions apply in this case.

Political affiliation and voter history are protected First Amendment activity. *See Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973) (political affiliation is an associational right); *Illinois State Bd. of Elecs. v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) (Americans "express their political preferences" through voting); *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (not voting can reflect "political thought and expression"). That information is included in Delaware's VRL. There is no authority for DOJ to collect this information broadly. At a minimum, the Complaint must furnish a factual basis, not simply a bare reference to statutes, to demonstrate that all individual records in their entirety are relevant to a legitimate, authorized law enforcement objective in this case. *See Patterson v. FBI*, 705 F. Supp. 1033, 1042-44 (D.N.J. 1989).

Further, the notice for the records system where DOJ would maintain the VRL is deficient. The "System of Records Notice," commonly called a SORN and published in the Federal Register, must include the categories of individuals on whom records are maintained, the categories of

records maintained, the categories of sources of records in the system, and routine uses. 5 U.S.C. § 552a(e)(4). Agencies must provide "adequate advance notice" to Congress and the Office of Management and Budget (OMB) before "mak[ing] a significant change in a system of records . . . to permit an evaluation of the probable or potential effect of such proposal on the privacy or other rights of individuals." *Id*. § 552a(r). "Significant changes" include substantial increases to the number, type, or categories of individuals about whom records are maintained. Off. of Mgmt. & Budget, Circular No. A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act* 5-6, 13-17 (Dec. 2016), https://perma.cc/3NKT-64HA.

Here, the SORN referenced in the Complaint (D.I. 1, ¶ 25) does not meet these requirements when applied to Delaware's VRL and the millions of individual records containing personal information, voting records, and political affiliations of every registered Delaware voter it contains. DOJ's SORN merely states that it concerns "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division [CRT]," and that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, potential witnesses" and others "referred to CRT in potential or actual cases and matters of concern to CRT." *Privacy Act of 1974; Systems of Records*, 68 Fed. Reg. 47610, 47611. That notice is inadequate under the statute.

2.    DOJ's Demand Violates the E-Government Act.

Section 208 of the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, requires a government agency to conduct a "privacy impact assessment" *before* initiating a new collection of information using information technology that includes information in an identifiable form. *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017). DOJ's Demand is also unlawful because it conducted no such assessment. *See Weber*, 2026 WL 118807, at *19.

3.     DOJ's Demand Violates the Driver's Protection Privacy Act.

Contrary to DOJ's assertion, *see* D.I. 1, ¶ 24, DOJ's demand also violates the Driver's Protection Privacy Act (DPPA), 18 U.S.C. § 2721 *et seq.*, which limits uses of "personal information" obtained from State motor vehicle records, *id.* § 2725(3). Although the DPPA includes a governmental exception, *id.* § 2721(b)(1), the statute uses the term "may," not "shall," as pertains to disclosures to such agencies, *id.*, and for court proceedings and anticipated litigation, *id.* § 2721(b)(4). This Court should not interpret that permissive language to permit DOJ's indiscriminate request for almost a million Delawareans' personal and sensitive information. DOJ must assert a plausible factual basis for seeking voters' personal information and connect such request to legally authorized activities, neither of which the Complaint does. The Complaint also fails for this reason. *See Weber*, 2026 WL 118807, at *19.

4.     DOJ's Demand Violates Delaware's Privacy Protections.

Finally, DOJ's Demand also would require Delaware to violate state privacy protections. As Delaware made clear in its correspondence with DOJ—*see* Ex. 2, at 1-2; Ex. 6, at 8-9; Ex. 7, at 2; Ex. 8, at 8—Delaware law prohibits the disclosure of sensitive voter information, including to other governmental agencies. *See* 15 Del. Code §§ 304(g)-(i), 1305. Because the CRA does not require the provision of sensitive voter information—and because federal privacy laws protect against the unauthorized collection of individually identifiable records—federal law does not preempt these state-law protections. *See Farina*, 625 F.3d at 115-16 (explaining conflict preemption generally); *see also Arizona*, 570 U.S. at 8-9 (explaining preemption under the Elections Clause).

## V.     CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint (D.I. 1).

Respectfully submitted,

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)
Director of Impact Litigation
Emily V. Burton (DE Bar No. 5142)
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, DE  19801
Tel.: (302) 683-8875
ian.liston@delaware.gov
*Counsel for Defendant*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2026, I filed the foregoing Defendant's Motion to Dismiss and Memorandum of Law in Support of Defendant's Motion to Dismiss electronically using this Court's CM/ECF system. All counsel of record are registered CM/ECF users and will be served electronically via the Court's CM/ECF system.

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)