# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-01453- |
| | ) | RGA |
| ANTHONY ALBENCE, in his | ) | |
| official capacity as State Election | ) | |
| Commissioner of the State of | ) | |
| Delaware, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION FOR PRODUCTION OF RECORDS DEMANDED PURSUANT TO THE CIVIL RIGHTS ACT OF 1960**

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)
Director of Impact Litigation
Emily V. Burton (DE Bar No. 5142)
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, DE 19801
Tel.: (302) 683-8875
ian.liston@delaware.gov
*Counsel for Defendant*

Date: February 9, 2026

**TABLE OF CONTENTS**

I.    INTRODUCTION AND STATUS OF THE PROCEEDINGS ............................................ 1

II.   RELEVANT STATUTORY AND FACTUAL BACKGROUND ....................................... 2

    A.   States Have Constitutional and Statutory Responsibility for Registering Eligible Voters, Administering Elections, and Maintaining VRLs................................................................ 2

    B.   DOJ Demands an Unredacted Copy of Delaware's VRL Yet Ignores Basic Questions Delaware Asked about the Legality of DOJ's Request. ....................................................... 4

    C.   Delaware Has Legitimate Concerns that DOJ Unlawfully Seeks Its Voter Data for Purposes Other Than Assessing Delaware's NVRA Compliance. ....................................7

III.  SUMMARY OF ARGUMENT .......................................................................................... 12

IV.   ARGUMENT..................................................................................................................... 13

    A.   The Federal Rules Apply to DOJ's Civil Action and Permit Delaware a Full Opportunity to Test and Challenge the Legality of DOJ's Demand. ..................................................... 13

    B.   If the CRA Claim Is Not Dismissed, the Circumstances Permit Delaware to Develop an Adequate Record Before the Court Grants Any Requested Relief.................................. 16

V.    CONCLUSION................................................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

*Am. Civil Rights Union v. Phila. City Cmm'rs*, 872 F.3d 175 (3d Cir. 2017) ........................ 2, 18

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ............................................ 2, 19

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ............................................... 2, 3, 18

*Chao v. Cmty. Tr. Co.*, 474 F.3d 75 (3d Cir. 2007) ............................................... 16, 17

*F.D.I.C. v. Wentz*, 55 F.3d 905 (3d Cir. 1995)........................................ 15, 16, 17, 19

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).................................................. 14

*League of United Latin Am. Citizens (LULAC) v. Exec. Off. of the President*, 780 F. Supp. 3d 135
    (D.D.C. 2025) ........................................................................................ 2, 19

*League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-03501, 2025 WL
    3198970 (D.D.C. Nov. 17, 2025)............................................................... 9

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ........................... 18

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)................................ 3, 18

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elecs.*, 996 F.3d 257 (4th Cir. 2021)............ 3, 18

*United States v. Clarke*, 573 U.S. 248 (2014) ...................................................... 15, 19

*United States v. Garden State Nat'l Bank*, 607 F.2d 61 (3d Cir. 1979)............................... 15

*United States v. Oregon*, No. 6:25-cv-1666, 2026 WL 318402 (D. Or. Feb. 5, 2026).......... passim

*United States v. Powell*, 379 U.S. 48 (1964) ....................................................... passim

*United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .... 16, 17

*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980)................................. 16

*United States v. Westinghouse Elec. Corp.*, 788 F.2d 164 (3d Cir. 1986)................................. 15

*Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025) ................................ 18

### Statutes

5 U.S.C. § 552a ..................................................................................... 18, 19

5 U.S.C. § 552a note ................................................................................... 18

52 U.S.C. § 20501 ...................................................................................... 2, 18

52 U.S.C. § 20507 ................................................................................. 1, 2, 8, 18

52 U.S.C. § 20510 ......................................................................................... 2

52 U.S.C. § 20511 ......................................................................................... 2

52 U.S.C. § 20701 ...................................................................................... 4, 17

52 U.S.C. § 20701 *et seq.* ............................................................................ 1, 3

52 U.S.C. § 20703 ...................................................................................... 4, 17

52 U.S.C. § 20705 ...................................................................................... 4, 14

52 U.S.C. § 21083 ................................................................................... 1, 3, 18

52 U.S.C. § 21085 ......................................................................................... 3

52 U.S.C. § 21111 ......................................................................................... 3

**Other Authorities**

Dep't of Homeland Sec., *Privacy Act of 1974: System of Records*, 90 Fed. Reg. 48948 (2025),
        https://perma.cc/9YYE-B3A5 ........................................................................................ 9, 10
Dep't of Justice, *Privacy Act of 1974: Systems of Records*, 68 Fed. Reg. 47610 (2003),
        https://perma.cc/4SR2-T86L ................................................................................................ 11
Exec. Order No. 14248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed.
        Reg. 14005 (Mar. 25, 2025), https://perma.cc/LW9V-29BL .................................................. 9
Fed. R. Civ. P. 1 .............................................................................................. 12, 13, 14, 16
Fed. R. Civ. P. 3 ....................................................................................................................... 14
Fed. R. Civ. P. 16 ..................................................................................................................... 16
Fed. R. Civ. P. 81 ........................................................................................................ 12, 13, 16
H.R. Doc. No. 75 (1st Sess. 1959), *reprinted in* 10 Cong. Rec. 1922 (Feb. 5, 1959) ................... 3

## I.     INTRODUCTION AND STATUS OF THE PROCEEDINGS

This case concerns a far-reaching demand by the U.S. Department of Justice ("DOJ") under Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq.*, for an unredacted copy of Delaware's current voter registration list ("VRL"). The CRA protects against race discrimination in voting by requiring jurisdictions to produce certain election-related records for DOJ's inspection, but only after DOJ articulates a legitimate basis and purpose for such request. DOJ articulates no such basis or purpose here, and there is ample reason to question the demand.

