**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| *v.* | |
| ANTHONY ALBENCE, in his official capacity as State Election Commissioner of the State of Delaware, | Case No. 25-cv-01453-RGA |
| *Defendant*, | |
| Bethany Jennings and Gemma Lowery, | |
| *Intervenor-Defendants*, | |
| Latin American Community Center, *et al.*, | |
| *Intervenor-Defendants*. | |

<u>**INTERVENORS BETHANY JENNINGS AND GEMMA LOWERY'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

Elisabeth C. Frost*
Jacob D. Shelly*
Kevin R. Kowalewski*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Tel: (202) 968-4490
efrost@elias.law
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law

\* Appearing *pro hac vice*

DATED: February 9, 2026

Mark M. Billion (DE Bar No. 5263)
**BILLION LAW**
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: (302) 428-9400
markbillion@billionlaw.com

*Attorneys for Intervenors
Bethany Jennings and Gemma Lowery*

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF ARGUMENT .......................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

I.      Federal law has long made voter list maintenance a state responsibility. .......................... 3

II.     DOJ has embarked on an unprecedented campaign to amass personal voter registration data held by the states. ........................................................................ 4

III.    DOJ sued Delaware to obtain its complete voter registration list. ................................ 6

LEGAL STANDARD ................................................................................................... 6

ARGUMENT ........................................................................................................... 7

I.      DOJ failed to satisfy Title III's threshold requirements of stating a valid "basis" and "purpose" for its demand. ........................................................................ 7

        A.      DOJ did not provide any statement of the "basis" for its demand. ...................... 10

        B.      DOJ did not provide a proper "purpose" for its demand. ............................... 12

II.     Title III does not pre-empt Delaware's privacy protections. .................................... 13

III.    DOJ has failed to comply with the Privacy Act. ................................................ 17

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994)............................................................................ 20

*Alabama ex rel. Gallion v. Rogers*,
   187 F. Supp. 848 (M.D. Ala. 1960) ............................................................. 12

*Am. C.R. Union v. Phila. City Comm'rs*,
   872 F.3d 175 (3d Cir. 2017).......................................................................... 3

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013)..................................................................................... 3, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 6

*Bishop v. JP Morgan Chase & Co.*,
   No. CV 13-001-RGA, 2014 WL 1382393 (D. Del. Apr. 7, 2014) ................... 11

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
   854 F.3d 683 (D.C. Cir. 2017) ............................................................... 7, 8, 9

*CFPB v. Source for Pub. Data, L.P.*,
   903 F.3d 456 (5th Cir. 2018) ................................................................... 7, 10

*Coleman v. Kennedy*,
   313 F.2d 867 (5th Cir. 1963) (per curiam)..................................................... 10

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249 (1992)....................................................................................... 8

*Foster v. Love*,
   522 U.S. 67 (1997).......................................................................................... 3

*Hoch v. Alexander, No.*,
   CV 11-217-RGA, 2013 WL 3353891 (D. Del. July 2, 2013).......................... 10

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018)..................................................................................... 3, 4

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)......................................................................... 10

*In re Coleman*,
   208 F. Supp. 199 (S.D. Miss. 1962)...................................................................... 10

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010)............................................................................... 7

*In re Subpoena No. 25-1431-014*,
   No. 2:25-mc-00039-MAK, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ...................... 8

*In re Tower Air, Inc.*,
   416 F.3d 229 (3d Cir. 2005)............................................................................... 20

*In re Triad Guar. Inc.*,
   No. 14-1464, 2016 WL 3523834 (D. Del. June 27, 2016) ................................... 14

*Kennedy v. Bruce*,
   298 F.2d 860 (5th Cir. 1962) ............................................................................ 10

*Kennedy v. Lynd*,
   306 F.2d 222 (5th Cir. 1962) ............................................................... 6, 10, 15

*Kiger v. Mollenkopf*,
   No. 21-409-RGA, 2021 WL 5299581 (D. Del. Nov. 15, 2021) ......................... 14

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
   No. CV 25-0946, 2026 WL 252420 (D.D.C. Jan. 30, 2026) ........................... 18

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
   3501, No. 25-cv-, 2025 WL 3198970 (D.D.C. Nov. 17, 2025).................................. 17, 20

*Londrigan v. FBI*,
   670 F.2d 1164 (D.C. Cir. 1981) ........................................................................ 17

*Lupian v. Joseph Cory Holdings LLC*,
   905 F.3d 127 (3d Cir. 2018)............................................................................... 14

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996).......................................................................................... 14

*Pippinger v. Rubin*,
   129 F.3d 519 (10th Cir. 1997) .......................................................................... 20