DOJ seeks Delaware's unredacted VRL—including the social security numbers, driver's license information, and political affiliation and voting history of over 95% of Delaware's voting-age citizens—purportedly to assess Delaware's compliance with the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA"). Those federal statutes require states, *not the DOJ*, to register eligible voters, make "reasonable effort[s]" to maintain accurate and current VRLs, and protect against improper voter removal. *See* 52 U.S.C. §§ 20507(a)(4), 21083(a)(2). DOJ's demand is untethered to its responsibilities under the NVRA and HAVA, is inconsistent with the CRA's requirements and purpose, and violates federal and state privacy laws.

On December 2, 2025, the United States filed a Complaint (D.I. 1) against State Election Commissioner Anthony Albence ("Delaware") for allegedly violating the CRA because Delaware could not provide DOJ with a complete, unredacted copy of Delaware's VRL without confirming the legality of DOJ's request. The same day, DOJ also filed a Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960 (D.I. 3). Delaware has filed a Motion to Dismiss the Complaint for failure to state a claim on which relief can be granted (D.I. 33). For the reasons explained in Delaware's Memorandum of Law in support of its Motion to Dismiss (D.I. 34) and for the reasons argued below, Delaware opposes the United States' Motion (D.I. 3).

1

## II.    RELEVANT STATUTORY AND FACTUAL BACKGROUND

### A.    States Have Constitutional and Statutory Responsibility for Registering Eligible Voters, Administering Elections, and Maintaining VRLs.

DOJ's demand for an unredacted copy of Delaware's VRL intrudes unlawfully on responsibilities both the Constitution and Congress assigned to states. The Constitution allocates to the states "responsibility for the mechanics" of elections, except where Congress displaces that authority. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (citation modified). Even where the federal government can displace state rules, "Congress—not the President—is the check on States' authority to regulate federal elections." *League of United Latin Am. Citizens (LULAC) v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 194 (D.D.C. 2025).

To this end, the NVRA requires states, not the executive branch, to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters . . . by reason of" the registrant's death or change in residence. 52 U.S.C. § 20507(a)(4). Congress did not require a program designed "to remove <u>any</u> ineligible voter." *Bellitto v. Snipes*, 935 F.3d 1192, 1200 (11th Cir. 2019); *see Am. Civil Rights Union v. Phila. City Cmm'rs*, 872 F.3d 175, 182-84 (3d Cir. 2017) (same). Indeed, the NVRA incorporated a safe harbor process for voter-list maintenance that precludes immediate removal of voters who move out of state and *requires* a state to delay removing such voters for an entire election cycle. *See* 52 U.S.C. § 20507(d)(2)(A). Congress did not authorize DOJ to carry out these duties for states; rather, Congress empowered DOJ only to bring civil actions "for such declaratory or injunctive relief as is necessary" to ensure a states' reasonable efforts under the NVRA, *id.* § 20510(a), and to seek criminal liability for certain prohibited conduct, *id.* § 20511. Congress also included a public-inspection requirement regarding "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* § 20507(i). This

2

provision has been consistently interpreted by federal courts to permit withholding of sensitive voter information from disclosure. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elecs.*, 996 F.3d 257, 267-68, 268 n.9 (4th Cir. 2021).

Congress also imposed minimum standards states must follow in administering federal elections when it passed HAVA in 2002, including use of "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A). But Congress left "[t]he specific choices on the methods of compl[iance]" to states' discretion. *Id.* § 21085; *see Bellitto*, 935 F.3d at 1202 ("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations."). HAVA maintained the NVRA's citizenship attestation requirement and specified that the federal form used for mail registration include check boxes for the applicant to indicate if they are a U.S. citizen and of voting age. 52 U.S.C. § 21083(b)(4)(A). As with the NVRA, Congress authorized DOJ to seek declaratory and injunctive relief as necessary to enforce HAVA's requirements. *Id.* § 21111.

Title III of the CRA, 52 U.S.C. § 20701 *et seq.*, on the other hand, imposes record retention requirements on jurisdictions to protect against race discrimination in voting. See H.R. Doc. No. 75 (1st Sess. 1959), *reprinted in* 10 Cong. Rec. 1922 (Feb. 5, 1959) (letter from President Eisenhower incorporated into the congressional record). The 1960 CRA provided DOJ access to registration records "essential to determin[ing] whether the denial of the franchise was in furtherance of a pattern of racial discrimination." *Id.* The CRA does not authorize DOJ to demand sensitive voter information or usurp control of states' VRLs, voter-eligibility determinations, or list-maintenance procedures. Under the CRA, election officers "shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal

3

office "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. DOJ can demand "the person having custody, possession, or control of" such records or papers make them "available for inspection, reproduction, and copying at [the custodian's] principal office." *Id.* § 20703. But any demand "shall contain a statement of the basis and the purpose therefor." *Id.* Federal district courts "have jurisdiction *by appropriate process* to compel the production of such record or paper." *Id.* § 20705 (emphasis added).