*Project Vote, Inc. v. Kemp*,
   208 F. Supp. 3d 1320 (N.D. Ga. 2016) .............................................................. 16

*Project Vote/Voting For Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010) ................................................................ 16

*Pub. Int. Legal Found. v. Boockvar*,
    431 F. Supp. 3d 553 (M.D. Pa. 2019) ............................................................... 16

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ................................................................................ 16

*Pub. Int. Legal Found., Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ............................................................... 16

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) ............................................................................ 16

*Sikkelee v. Precision Airmotive Corp.*,
    822 F.3d 680 (3d Cir. 2016) .............................................................................. 14

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014) .............................................................. 16

*United States v. Alabama*,
    192 F. Supp. 677 (M.D. Ala. 1961) .................................................................... 9

*United States v. Oregon*,
    2026 No. 6:25-cv-01666-MTK, 2026 WL 318402 (2026) ...................... *passim*

*United States v. Sanders*,
    165 F.3d 248 (3d Cir. 1999) ................................................................................ 9

*United States v. Voigt*,
    89 F.3d 1050 (3d Cir. 1996) ................................................................................ 7

*United States v. Ward*,
    349 F.2d 795 (5th Cir. 1965) ............................................................................... 9

*United States v. Weber*,
    No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ......... *passim*

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ............................................................................................ 9

*Voter Reference Found., LLC v. Torrez*,
    160 F.4th 1068 (10th Cir. 2025) ....................................................................... 16

## CONSTITUTION

U.S. Const. art. I, § 4 ............................................................................................... 3

## STATUTES

5 U.S.C. § 552a .......................................................................................... 17, 18, 19, 20

15 Del. C. § 3-04 ................................................................................................ 1, 13

15 Del. C. § 1305 ............................................................................................ 1, 5, 13

52 U.S.C. § 20501 ................................................................................................. 3

52 U.S.C. § 20507 ........................................................................................ 3, 13, 16

52 U.S.C. § 20701 ................................................................................................. 6

52 U.S.C. § 20703 ................................................................................ 7, 11, 14, 16

52 U.S.C. § 21083 ........................................................................................ 3, 4, 17

## RULES

Fed. R. Civ. P. 12 ................................................................................................. 6

## OTHER AUTHORITIES

68 Fed. Reg. 47610 (Aug. 11, 2003) ..................................................................... 19

70 Fed. Reg. 43904 (July 20, 2005) ....................................................................... 19

82 Fed. Reg. 24147 (May 25, 2017) ....................................................................... 19

Antonin Scalia & Brian A. Garner, *Reading Law* (2012) ........................................ 14

*Basis*, *Black's Law Dictionary* (4th ed. 1968) .......................................................... 8

*Delaware Voter Registration Form*,
    https://elections.delaware.gov/voter/pdfs/VoterRegApplication.pdf (last
    visited Feb. 9, 2026) ....................................................................................... 14

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build
    National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-
    WRXD ......................................................................................................... 4

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Feb. 6, 2026), https://perma.cc/M8DU-YNND ............................................................................ 4

*Purpose*, *Black's Law Dictionary* (4th ed. 1968) ........................................................... 9

## NATURE AND STAGE OF THE PROCEEDINGS

On December 2, 2025, the U.S. Department of Justice ("DOJ") filed this suit against the State Election Commissioner of the State of Delaware, Anthony Albence. D.I. 1. Plaintiff moved for production of Delaware's voter records the same day. D.I. 3, 4 ("Mot. for Production"). On December 19, 2025, the Court granted Defendant's unopposed motion to extend its time to respond to Plaintiff's motion. D.I. 19. On January 15, 2026, the Court granted Bethany Jennings and Gemma Lowery's ("Intervenors") motion to intervene. D.I. 22.

## SUMMARY OF ARGUMENT

1.      DOJ seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning States the responsibility for overseeing voter registration. To accomplish this task, DOJ has demanded that dozens of states turn over their full, unredacted voter list, even though state laws often shield voter information contained in those lists—most notably driver's license numbers, partial social security numbers, and dates of birth—from disclosure. Delaware law is no exception. *See, e.g.*, 15 Del. C. § 304(h)–(i) (limiting voter information disclosable under state law); *id.* § 1305(a) (stating that social security and driver's license information "shall not be subject to inspection").

2.      Because Commissioner Albence followed Delaware's privacy laws and refused to acquiesce to DOJ's demands, DOJ amplified its pressure campaign by filing suit, seeking to forcibly obtain the State's unredacted voter registration list. The Complaint relies on a single cause of action brought under Title III of the Civil Rights Act of 1960 ("CRA"), which Congress enacted to combat the infringement or denial of the right to vote. Not surprisingly, this landmark civil rights law does not support DOJ's attempt to compel Delaware to turn over sensitive personal data of registered voters for several reasons.