      **B.**    **DOJ Demands an Unredacted Copy of Delaware's VRL Yet Ignores Basic Questions Delaware Asked about the Legality of DOJ's Request.**

Beginning in summer of 2025, Delaware received several information demands from DOJ. This correspondence culminated in DOJ's August 14, 2025, written demand under the CRA at issue in this litigation. Through the correspondence, Delaware provided detailed information on how it complies with HAVA and the NVRA, repeatedly expressed a willingness to share relevant information with DOJ to the extent consistent with state and federal law, and asked specific questions about the legality of DOJ's requests. Despite the information that Delaware provided, DOJ raised no specific concerns regarding Delaware's compliance with the NVRA and HAVA and ignored Delaware's questions. Instead, DOJ simply reiterated its demand for an unredacted copy of Delaware's VRL.

DOJ's first letter to Delaware on July 11, 2025, requested "information regarding the state's procedures for complying with the [NVRA's] statewide voter registration list maintenance provisions." GX 1[1], at 1, DOJ Ltr. to Comm'r Albence (July 11, 2025). The letter requested that Delaware "produce for inspection . . . [t]he current electronic copy of Delaware's computerized

---

[1] "GX" refers to exhibits accompanying the United States' Motion. "DX" refers to Defendant's exhibits included with this opposition, which include relevant correspondence that DOJ omitted.

statewide voter registration list . . . as required by [HAVA]" and "include all fields contained within the list." *Id.* DOJ also requested a "description of the steps . . . taken . . . to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA." *Id.* at 2. DOJ also requested, within 14 days, explanations of Delaware's answers to the Election Assistance Commission's 2024 Election Administration and Voting Survey ("EAVS") and information on voters Delaware identified as ineligible under each of three categories. *Id.* at 2-3.

On July 25, 2025, Delaware responded that it anticipated "fully responding . . . in a manner consistent with Delaware's obligations under the NVRA and its duties under Delaware law, in due course." GX 2, at 1, Comm'r Albence Ltr. to DOJ (July 25, 2025). Delaware also offered to provide DOJ with an electronic copy of its VRL "pursuant to [Del. Code tit. 15 § 304(h)]," which protects voters' sensitive information from disclosure, and noted that the NVRA does not require electronic transmission or the disclosure of sensitive information protected under state law. *Id.* at 1-2.

On July 31, 2025, DOJ directed Delaware to use DOJ's electronic file-sharing system to transmit a public version of Delaware's VRL to DOJ and provided a user-application form for Delaware to complete. DX 1, at 1-2, DOJ Email to Comm'r Albence (July 31, 2025); GX 3, DOJ Email to Comm'r Albence (Aug. 4, 2025). The form required "each person intending to upload documents" to DOJ to certify that they would use the system in a manner consistent with federal law. Because the Privacy Act of 1974 implicates the federal government's collection of individualized data, Delaware, on August 6, 2025, asked DOJ its view whether the VRL was "subject to" the Privacy Act, and, if so, "how [DOJ] w[ould] store and maintain the information," and for "the [applicable] system of records." DX 1, at 1.

On August 14, 2025, DOJ sent another letter to Delaware. GX 4, DOJ Ltr. to Comm'r Albence (Aug. 14, 2025) (the "Demand"). DOJ invoked, for the first time, Title III of the CRA, to

"demand[] an electronic copy of Delaware's complete and current VRL." *Id.* at 2. DOJ asserted that its purpose "was to ascertain Delaware's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* DOJ stated that the VRL "must contain *all fields*" required under HAVA, and that, because "Congress plainly intended that [DOJ] be able to conduct an independent review of each state's list," "[a]ny statewide prohibitions are clearly preempted." *Id.* at 1 & n.1. In so asserting, DOJ cited only its ability to bring NVRA and HAVA actions. *Id.* at 1-2 & n.1. DOJ stated that the CRA's confidentiality protections, 52 U.S.C. § 20704, and the Privacy Act, 5 U.S.C. § 552a, would apply, and that Delaware should provide its VRL by August 21. *Id.* at 2-3 & n.2.