3.      First, the CRA requires DOJ to provide a statement identifying the "purpose" of its investigation and the "basis" for its determination that a violation of federal voting rights law may have occurred. But DOJ failed to offer any valid basis for its demand, and its stated purpose—to assess Delaware's compliance with administrative list maintenance activities required under the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is beyond the reach of Title III. Second, even a lawful Title III request does not preempt Delaware's state-law privacy protections, which prohibit the Commissioner from furnishing certain sensitive voter data such as driver's license or social security numbers. Finally, the Privacy Act prohibits unfettered governmental possession of individuals' personal information, and bars any collection of such sensitive data until the agency has implemented requisite procedural safeguards.

4.      For these same reasons, in the past month federal courts in California and Oregon have dismissed with prejudice DOJ's parallel lawsuits seeking the same types of sensitive voter data in those states as DOJ demands here. In addition to thoroughly rejecting DOJ's claims on the merits, the California court warned that DOJ's efforts are "antithetical to the promise of fair and free elections our country promises and the franchise that civil rights leaders fought and died for." *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *2 (C.D. Cal. Jan. 15, 2026); *see also United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026). DOJ's attempt to assert sweeping federal authority over the management of federal elections is not only unprecedented—it would dismantle the careful delineation of authority over American elections as reflected by the Constitution and long-established federal laws. *See Oregon*, 2026 WL 318402, at *13 ("Plaintiff's claims disturb the framework of federalism envisioned and enshrined in our Constitution."). The Court should similarly dismiss the Complaint with prejudice.

2

## STATEMENT OF FACTS

**I.      Federal law has long made voter list maintenance a state responsibility.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, the Constitution assigns states the default responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws addressing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. As relevant here, Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges states—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to help improve the equipment used to cast votes, the way registration lists are maintained, and how polling operations are conducted." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 180 (3d Cir. 2017) (internal citation omitted). Like the NVRA, HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). Further, HAVA commands that the "specific choices on the methods

3

of complying with" HAVA "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. **This system has many benefits that must be preserved. The dispersal of responsibility for election administration *has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome.*** This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001) (emphases added).

Consistent with that principle, Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to NVRA and HAVA, which purposefully operate through the states themselves.

## II.    DOJ has embarked on an unprecedented campaign to amass personal voter registration data held by the states.

Last spring, DOJ began demanding broad and unprecedented access to sensitive personal information about each registered voter in states' voter files. To date, DOJ has sent demands to 44 states and the District of Columbia, with plans to make similar demands on all 50.[1] The vast majority of states that have received such demands—including those led by Republican officials— have declined to turn over information that is typically protected by state law.[2] Delaware law, for example, guarantees its voters that the sensitive personal information they disclose when

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Feb. 6, 2026), https://perma.cc/M8DU-YNND; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1 (reporting eleven states have reportedly given or intend to give DOJ the information it seeks).

registering to vote—such as driver's license numbers and partial social security numbers—"shall not be subject to . . . inspection." 15 Del. C. § 1305(a).

DOJ's nationwide pressure campaign reached Delaware on July 11, 2025, demanding, among other things, its "statewide voter registration list." Compl. ¶ 19, D.I. 1; *see also* Mot. for Production, Ex. 1, D.I. 4-1. Commissioner Albence responded on July 25 that the State would "fully respond[] to the requests and issues raised by [the] July Letter, in a manner consistent with Delaware's obligations under the NVRA and its duties under Delaware law, in due course." Mot. for Production, Ex. 2 at 1, D.I. 4-2. On August 14, DOJ sent another letter, this time demanding that Delaware produce "all fields" in its voter registration database, including each registrant's "state driver's license number or the last four digits of the registrant's social security number." Mot. for Production, Ex. 4 at 1, D.I. 4-4.

On August 15, Commissioner Albence responded with a ten-page letter, offering detailed answers to each of the questions posed by DOJ's July 11 inquiry regarding Delaware's procedures for keeping accurate voter rolls. *See* Mot. for Production, Ex. 5, D.I. 4-5. Though Commissioner Albence expressed "willing[ness] to provide a copy of Delaware's public voter registration list," he stopped short of promising to provide "sensitive, personally identifying information (such as social security numbers)," and reiterated his request for "clarification" "as to the application of the 1974 Privacy Act upon the Federal Department of Justice's receipt, storage, and maintenance of the personal information stored within the public version of Delaware's voter registration list." *Id.* at 8–9. The letter went on to state that Delaware would "evaluat[e] the [legal] authority" previously pointed to by DOJ in support of the demand, and that Delaware would "further respond" to those arguments and DOJ's requests "in due course." *Id.* at 9.