On August 15, 2025, Delaware responded to DOJ's July 11 letter and provided detailed answers to DOJ's original requests for information about Delaware's list-maintenance procedures, explanations for its EAVS responses, and records of removed voters. GX 5, Comm'r Albence Ltr. to DOJ (Aug. 15, 2025). Delaware reiterated its "willing[ness] to provide a copy of Delaware's public [VRL] . . . subject to resolving data security and confidentiality concerns," *id.* at 8, and noted that DOJ had not addressed the authority Delaware provided in its July 25 response nor the information Delaware requested on August 6, *id.* at 9. Nonetheless, Delaware represented that it would evaluate the authority DOJ provided in its Demand and respond to DOJ "in due course." *Id.*

On August 21, 2025, Delaware responded to DOJ's Demand. DX 2, Comm'r Albence Ltr. to DOJ (Aug. 21, 2025). Delaware reiterated its "willing[ness] to provide information in a manner consistent with federal law (including the 1974 Privacy Act), as well as Delaware law," yet explained that DOJ had "fail[ed] to address the Delaware law that . . . does not permit [Delaware] to provide [all] fields [of the VRL]" and "declined to address" the federal cases that contradicted DOJ's position. *Id.* at 1-2. Delaware also explained that DOJ still had not adequately confirmed whether the Privacy Act applied to the VRL or identified the applicable system of records. *Id.* at

2. Delaware stated that it could not "lawfully provide [DOJ] with Delawareans' sensitive personal information unless these issues were resolved," but that it would respond further to DOJ's Demand by September 16, 2025. *Id.* at 2, 4. DOJ's filings omit this letter.

On September 16, Delaware sent a further response to DOJ's Demand explaining that the Demand did not include a valid basis or purpose under the CRA. GX 6, at 2-3, Comm'r Albence Ltr. to DOJ (Sept. 16, 2025). Delaware explained that DOJ had not fully responded to its privacy-related questions, including concern that DOJ sought Delaware's data to compare it to other federal databases or for law-enforcement purposes. *Id.* at 4-6. DOJ never responded to Delaware's August 15, August 21, or September 15 letters and never engaged with the information Delaware provided about its list-maintenance procedures before suing the Commissioner and filing this motion.

### C. Delaware Has Legitimate Concerns that DOJ Unlawfully Seeks Its Voter Data for Purposes Other Than Assessing Delaware's NVRA Compliance.

Given DOJ's refusal to answer Delaware's questions in correspondence, Delaware has been left to draw inferences as to the purpose for DOJ's Demand. There are many reasons to question whether DOJ's purpose for requesting Delaware's VRL is to examine Delaware's compliance with the NVRA and HAVA.

First, VRL maintenance is a state-specific issue, but DOJ's Demand is part of a nationwide strategy to amass voter information. *See* Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (last visited Feb. 9, 2026), https://perma.cc/Z3G7-PY9S. DOJ has sued 24 states and the District of Columbia for unredacted copies of their VRLs.[2] Far from a targeted inquiry into Delaware's "reasonable efforts" of its list-maintenance procedures, DOJ's

---

[2] A list of these cases is included in the Appendix.

strategy reflects an aggressive campaign to collect tens of millions of U.S. citizens' most sensitive personal identifying information.

Second, DOJ has informed other states it intends to amass voter records on citizens nationwide and conduct its own database matching. *See* @AAGHarmeetDhillon, X.com (Jan. 5, 2025), https://x.com/AAGDhillon/status/2008329973988282531?s=20 (stating DOJ has checked VRLs against state and federal databases for deceased voters and non-citizens). At a December 2025 court hearing, DOJ represented that four states had voluntarily complied with its request and that eleven more were considering memoranda of understanding ("MOU") governing any provision of their VRLs. *See* Tr. 12/4/25 at 89-90, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Dec. 4, 2025), ECF No. 100, https://perma.cc/FYL4-HJJU. The MOU that DOJ has proposed indicates that DOJ will "test, analyze, and assess" those states' VRLs "for proper list maintenance and compliance with federal law" and identify voters it deems ineligible. DX 3, Confidential Memorandum of Understanding (Proposed MOU) at 2; Jonathan Shorman, *Trump's DOJ offers states confidential deal to remove voters flagged by feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. The MOU then requires a party-state to remove such registrants from its VRL within 45 days. Proposed MOU at 5. These removals contravene the NVRA's protections against removing voters without notice or prematurely. *See* 52 U.S.C. § 20507(d)-(f). At least one state declined to sign the MOU based on that provision's apparent violation of the NVRA's protections against improper removal and DOJ's refusal to modify the MOU to address the issue. *See* Vivian Jones, *TN sends voter data including SSNs to DOJ, and DNC threatens lawsuit*, The Tennessean (Jan. 9, 2025), https://perma.cc/WEZ9-NPYU. DOJ's Demand suggests DOJ may conduct a similar analysis of Delaware's VRL. *See* GX 4, at 1-2.

Third, DOJ's demands for states' VRLs align with President Trump's sweeping March 2025 executive order and with dramatic changes that the Department of Homeland Security (DHS) made to its Systematic Alien Verification Entitlement (SAVE) program to facilitate wholesale data review for instances of non-citizen voting. *See* Exec. Order No. 14248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14005, §§ 2(b)(iii), 2(e), 3(a)-(c) (Mar. 25, 2025), https://perma.cc/LW9V-29BL; Dep't of Homeland Sec., *Privacy Act of 1974: System of Records*, 90 Fed. Reg. 48948 (2025) ("DHS SORN"), https://perma.cc/9YYE-B3A5. Before 2025, SAVE permitted states to verify a voter registrant's naturalization against DHS records on a case-by-case basis at the state's discretion. DHS modified SAVE, however, so that the program can now process and compare entire VRLs against not only DHS records but also SSA records and other databases for indications of citizenship, including for U.S.-born individuals. *Id.* at 48949-48951.