Commissioner Albence sent a second letter to DOJ on September 16. *See* Mot. for

Production, Ex. 6. It stated that he would not "comply with [DOJ's] request for a list of Delaware voters, sortable by political party, locatable by address, and cross-referenceable by social security number and drivers' license number, until" the Administrator could "understand how" to "do so in a lawful manner." *Id.* at 4. The letter also made clear that the State's "full version" of its registration list "does not contain all of the information fields" requested by DOJ. *Id.* at 8.

## III. DOJ sued Delaware to obtain its complete voter registration list.

On December 2, DOJ sued Delaware, seeking to compel the State to provide its full statewide voter registration list "with all fields," including either voters' "state driver's license number, or the last four digits of their Social Security number." Compl., Prayer for Relief, D.I. 1. DOJ frames its demand as part of an effort to ensure that Delaware is complying with its list maintenance obligations under the NVRA and HAVA, *e.g.*, *id.* ¶¶ 9, 19, but does not assert a claim under either statute.[3] Instead, DOJ asserts a solitary claim under Title III of the Civil Rights Act of 1960, a law that permits DOJ to review certain voting "records and papers," 52 U.S.C. §§ 20701–20703, for the purpose of enabling investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At this stage, the Court must accept the complaint's allegations as true but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must provide "more than labels and conclusions, and a formulaic

---

[3] Notably, DOJ previously asserted claims under the NVRA and HAVA in otherwise identical complaints that it brought against multiple other states in September of last year. *See, e.g.*, Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025). But in its following 17 lawsuits against states seeking the same relief (including this one against Delaware), DOJ has abandoned those claims.

6

recitation of the elements of a cause of action will not do." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (citation omitted).

## ARGUMENT

DOJ's reliance on Title III to justify its sweeping demand fails for three independent reasons. First, DOJ has not complied with the basic procedural requirements contained within Title III, namely that it provide Delaware with a proper "basis" and "purpose" for its demand for records. Second, Title III does not preempt Delaware's privacy protections for highly sensitive personal data. And finally, DOJ's attempted collection and maintenance of this data violates the federal Privacy Act. This court should follow the lead of its sister courts and dismiss the complaint with prejudice. *See Weber*, 2026 WL 118807, at *20; *Oregon*, 2026 WL 318402, at *12.

## I.     DOJ failed to satisfy Title III's threshold requirements of stating a valid "basis" and "purpose" for its demand.

Governmental agencies are "not afforded unfettered authority to cast about for potential wrongdoing." *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 689 (D.C. Cir. 2017) (citation modified). An agency's authority to demand documents and information "is a creature of statute," *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018), and, as such, it "must comply with statutory requirements," *id.* at 460. If an agency fails to follow the relevant statutory prerequisites for issuing a demand for information, courts will decline to order enforcement. *See, e.g.*, *ACICS*, 854 F.3d at 690.

Title III contains a fundamental requirement that DOJ failed to follow in demanding the data it seeks here: it requires that any request for records made under it "shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). The use of "and" means that DOJ must provide both. *See United States v. Voigt*, 89 F.3d 1050, 1087 (3d Cir. 1996) (noting it is a "well-settled canon of statutory construction that 'courts should disfavor

interpretations of statutes that render language superfluous'" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992))); *see also Oregon*, 2026 WL 318402, at \*9 (finding plain text of statute requires DOJ to show both basis and purpose).

This requirement "is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at \*9. Indeed, multiple district courts have, in just the past few months, quashed records demands when DOJ sought to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. 2:25-mc-00039-MAK, 2025 WL 3252648, at \*12, \*17 (E.D. Pa. Nov. 21, 2025) (striking DOJ subpoena that "invoke[d] sweeping" demands for information that had "no relevance to the investigation Congress permitted or to the investigation the [DOJ] tells the world it is pursuing").

Title III's "basis" requirement ensures that the federal government will not unduly interfere in the states' traditional oversight of elections unless DOJ is able to state a concrete reason to believe that a state has denied the right to vote or otherwise violated federal voting rights law. *See Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). This requirement advances public accountability and guards against bad-faith investigations, imposing the very undemanding requirement that DOJ simply be able to articulate *why* it seeks the information it demands. *Cf. ACICS*, 854 F.3d at 691 (concluding that mere citation to statutory provisions in agency's statement failed to sufficiently provide "statutory basis for the Bureau's investigation," "especially considering the Bureau's failure to adequately state 'the specific conduct under investigation'").