A dozen Secretaries of State expressed significant concerns that the federal government would use the modified SAVE program to conduct its own voter-eligibility and citizenship checks, thereby intruding on states' constitutional and statutory responsibilities for list maintenance, and that the modifications to SAVE would provide inaccurate results, risk disenfranchising eligible voters, and threaten voter privacy. *See* Comment in Opposition to Modifications to and Reissuance of [SAVE System of Records] (Dec. 1, 2025), https://www.regulations.gov/comment/USCIS-2025-0337-9149. Separately, in a pending federal lawsuit involving SAVE, the district court has expressed doubt that SAVE's modifications are lawful. *See League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-03501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025).

There is significant reason to believe that DOJ intends to use SAVE to conduct voter-eligibility checks that Congress never authorized it to perform, and through record collection and database matching that violate federal privacy laws. S*ee* @AAGHarmeetDhillon, X.com (Jan. 5,

2025), https://x.com/AAGDhillon/status/2008329973988282531?s=20. Such an effort could involve using data submitted to SAVE, including Delaware's unredacted VRL, for the next decade. *See* DHS SORN, 90 Fed. Reg. at 48954-48955. *See also Jonathan Shorman*, *DOJ is sharing state voter roll lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/; Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

These concerns are heightened by reports that the VRL data collected by DOJ under the guise of NVRA and HAVA compliance will also be shared across the government for other purposes including criminal and immigration-related investigations. *See* Sarah N. Lynch, *US Justice Dept considers handing over voter roll data for criminal probes, documents show*, Reuters (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09/; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html (former DOJ attorney stating DOJ plans to use VRLs to search for non-citizen voting and concerned that data would be used for "broader immigration enforcement"). Recent events compound the importance of these questions. On January 24, 2026, Attorney General Bondi sent a letter to the Governor of Minnesota addressing federal immigration enforcement in that state and seeking Minnesota's unredacted VRL among other immigration-related demands. *See Read Bondi's Letter to Minnesota's Governor*, N.Y. Times (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html; *United States v.*

*Oregon*, No. 6:25-cv-1666, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026) (dismissing DOJ's case against Oregon for its unredacted VRL and separately stating that AG Bondi's letter "casts serious doubt as to the true purposes for" DOJ's requests). Another recent case has furthered Delaware's concerns. In a pending case challenging access the Social Security Administration (SSA) granted the Department of Government Efficiency (DOGE) to SSA records, the Justice Department represented that at least one DOGE employee entered a "Voter Data Agreement" involving SSA data with a political advocacy group that had the "stated aim [ ] to find evidence of voter fraud and to overturn election results in certain States," and that employees further violated "SSA's security protocols." Notice of Corrections to the Record, at 4-6, *Am. Fed'n of State, Cnty., and Mun. Empls., AFL-CIO v. Soc. Sec. Adm.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), ECF No. 197. Each of these instances raises legitimate concerns whether DOJ will adhere to federal laws involving data use, data security, and data privacy.

Information DOJ has provided does not allay Delaware's concerns. DOJ has indicated that any records it collects will be maintained among other Civil Rights Division case files and available for "routine uses" that permit their disclosure to, among other entities, Congress; federal, state, and local governmental agencies; DOJ contractors; and even private individuals and organizations. *See* D.I. 1, at ¶ 25 (identifying the applicable records system); Dep't of Justice, *Privacy Act of 1974: Systems of Records*, 68 Fed. Reg. 47610 (2003), https://perma.cc/4SR2-T86L; DX 3, Proposed MOU at 7 (stating DOJ may share voter information with unspecified contractors). Delaware has raised, and DOJ has yet to answer, important questions about who exactly DOJ will allow to access sensitive voter information, for what purpose, and whether the federal government will appropriately safeguard such information.

### III.    SUMMARY OF ARGUMENT

1.      The Federal Rules of Civil Procedure apply to all civil actions unless a federal statute, local rule, or court order provides otherwise. No such law or rule applies here. The CRA did not, as DOJ asserts, relying on a Fifth Circuit case that has been superseded, create "a special statutory proceeding" that "displaces the Federal Rules of Civil Procedure." D.I. 4, at 6, 15. Apart from limited circumstances that do not apply here, the Federal Rules "govern the procedure in all civil actions and proceedings." Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 81. As explained herein, the Supreme Court and Third Circuit, in the context of administrative subpoenas, have long recognized that record holders can challenge such subpoenas on multiple grounds. And the Third Circuit has also recognized that privacy concerns must be considered when demands include sensitive personal information. All authority weighs against DOJ's position. Proceeding in accordance with the Federal Rules not only is required but also is especially important here: Delaware is entitled to challenge DOJ's novel interpretation of the CRA and, among other issues, whether DOJ's Demand violates federal and state privacy laws.