Title III's "purpose" requirement is a distinct requirement that ensures the government's intentions for the information sought are proper and just, and allows judicial evaluation of whether

8

the demand does in fact comport with the stated purpose. *See Purpose*, *Black's Law Dictionary* (4th ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project"); *cf. ACICS*, 854 F.3d at 689–90 ("Because the validity of a CID is measured by the purposes stated in the notification of purpose, the adequacy of the notification of purpose is an important statutory requirement." (citation omitted)); *see also Oregon*, 2026 WL 318402, at *9–10.

To understand the basis and purpose requirements, the Court must "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *United States v. Sanders*, 165 F.3d 248, 251 (3d Cir. 1999). The Court should "account for both the specific context in which language is used and the broader context of the [entire] statute." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (citation modified). Accordingly, the terms "basis" and "purpose" must be read in the context of the Civil Rights Act of 1960, a law that ensures the voting rights of all citizens receive the protections due under the U.S. Constitution. *See United States v. Ward*, 349 F.2d 795, 804 (5th Cir.) (noting purpose of CRA was to ensure enforcement "in accordance with constitutional demands"), *modified on reh'g*, 352 F.2d 329 (5th Cir. 1965) (per curiam); *United States v. Alabama*, 192 F. Supp. 677, 682 (M.D. Ala. 1961) (noting that the Act was "was adopted to protect the right to vote" when voters faced "discriminatory acts and practices, which acts and practices clearly violate the Constitution and laws of the United States"), *aff'd*, 304 F.2d 583 (5th Cir. 1962), *aff'd*, 371 U.S. 37 (1962) (per curiam); H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"); *see also Oregon*, 2026 WL 318402, at *3.

DOJ has yet to cite a single instance in the 65 years of Title III's existence in which a court has read Title III to require the production of records in response to a demand that did not relate to

"infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. The principal authority that DOJ cites in its Complaint confirms that DOJ has previously complied with this statutory requirement. *See id.* at 229 n.6. In *Lynd*, the court recognized that the "basis" of DOJ's demand was "information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction"; and the "purpose" was "to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." *Id.* (citation modified). Other Title III cases from that period likewise contained an explicit statement of both a "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam). Here, DOJ's demand was deficient on both fronts. *See Source for Pub. Data*, 903 F.3d at 460.

## A.    DOJ did not provide any statement of the "basis" for its demand.

Nowhere in its correspondence with Commissioner Albence (or in its pleadings) has DOJ provided any basis to believe that Delaware has infringed the voting rights of its citizens.[4] In its July 11 letter, DOJ cited the NVRA and requested that Delaware provide an explanation for data that DOJ interpreted to suggest Delaware's voter file included individuals who were ineligible to vote. *See* Mot. for Production, Ex. 1, D.I. 4-1. But DOJ did not offer that data as evidence that any

---

[4] Consideration of DOJ's correspondence with the Commissioner does not convert this Rule 12 motion to dismiss into a Rule 56 motion for summary judgment. DOJ docketed the correspondence contemporaneously with its Complaint, *see* D.I. 4-2, and refers to it in the Complaint. Compl. ¶¶ 18–20, D.I. 1. "[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Hoch v. Alexander*, No. CV 11-217-RGA, 2013 WL 3353891, at *3 (D. Del. July 2, 2013) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

citizen of Delaware had been wrongfully denied the ability to register, vote, or have their vote counted. As in the parallel California suit, "there was no explanation for why unredacted voter files for millions of Californians, an unprecedented request, was necessary for the DOJ's investigation." *Weber*, 2026 WL 118807, at *9; *see also Oregon*, 2026 WL 318402, at *10 n.4. DOJ's bare assertion that its "written demand 'contain[ed] a statement of the basis and the purpose therefor,'" Compl. ¶ 29, D.I. 1 (quoting 52 U.S.C. § 20703), is a textbook example of "unsupported allegations and legal conclusions [that] cannot survive [a] motion to dismiss." *Bishop v. JP Morgan Chase & Co.*, No. CV 13-001-RGA, 2014 WL 1382393, at *5 (D. Del. Apr. 7, 2014).