2.      Delaware's motion to dismiss the United States' claim under Rule 12(b)(6) (D.I. 33) should be resolved before this Court considers the United States' Motion (D.I. 3). Even if the Court disagrees and allows the CRA claim to proceed, Delaware is entitled to challenge DOJ's asserted purpose for demanding its VRL. Only after appropriate discovery and further briefing and argument can this Court assess the propriety of DOJ's Demand, the sensitive disclosures it asserts Delaware must make, and the important constitutional and privacy concerns at issue in this case.

3.      In the alternative, even if this Court denies Delaware's Motion to Dismiss and is inclined to grant the United States' Motion for Production of Records without discovery and further briefing and argument, Delaware requests that DOJ's relief be appropriately limited to what

is necessary to accomplish DOJ's stated purpose of assessing Delaware's NVRA and HAVA compliance while ensuring Delawareans' voting rights and personal privacy. In that instance, Delaware requests that this Court afford the parties an opportunity to brief the scope of any order.

In short, this Court should reject DOJ's attempt to misuse the CRA to enable its wholesale collection of information on Delaware's voters in violation of federal law, and it should reject the DOJ's argument that Delaware has no opportunity to challenge its demand under the Federal Rules.

## IV.  ARGUMENT

### A.  The Federal Rules Apply to DOJ's Civil Action and Permit Delaware a Full Opportunity to Test and Challenge the Legality of DOJ's Demand.

This Court should reject DOJ's remarkable assertion that the Court must issue an order requiring Delaware to transmit its unredacted VRL without examining the merits of DOJ's claim and assertions. *See* D.I. 4, at 6, 15-16. The CRA does not authorize or require this Court to summarily dispose of this case by issuing an order to comply. DOJ's proffered approach would amount to granting summary judgment unfairly to DOJ without resolution of factual disputes and questions and without procedures generally governing summary-judgment proceedings or application of the summary-judgment standard and would conflict with the Federal Rules.

The Federal Rules of Civil Procedure govern "in all civil actions and proceedings . . . , except as stated in Rule 81." Fed. R. Civ. P. 1. Rule 81 includes exceptions in proceedings not relevant here and reinforces that the Federal Rules apply. Fed. R. Civ. P. 81(a).[3] The Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just,

---

[3] Although this case is not a "proceeding[] to compel . . . the production of documents through a subpoena," even in that instance, which is the most analogous under Rule 81 to this context, the rules apply "except as otherwise provided by statute, by local rule, or by court order in the proceedings." Fed. R. Civ. P. 81(a)(5).

speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As in this case, "a civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3.

The Federal Rules apply to this case. The CRA simply states that where an election officer does not comply with a CRA demand, DOJ can seek judicial relief: "The United States district court for the district in which a demand is made" under 52 U.S.C. § 20703, "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." *Id.* § 20705 (emphasis added). Nothing in the CRA—or any local rule—instructs this Court to abandon the Federal Rules and grant DOJ the relief it seeks without examining the propriety of its demand and arguments that counsel against providing DOJ a copy of Delaware's unredacted VRL.

DOJ relies heavily on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), in support of its position, but that reliance is misplaced given both the plain text of the Federal Rules and subsequent Supreme Court precedent. *See, e.g.*, *United States v. Powell*, 379 U.S. 48 (1964); *see also Oregon*, 2016 WL 318402, at *7-8 (rejecting DOJ's reliance on *Lynd* to support its summary request for Oregon's unredacted VRL under the CRA). *Lynd* was decided immediately after the CRA's enactment and in the context of persistent efforts by some jurisdictions to deny African Americans the ability to register and vote, *see Lynd*, 306 F.2d at 227-31, and is inapposite to the circumstances in this case. Although *Lynd* used broad language that suggests only a limited ability to challenge a CRA demand, *see* D.I. 4, at 6-8, 15-16 (quoting *Lynd*), the decision, which is not binding on this Court, plainly conflicts with the application of the Federal Rules. Moreover, unlike here, the circumstances in *Lynd* show the CRA's statutory requirements were met, the nexus to race discrimination in voting was apparent, and no other indicia of unlawfulness was present. *Lynd*, 306 F.2d at 228-29 & n.6.

In any event, *Lynd*'s reference to a "special statutory proceeding" with only a limited ability to challenge a demand has been superseded. Two years after *Lynd*, the Supreme Court decided *Powell*, which concerned enforcement of an IRS summons under a statute with similar language to the CRA. *See* 379 U.S. at 51-52 & n.10. The Court held that while the IRS Commissioner "need not meet any standard of probable cause to obtain enforcement of his summons," he "must show that the investigation will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose." *Id.* at 57-58. The Court emphasized that this "does not make meaningless the adversary hearing to which the taxpayer is entitled," as "he may challenge the summons on any appropriate ground." *Id.* at 58 (citation modified).

*Powell* further made clear that, where the government invokes the court's process, courts may "inquire into the underlying reasons for the examination" of the sought-after records because "a court may not permit its process to be abused." 379 U.S. at 58. Such abuse takes place where a summons has been issued for an "improper purpose . . . or for any other purpose reflecting on the good faith of the particular investigation." *Id.* The Supreme Court has reaffirmed *Powell* and held that a taxpayer "has a right to question IRS officials about their reasons for issuing a summons . . . when he points to specific facts or circumstances plausibly raising an inference of bad faith." *United States v. Clarke*, 573 U.S. 248, 249 (2014); *see id.* at 254-55 (stating the summoned party "may present argument and evidence on all matters bearing on a summons's validity" and that circumstantial evidence can "give rise to a plausible inference of improper motive").