DOJ's omission of any cognizable basis in its correspondence with the State, complaint, and motion for production is particularly striking given that Commissioner Albence expressly advised DOJ that it "fail[ed] to identify any basis for [its] request under the CRA," Mot. for Production, Ex. 6 at 3, D.I. 4-6, and documented in painstaking detail the State's compliance with the NVRA. *See generally* Mot. for Production, Ex. 5, D.I. 4-1. It is also notable that, to date, DOJ has made what appear to be near carbon copy demands to 44 other states and has sued 24 of those states (as well as the District of Columbia) with complaints that contain nearly identical boilerplate claims and allegations as here. *See supra Summary of Argument* and *Statement of Facts*. In no case does it appear that DOJ has asserted a basis for investigating *any* of these states for any violation of voting rights. But rather than remedy its error and explain the basis for its Delaware investigation in response to the Administrator's well-grounded objections, DOJ jumped straight to filing this lawsuit. That deficiency warrants dismissal. *Oregon*, 2026 WL 318402 at *9 (dismissing because Title III demand letter "contain[ed] no statement of a factual basis.").

11

**B.     DOJ did not provide a proper "purpose" for its demand.**

DOJ's claim must also be dismissed because it failed to articulate a proper purpose for its demand. Congress enacted the record retention provisions of Title III "to secure a more effective protection of the right to vote," *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"). But DOJ *admits* that it is *not* seeking Delaware's statewide voter registration list for that reason. Rather, DOJ says that it seeks to "ascertain Delaware's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 23, D.I. 1. That purpose, however, is beyond the voting rights scope of the CRA. "Title III was not passed as a tool for NVRA compliance." *Weber*, 2026 WL 118807, at *9. "[I]nvestigat[ing] list maintenance procedures" under the NVRA bears no relation to "the purposes for which Title III was enacted." *Oregon*, 2026 WL 318402 at *10. And "driver's license numbers and partial social security numbers were not required for voter registration until the passage of HAVA in 2002 so Congress could not have conceived for this highly sensitive information to be at the DOJ's disposal through the passage of Title III four decades prior." *Weber*, 2026 WL 118807, at *9. Accordingly, two federal courts have dismissed DOJ's Title III claims as inconsistent with the statute's purpose of protecting voter rights. *Id.* at *8−10; *Oregon*, 2026 WL 318402, at *9−10.

Even if ascertaining Delaware's compliance with the NVRA and HAVA were permissible grounds for invoking Title III, "DOJ states no reason why an *unredacted* version of [Delaware's] voter list is necessary." *Weber*, 2026 WL 118807, at *9 (emphasis added); *see also Oregon*, 2026 WL 318402, at *10 n.4. Both the NVRA and HAVA grant states broad discretion in list

maintenance: State efforts under the NVRA need only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State," *id.* § 21085. In response to DOJ's HAVA and NVRA inquiries, Administrator Albence offered pages of detailed responses with exacting descriptions of the state's voter roll maintenance procedures. Mot. for Production, Ex. 5, D.I. 4-5. Commissioner Albence also expressly warned DOJ that its request did "not identify a proper purpose for inspection under the CRA" and that Delaware would "await answers" to its questions from DOJ about "how Delawareans' sensitive personal information may be used and maintained in compliance with state and federal law." Mot. for Production, Ex. 6 at 1–2, D.I. 4-6. DOJ has never explained why it requires particularly sensitive information about Delaware's voters: "neither Plaintiff's Title III demand nor any of its pleadings before this Court provide any reasonable explanation for why the Sensitive Voter Data in particular serves those purposes." *Oregon*, 2026 WL 318402, at *10 n.4.

## II.    Title III does not pre-empt Delaware's privacy protections.

Commissioner Albence explained that he would provide DOJ with the "public version of Delaware's voter registration list," and that under Delaware law, "the voter registration list 'provided to the public shall be limited to voter names, addresses, political party affiliations, voting history, legislative district information, and years of birth." Mot. for Production, Ex. 6 at 6, D.I. 4-6 (quoting 15 Del. C. § 304(h)). The Commissioner also explained that "Delaware's voter registration list does not contain all of the information fields" that DOJ requested. *Id.* at 8. By statute, Delaware law guarantees its voters that the sensitive personal information they disclose when registering to vote—such as driver's license numbers and partial social security numbers— "shall not be subject to . . . inspection." 15 Del. C. § 1305(a). Registrants are advised on Delaware's voter registration form that "the last four digits of [their] Social Security Number, email address,

13

and drivers' license/state identification card number" are *not* public.[5] Accordingly, for DOJ to access this information, it must show that Title III preempts Delaware's privacy protections. It does not.