The Third Circuit has repeatedly applied *Powell*, emphasizing that "the district court's role is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding," and that information demands "must not be unreasonably broad or burdensome." *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (citation modified); *see also,*

*e.g.*, *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3d Cir. 1986); *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 66-71 (3d Cir. 1979). It has further instructed that "privacy concerns must be considered" when "personal documents of individuals . . . are the subject of an administrative subpoena." *F.D.I.C.*, 55 F.3d at 908; *see also Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 79 (3d Cir. 2007) (reciting standard for enforcement of administrative subpoenas); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574, 576-77, 579-80 (3d Cir. 1980).

Also contrary to DOJ's argument, the Court in *Powell* explained that where the statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18; *see also* Fed. R. Civ. P. 1, 81. Thus, DOJ is wrong to assert that the CRA displaces the Federal Rules and that this Court should simply order the electronic transmission of the VRL. This Court should proceed, in the normal course, to consider Defendant's Motion to Dismiss (D.I. 33). If the United States' claim is allowed to proceed, the parties can confer on next steps and this Court can enter a schedule for discovery, further briefing or dispositive motions, and any hearing or argument on the propriety of DOJ's Demand. *See* Fed. R. Civ. P. 16. This affords Delaware the ability to test DOJ's claim and its anticipated use of Delaware's VRL, as the Federal Rules guarantee.

### B. If the CRA Claim Is Not Dismissed, the Circumstances Permit Delaware to Develop an Adequate Record Before the Court Grants Any Requested Relief.

Defendant's Motion to Dismiss (D.I. 33, 34) establishes that DOJ's Demand fails as a matter of law under the CRA and federal privacy law. However, should the Court deny the Motion to Dismiss, an adequate record would be necessary to factually assess whether DOJ's Demand is lawful and to evaluate the affirmative defenses Delaware is likely to raise. Until such a record is available, this Court should not grant DOJ's requested relief. *Cf.* D.I. 3, at 4 ("Prayer for Relief"); D.I. 1, ¶ 23 & p. 11. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *8-10,

*17-20 (C.D. Cal. Jan. 15, 2026) (in California VRL case, deferring decision on DOJ's motion to compel until resolution of the state's motion to dismiss and any Rule 16 conference, but ultimately dismissing DOJ's complaint as a matter of law under the CRA and federal privacy laws).

DOJ claims "sweeping power" under the CRA (D.I. 4, at 5), while disregarding its requirements. The Demand failed to state an adequate "basis and the purpose" under the CRA. *See* 52 U.S.C. § 20703. The DOJ included no basis whatsoever and asserted an inadequate purpose unrelated to the CRA's protection against race discrimination in voting and contrary to the constitutional role and statutory requirements assigned to states, not DOJ. *See* D.I. 1, ¶¶ 28-29 (including only conclusory allegations); GX 4 ("Demand"); D.I. 34, at pp. 12-15 (MTD argument).[4] Moreover, the CRA does not cover DOJ's Demand or require electronic transmission of Delaware's *current* VRL. 52 U.S.C. §§ 20701, 20703. *See* D.I. 34, at pp. 15-17 (MTD argument). Further, DOJ's failure to state a valid basis and purpose consistent with the CRA is particularly relevant here, where there are significant questions whether the Demand is for an improper purpose, overly broad, and in disregard of privacy protections. All this goes to whether judicial enforcement of the Demand would abuse this Court's process. *See, e.g.*, *Powell*, 379 U.S. at 58; *F.D.I.C.*, 55 F.3d at 908; *Chao*, 474 F.3d at 79. *See also Weber*, 2026 WL 118807, at *20 (DOJ improperly sought "to use civil rights legislation which was enacted for an entirely different purpose to amass and retain an unprecedented amount of confidential voter data").

---

[4] DOJ asserts that its August 14 Demand stated that the basis for its request was Delaware's EAVS responses, pointing to its July 11 letter as support. D.I. 4, at 11-12. But DOJ did not include such basis in its Demand or Complaint, and its reliance on the July 11 letter makes little sense where it did not even invoke the CRA until its Demand. Nor has DOJ shown an interest in Delaware's explanations regarding its EAVS responses. *See* pp. 4-7, *supra*; *see also Oregon*, 2026 WL 318402, at *9 (on similar facts, stating DOJ's "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis' fails").