Because Title III contains no *express* preemption provision, *see* 52 U.S.C. § 20703, DOJ's argument must rest on the idea that Delaware's privacy protections *impliedly* conflict with Title III, *see generally In re Triad Guar. Inc.*, No. 14-1464 (GMS), 2016 WL 3523834, at *13 (D. Del. June 27, 2016) (discussing express versus implied preemption). The Third Circuit and the Supreme Court have made clear that "there is a strong presumption against preemption in areas of the law that States have traditionally occupied." *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687 (3d Cir. 2016) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *see* Antonin Scalia & Brian A. Garner, *Reading Law* 290 (2012) ("It is a reliable canon of interpretation . . . to presume that a federal statute does not preempt state law."). Although the presumption against preemption is inapplicable when Congress acts under the Elections Clause, which empowers Congress to "legislate[] with respect to the 'Times, Places and Manner' of holding congressional elections," *Inter Tribal Council of Ariz., Inc.*, 570 U.S. at 14, or when Congress otherwise regulates the mechanics of the voting process, Title III addresses only the retention, maintenance, and disclosure of records; it does not target any state election regulations or practices, nor does it implicate any voting requirements. Accordingly, the presumption applies here. *See Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 131 (3d Cir. 2018) ("When a federal statute contains a provision preempting state law claims that pertain to 'areas of traditional state regulation' or police power,

---

[5] *Delaware Voter Registration Form*,
https://elections.delaware.gov/voter/pdfs/VoterRegApplication.pdf (last visited Feb. 9, 2026).
"On a motion to dismiss, the Court may take judicial notice of matters of public record . . . ."
*Kiger v. Mollenkopf*, No. 21-409-RGA, 2021 WL 5299581, at *6 n.6 (D. Del. Nov. 15, 2021).

we apply a presumption against preemption." (citation omitted)).

Title III does not evince a clear and manifest purpose that Congress intended to preempt state privacy laws that protect highly sensitive information. To the contrary, in the principal case DOJ cites in its Complaint, the Fifth Circuit explained that Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," but *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not of the type ordinarily "open to legitimate reasonable inspection," *id.*; instead, DOJ demands obviously sensitive information that enjoys strong privacy protection under both federal and state law, *see Weber*, 2026 WL 118807, at *9 (recognizing that this "sensitive and identifying information is private and not open to inspection by federal officials").

Moreover, DOJ's stated purpose for its demand here for personal and highly sensitive voter information is purportedly to evaluate Delaware's compliance with its list maintenance obligations under *the NVRA and HAVA*. Compl. ¶ 19, D.I. 1. Indeed, in its first iteration of these lawsuits, DOJ asserted claims under not only Title III, but also the NVRA and HAVA themselves. But the courts to have considered the question thus far have had no problem dismissing those claims, noting that the NVRA's disclosure provision does not provide a basis for seeking this information, and that HAVA has no disclosure provisions at all—"end[ing] the inquiry." *Weber*, 2026 WL 118807, at *15; *Oregon*, 2026 WL 318402, at *6–7 (dismissing NVRA and HAVA claims). Now DOJ has jettisoned those claims and proceeds under Title III alone, but maintains that its purpose is to ensure Delaware's compliance with the NVRA and HAVA. Compl. ¶ 23, D.I. 1.

If Congress had thought that it was necessary or desirable for DOJ to have access to a database containing highly sensitive information about every voter in a state so that it could ensure that the state was complying with its list maintenance obligations under those statutes, it would

15

have done so in *the NVRA and HAVA themselves*. Congress did not. Instead, it created a *different* mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this provision to allow for "critical scrutiny and public audits of voter data"—but did not prevent states from redacting sensitive voter data. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1082, 1083 n.14 (10th Cir. 2025). Instead, it specified only that records subject to inspection must include the "names and addresses" of certain voters, 52 U.S.C. § 20507(i)(2), without requiring states to disclose sensitive voter information.

Multiple courts have found that the NVRA's own express disclosure provision does *not* preempt state laws protecting the same highly sensitive categories of information that DOJ seeks here. *See Weber*, 2026 WL 118807, at *13. This is further reason to find that Title III similarly does not allow DOJ to demand this type of information. Title III and the NVRA employ similar language to require disclosure of certain records relating to voter registration. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with id.* § 20507(i) (NVRA: requiring that states "shall make [covered voting records] available for public inspection"). Yet multiple courts have held that the NVRA does *not* prohibit States from restricting access to precisely the information that DOJ seeks. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File.").[6] This same logic prohibits DOJ from reaching this private information through a Title III demand.

---

[6] *See also Voter Reference Found.*, 160 F.4th at 1083 n.14 ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not

HAVA, in turn, contains *no* disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). In short, it simply makes no sense to suggest that Congress intended Title III to preempt state privacy laws protecting highly sensitive voter data so that the federal government can assess compliance with voter list maintenance under the NVRA and HAVA—both statutes reflect a congressional judgment *not* to preempt such laws.