Delaware has raised legitimate concerns and grounds to challenge the Demand. At a minimum, DOJ seemingly seeks Delaware's VRL to conduct its own voter-eligibility determinations and citizenship checks, asserting that it needs the unredacted VRL to ensure that Delaware requires the appropriate HAVA identifiers to process voter registration applications and protects against duplicate registrations and deceased voters on its rolls. D.I. 4, at 12-13. But Congress entrusted *states* to implement the requirements it carefully developed to accomplish its dual aims of increasing voter registration and participation while protecting electoral integrity. *See* 52 U.S.C. §§ 20501, 20507(a)(4), 21083(a)(4)(A); *Bellitto*, 935 F. 3d at 1198-1205; *Phila. City Cmm'rs*, 872 F.3d at 178-83; *Oregon*, 2026 WL 318402, at *2. Moreover, the VRL does not shed much light on, or constitute the best evidence of, Delaware's "reasonable efforts" at list-maintenance, which are themselves not reflected in the VRL. And the sensitive, private data of each citizen is not necessary for understanding whether and how Delaware implements programs and activities to ensure the accuracy and currency of its VRL. *See, e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *Bellows*, 92 F.4th at 56; *N.C. State Bd. of Elecs.*, 996 F.3d at 267-68 & n.9; *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). *See also* 5 U.S.C. § 552a & 552a note. DOJ does not seek the types of election-related records and state-generated reports that reflect the "reasonable efforts" that Delaware undertakes to maintain an accurate and current VRL. *See* GX 5, at 1-8 (providing detailed information regarding Delaware's efforts and reports); GX 6, at 2-4 (offering to produce for DOJ's inspection the types of records that are relevant to assessing compliance).

Even more, Delaware has provided sufficient information to raise a reasonable inference that DOJ's Demand is improper and not about HAVA and NVRA compliance, and that DOJ plans to share the VRL with governmental agencies and outside entities, and to retain the VRL among

18

its records, for other purposes. *See* pp. 7-11, *supra* (discussing uses of the VRL and applicable record systems). Congress imposed procedures and safeguards to protect against the federal government's unnecessary and unlawful collection of citizens' private data, especially data reflecting First Amendment rights. *See* 5 U.S.C. § 552a. Should the Court deny Delaware's Motion to Dismiss, discovery and further proceedings are appropriate to permit Delaware to establish as much. *Accord Powell*, 379 U.S. at 57-58; *Clarke*, 573 U.S. at 249, 254-55; *F.D.I.C.*, 55 F.3d at 908. Granting DOJ's Motion at this stage would bypass Delaware's ability to raise affirmative defenses including the scope and reasonableness of DOJ's demand; violations of the Privacy Act and other federal privacy laws; the constitutional issues presented, including under the Elections Clause and the Fourth Amendment; and whether the Demand is impermissibly being used in an attempt to gather information for other agencies.

If DOJ has legitimate concerns about Delaware's list maintenance, it can seek Delaware's cooperation and, if a plausible statutory violation exists, seek court-ordered relief to ensure compliance, as appropriate, under the NVRA and HAVA. What it cannot do is demand Delawareans' sensitive information and the entire, unredacted VRL, under an unrelated statutory scheme, for purposes that are, at best, unclear, and, at worst, contrary to federal law. *See Oregon*, 2026 WL 318402, at *11, *13. Delaware's concerns that the Demand violates federal and state privacy laws, as argued in its Motion to Dismiss (D.I. 33, 34), are particularly important. *See* D.I. 34, at 17-20 (MTD arguments). Delaware consistently raised such concerns with DOJ, which ignored them. *See* pp. 5-7, *supra*; GX 6, at 4-6. DOJ asserts privacy arguments are preempted, D.I. 4, at 13-14, but preemption rests on Congress exercising its powers under the Elections Clause and granting authority to DOJ, which it has not done. *See Arizona*, 570 U.S. at 8-9; *LULAC*, 780 F.

Supp. 3d at 194. If the Court does not dismiss the Complaint, the Demand's lawfulness under privacy laws raises significant factual questions requiring development of an adequate record.

Finally, even if this Court denies Delaware's Motion to Dismiss and is inclined to grant the United States' Motion for Production of Records without discovery and further briefing and argument, Delaware requests that any relief be appropriately tailored to accomplish DOJ's stated purpose of assessing Delaware's NVRA and HAVA compliance while protecting Delawareans' voting rights and personal privacy. Delaware respectfully requests an opportunity for the parties to brief the parameters, scope, and form of production, and that the terms of any production and privacy-related and data-security protocols be encompassed in an enforceable court order.

## V.    CONCLUSION

For the foregoing reasons, Delaware requests that this Court resolve Delaware's Motion to Dismiss (D.I. 33) before considering the United States' Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960 (D.I. 3). If the Court dismisses the United States' claim, the United States' motion should be denied as moot. If the Court allows the claim to proceed, Delaware requests that the Court deny the United States' Motion and permit discovery and further proceedings consistent with its opinion and the Federal Rules to afford Delaware an appropriate opportunity to establish an adequate record to show that the Demand is unlawful. In any event, Delaware requests that this Court proceed in a way that protects the voting and privacy rights of Delawareans in accordance with federal and state law.

Respectfully submitted,

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)
Director of Impact Litigation
Emily V. Burton (DE Bar No. 5142)
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, DE  19801
Tel.: (302) 683-8875
ian.liston@delaware.gov
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2026, I filed the foregoing Defendant's Opposition to United States' Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960 using this Court's CM/ECF system. All counsel of record are registered CM/ECF users and will be served electronically via the Court's CM/ECF system.

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)