### III.    DOJ has failed to comply with the Privacy Act.

The Privacy Act, codified at 5 U.S.C. § 552a *et seq.*, "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). Congress enacted the Privacy Act after the Watergate scandal in response to "a growing awareness that governmental agencies were accumulating an ever-expanding stockpile of information about private individuals that was readily susceptible to both misuse and the perpetuation of inaccuracies." *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir.

---

prohibit that limitation."); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561 n.3 (M.D. Pa. 2019) (noting NVRA "does not guarantee unfettered access to confidential sensitive information"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding NVRA permits redacting social security numbers).

1981). These concerns persist today, including for Intervenors, who are staunchly opposed to Delaware giving their sensitive data to DOJ, particularly in this political climate. D.I. 9 at 8–10.

Yet, in its rush to sweep up the sensitive information of every registered voter in Delaware, DOJ overlooked the Privacy Act's basic procedural requirements, a concern that Commissioner Albence raised expressly in response to the DOJ's demands. *See* Mot. for Production, Ex. 4 at 8–9, D.I. 4-4; Mot. for Production, Ex. 6 at 4–6, D.I. 4-6. The Privacy Act imposes obligations on any agency that "maintains" a "system of records." 5 U.S.C. § 552a(e). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Delaware's statewide voter registration list, which contains the names of all registered voters as well as their voter registration identifiers and other identifying information, plainly qualifies as a "system of records" under the Privacy Act. The term "maintain" is defined to include "maintain, collect, use, or disseminate." *Id.* § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Delaware's statewide voter registration list, the obligations imposed by subsection (e) are triggered. *See id.* § 552a(e)(4); *Weber*, 2026 WL 118807, at *17.

When an agency establishes a system of records, the Privacy Act requires it to "'publish in the Federal Register' a notice containing a list of 'each routine use of the records contained in the system, including the categories of users and the purpose of such use,'" also called a "SORN." *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2026 WL 252420, at *12 (D.D.C. Jan. 30, 2026) (quoting 5 U.S.C. § 552a(e)(4)) (entering declaratory

judgment against federal government, noting that "the Court has serious concerns that DHS and SSA may each have been violating the Privacy Act in significant ways" before publishing SORN). A SORN must include the name and location of the system, the categories of records and individuals maintained in the system, and all "routine uses" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute the Privacy Act's applicability here, nor that DOJ must publish a SORN that would apply to voter registration lists. To the contrary, the Complaint identifies the specific SORN that DOJ apparently believes provides authority for it collect Delaware's voter registration list, identifying it as "JUSTICE/CRT – 001," "Central Civil Rights Division Index File and Associated Records." Compl. ¶ 25, D.I. 1.[7] That SORN, however, does not extend to statewide voter registration lists. It notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It "does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level." *Weber*, 2026 WL 118807, at *18. Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611. While this language would seemingly cover run-of-the-mill files maintained for specific investigations and litigation matters, it would be a startling

---

[7] DOJ cites two other notices, *see* Compl. ¶ 25, D.I. 1, but they are irrelevant. The first simply adds an additional, allowable "routine use" to the SORN that is not applicable here. *See* 70 Fed. Reg. 43904, 43904 (July 20, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant in the event of a data breach. *See* 82 Fed. Reg. 24147 (May 25, 2017).

construction of these terms to find that they extend to a statewide (or nationwide) voter registration list that has never before been compiled by the federal government, as DOJ presses here.

To hold that this SORN is sufficient to allow DOJ to collate sensitive information about every registered voter in Delaware (or the country) would nullify the Privacy Act's "procedural safeguards" that Congress enacted to "permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified). If DOJ wishes to maintain the information it demands from Delaware, the Privacy Act requires (at a minimum) that DOJ give the public adequate notice by publishing a SORN that accurately discloses the system of records it intends to create and the uses to which it will put that information. *Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997); *see also* 5 U.S.C. § 552a(e)(4); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

There is no impediment to the Court dismissing the Complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes this argument as an affirmative defense, a "complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)). Here, the Complaint clearly alleges DOJ's intention to create a system of records that requires compliance with the Privacy Act. Compl. ¶ 25, D.I. 1. Its failure to comply with that Act independently warrants dismissal.

## CONCLUSION

Intervenors respectfully request that the Court dismiss the complaint under Rule 12(b)(6).

February 9, 2026

Respectfully submitted,

*/s/  Mark Billion (DE Bar #5263)*

Mark M. Billion
**BILLION LAW**
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: (302) 428-9400
markbillion@billionlaw.com

*Attorneys for Intervenors*
*Bethany Jennings and Gemma Lowery*

Elisabeth C. Frost*
Jacob D. Shelly*
Kevin R. Kowalewski*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Tel: (202) 968-4490
efrost@elias.law
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law

* Appearing *pro hac vice*

21