# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. ANTHONY ALBENCE, in his official capacity as State Election Commissioner of the State of Delaware, *Defendant*, Bethany Jennings and Gemma Lowery, *Intervenor-Defendants*, Latin American Community Center, *et al.*, *Intervenor-Defendants*. | Case No. 25-cv-01453-RGA |

## BETHANY JENNINGS AND GEMMA LOWERY'S RESPONSE IN OPPOSITION TO MOTION FOR PRODUCTION OF RECORDS

Elisabeth C. Frost*
Jacob D. Shelly*
Kevin R. Kowalewski*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Tel: (202) 968-4490
efrost@elias.law
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law

\* Appearing *pro hac vice*

DATED: February 9, 2026

Mark M. Billion (DE Bar No. 5263)
**BILLION LAW**
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: (302) 428-9400
markbillion@billionlaw.com

*Attorneys for Intervenors
Bethany Jennings and Gemma Lowery*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ................................................................................................ 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 5

I.   The Federal Rules govern DOJ's claim. ..................................................................... 5

II.  The Court must conduct meaningful review of DOJ's demand. ................................. 7

III. The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery. ................................................ 13

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Federal Cases**                                                 **Page(s)**

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
  854 F.3d 683 (D.C. Cir. 2017) ............................................................................... 8

*CFPB v. Source for Pub. Data, L.P.*,
  903 F.3d 456 (5th Cir. 2018) ................................................................................. 8

*Doe v. Abington Friends Sch.*,
  480 F.3d 252 (3d Cir. 2007) ................................................................................ 15

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ............................................................................................ 13

*Gahagan v. USCIS*,
  911 F.3d 298 (5th Cir. 2018) ................................................................................. 7

*In re Admin. Subpoena, No. 25-1431-019*,
  800 F. Supp. 3d 229 (D. Mass. 2025) .................................................................... 8

*In re Subpoena, No. 25-1431-014*,
  No. 2:25-mc-00039-MAK, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ............. 8

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ............................................................... 7, 9, 10, 12

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) .................................................................................... 13

*State of Ala. ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................... 9

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
  584 F.3d 340 (1st Cir. 2009) .................................................................................. 8

*United States v. $8,221,877.16 in U.S. Currency*,
  330 F.3d 141 (3d Cir. 2003) ................................................................................ 13

*United States v. Lynd*,
  301 F.2d 818 (5th Cir. 1962) ................................................................................. 9

*United States v. Millman*,
  822 F.2d 305 (2d Cir. 1987) .................................................................................. 8

*United States v. Oregon*,
 No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) .......................... passim

*United States v. Powell*,
 379 U.S. 48 (1964) ...................................................................................................... 2, 7, 8

*United States v. Rockwell Int'l*,
 897 F.2d 1255 (3d Cir. 1990) ............................................................................................ 8

*United States v. Weber*,
 No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ........... passim

**Federal Statutes**

26 U.S.C. § 7604(a) ............................................................................................................ 7

29 U.S.C. § 161(2) ............................................................................................................. 6

52 U.S.C. § 20705 ........................................................................................................... 1, 6

**Federal Rules**

Fed. R. Civ. P. 1 ............................................................................................................... 1, 6

Fed. R. Civ. P. 81(a) ........................................................................................................... 6

**Other Authorities**

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 am ET),
 https://x.com/AAGDhillon/status/2001659823335616795 ............................................... 3

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
 Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/
 politics/trump-voter-registration-data.html..................................................................... 14

Michelle Stoddart, Emily Chang, and Alexandra Hutzler, *Trump doubles down on suggesting
 federal government 'get involved' in state elections*, ABC News (Feb. 3, 2026),
 https://perma.cc/P4LY-A65C ............................................................................................ 3

Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*,
 N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/
 minnesota-trump-voter-rolls.html .................................................................................. 15

Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to
 Nationalize Elections*, N.Y. Times (Feb. 2, 2026)
 https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html ......... 3

## NATURE AND STAGE OF THE PROCEEDINGS

On December 2, 2025, the U.S. Department of Justice ("DOJ") filed this suit against the State Election Commissioner of the State of Delaware, Anthony Albence. D.I. 1. Plaintiff moved for production of Delaware's voter records the same day. Mot. for Produc., D.I. 3; Mem. in Supp. of Mot. for Produc., D.I. 4. On December 19, 2025 the Court granted Defendant's unopposed motion to extend its time to respond to Plaintiff's motion. D.I. 19. On January 15, 2026, the Court granted Bethany Jennings and Gemma Lowery's ("Intervenors") motion to intervene. D.I. 22.

## SUMMARY OF ARGUMENT

1. The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action like this one. After the filing of a civil complaint, a defendant may file a motion to dismiss under Rule 12(b). Then, if a plaintiff states a claim, the case proceeds to discovery, summary judgment, and trial if necessary. Over the course of that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

2. DOJ asks this Court to bypass that entire process by adjudicating a "motion for production of records" at the very start of the case. D.I. 3. This may sound like an innocuous discovery motion, but it is no such thing—it would compel the final relief that DOJ seeks in this action. Nothing in the Federal Rules or the statute underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to evade the Rules for its own convenience. The Civil Rights Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. The 1962 Fifth Circuit decision that DOJ relies on is irreconcilable with later Supreme Court precedent clarifying that in circumstances involving *identical* statutory language,

"the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). Indeed, courts regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes, and the Civil Rights Act is no different.

3.  As federal district courts in California and Oregon recently held in parallel litigation against those states, the very Civil Rights Act claim that DOJ replicates here is governed by the Federal Rules rather than some special procedure absent from the statute's text. *See United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 at *8 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 at *8 (D. Or. Feb. 5, 2026). This Court should similarly reject DOJ's effort to short-circuit the ordinary litigation process, deny DOJ's motion for production, and allow this action to unfold as prescribed by the Federal Rules. And, procedural issues aside, DOJ is not entitled to the relief it seeks for the reasons given in Intervenors' contemporaneously filed motion to dismiss.

## STATEMENT OF FACTS[1]

DOJ filed this suit on December 2, 2025, seeking to compel Defendant Anthony Albence, Delaware's State Election Commissioner, to turn over Delaware's full, unredacted statewide voter registration list. *See generally* Compl., D.I. 1. In this action, DOJ brings only a single claim, alleging a violation of Title III of the Civil Rights Act of 1960 ("CRA"). *See id.* ¶¶ 28–30. DOJ contends that it is entitled to access the list under the CRA for the stated purpose of assessing Delaware's compliance with two other federal statutes: the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *See id.* ¶ 22.

---

[1] Intervenors' Motion to Dismiss, filed contemporaneously with this filing, further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Delaware and throughout the country.

As Intervenors explain in their motion to dismiss, the CRA cannot support DOJ's sweeping and novel demand. *See generally* Mem. in Supp. of Mot. to Dismiss. DOJ states no lawful (or, it seems, from public statements from authorities at the DOJ and the President himself, truthful) basis and purpose for its demand. It says it is investigating compliance with the NVRA and HAVA, but it articulates no "basis" for believing Delaware—much less all 40-plus States of which DOJ is making this same demand—is violating those statutes, and investigating compliance with those statutes is not a lawful purpose for an investigation under the CRA in any event, because it falls outside the CRA's focus on constitutional voting rights. *See id.* Argument § I. It also does not appear to be the true purpose for DOJ's demand, which instead appears (at least in part) to be to build an unprecedented and unauthorized nationwide voter list and—as its own senior official has admitted—to use the information obtained to attempt to compel the removal of *hundreds of thousands of voters* from the rolls.[2] *See id.* Background § II; Argument § I. More recently, President Trump has repeatedly indicated that he believes the federal government should "take over" elections from the states, a decidedly unconstitutional approach that provides more reason to doubt that the DOJ's plans for this wide-reaching and deeply personal data will be limited to even their purported investigations into list maintenance compliance.[3] These public statements strongly indicate that the real purpose of this broad and sweeping attempt at possession over all of this data is actually to *impede* voting rights, not protect them. This is plainly not a lawful purpose

---

[2] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 am ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[3] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to Nationalize Elections*, N.Y. Times (Feb. 2, 2026) https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html; Michelle Stoddart, Emily Chang, and Alexandra Hutzler, *Trump doubles down on suggesting federal government 'get involved' in state elections*, ABC News (Feb. 3, 2026), https://perma.cc/P4LY-A65C.

for the demand of these records under the CRA. It is *antithetical* to that Act. And DOJ has not complied with the federal privacy laws that would be necessary for it to collect the private information it demands, even if it were otherwise entitled to it. *See id.* Argument § III.

DOJ has filed a motion that asks the Court to ignore those issues—and other issues raised by the State Election Commissioner in his own motion to dismiss—and skip straight to ordering production of the full set of information that DOJ demands. To this end, it asks the Court to "[o]rder Defendant to produce an electronic copy of the Delaware [S]tatewide Voter Registration List," including all the sensitive fields DOJ demands. Mot. for Produc. at 4, D.I. 3. Strikingly, DOJ does not know what to call this motion.[4] Four different titles appear on the same page: (1) "Motion for Production of Records Pursuant to 52 U.S.C. § 20701, et seq."; (2) "Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960"; (3) "Motion to Show Cause"; (4) "Motion for Order to Show Cause." *See* Mot. for Produc. at 2, D.I. 3. The memorandum in support adds two more: (5) "Request for Order to Compel Production of Records Pursuant to 52 U.S.C. § 20701, et seq."; (6) "Motion to Compel Production." Mem. in Supp. of Mot. for Produc. at 2, D.I. 4.

DOJ's approach has been similarly inconsistent across its dozens of parallel cases. In some, it has proceeded under the Federal Rules and refrained from filing a motion like this one. *See, e.g.,* Complaint, *United States v. Oregon*, 6:25-cv-01666-MTK (D. Or. Sept. 16, 2025), D.I. 1; Complaint, *United States v. Beals*, 3:26-cv-00042-ECY (E.D. Va. Jan. 16, 2026), D.I.1. In others, it has moved for an "order to show cause" why the court should not immediately produce documents; these cases are further divided by whether DOJ filed the motion at the start of the litigation or much later. *See, e.g., United States v. Bellows*, No. 1:25-cv-00468-KFW (D. Me. Sep.

---

[4] For ease of reference, this response refers to it as a "motion for production."

4

18, 2025), D.I. 5 (motion for order to show cause filed two days after complaint); *United States v. Weber*, 2:25-cv-09149-DOC-ADS (C.D. Cal. Dec. 1, 2025), D.I. 87 (motion for order to show cause filed months later, during briefing on motions to dismiss). In still others, it has filed a "motion to compel" simultaneous to the complaint, although it is not the ordinary motion to compel that federal courts normally adjudicate to resolve discovery disputes. *See, e.g., United States v. Hanzas*, 2:25-cv-00903-MKL (D. Vt. Dec. 1, 2025), D.I. 2.; *see also United States v. Aguilar*, No. 3:25-cv-00728-ART-CLB (D. Nev. Dec. 1, 2025), D.I. 2 at 1 (offering four different names for motion filed with complaint, including "motion to compel production," "motion for order to compel records," and "motion to show cause"). DOJ's meandering approach should be this Court's first sign that DOJ is extemporizing far outside the procedures contemplated by the Federal Rules or CRA.

Under any name, DOJ's motion should be denied, and the Court should proceed to adjudicate the motions to dismiss, and after that (should the case survive), allow the parties to conduct discovery, as in any other civil action.

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action, like any other. Nothing in the CRA's text supports DOJ's contention that the CRA "displaces" the Federal Rules or authorizes a "special statutory proceeding." Mem. in Supp. of Mot. for Produc. at 15, D.I. 4. And DOJ is wrong to minimize the Court's role in reviewing the lawfulness of the relief it seeks. The Court should deny DOJ's motion and permit this litigation to unfold under the normal course—starting with resolving the motions to dismiss DOJ's baseless claim.

I.  **The Federal Rules govern DOJ's claim.**

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts,

5

except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—*none* involve the CRA. *See* Fed. R. Civ. P. 81(a). Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, even if Title III document requests could be characterized as a subpoena, they would still be subject to the Federal Rules, as none of the sources listed in Rule 81(a)(5) provide an exception for document requests under Title III. Congress knows how to prescribe streamlined proceedings for that circumstance, *see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in the CRA.

As two federal courts have now explained, "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures."[5] *Weber*, 2026 WL 118807, at *8; *see Oregon*, 2026 WL 318402 at *8 (consulting Title III's text). DOJ identifies not a word to support its demand for an immediate grant of the final relief it seeks in this case. The statute says only that district courts "shall have jurisdiction *by appropriate process* to compel the production" of the documents sought. 52 U.S.C. § 20705 (emphasis added). Nothing in that language suggests that the "appropriate process" should be something other than that which federal courts ordinarily use to resolve contested cases. *Weber*, 2026 WL 118807, at *8 (exercising "appropriate process" by applying the Federal Rules of Civil Procedure). And, as the Supreme Court has held, where a

---

[5] DOJ's complaints in California and Oregon included a CRA claim advanced under the same theory DOJ presses here. Complaint, *United States v. Weber*, 2:25-cv-09149-DOC-ADS (C.D. Cal. Sept. 25, 2025), D.I. 1; Complaint, *United States v. Oregon*, 6:25-cv-01666-MTK (D. Or. Sept. 16, 2025), D.I. 1.

statute of this type "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *Powell*, 379 U.S. at 58 n.18 (emphasis added). *Powell* is directly on point, because the relevant text of the statute in *Powell* was identical to the relevant text of Section 20705, providing that the federal courts "shall have jurisdiction by appropriate process to compel" the production sought. 26 U.S.C. § 7604(a). "Accordingly," in a Title III case, "the Court applies the Federal Rules of Civil Procedure as in any other case." *Oregon*, 2026 WL 318402 at *8.

DOJ's contrary argument relies on a Fifth Circuit decision from 1962, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). But *Lynd* is irreconcilable with *Powell*, which the Supreme Court decided two years later. *Oregon*, 2026 WL 318402 at *8 ("The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*."). Where *Lynd* says that enforcement proceedings under Title III "do[] not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," 306 F.2d at 225–26, *Powell* explains—again, construing a statute with identical text to that found in Title III—that "the Federal Rules of Civil Procedure apply," and that "proceedings are instituted by filing a complaint, followed by answer and hearing," 379 U.S. at 58 n.18. After *Powell*, *Lynd*—which was never binding on this Court—would not control even in the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)). This Court should follow *Powell*.

**II.    The Court must conduct meaningful review of DOJ's demand.**

DOJ is also wrong to minimize the Court's role in reviewing the legality of DOJ's demand. To invoke the powers of a federal court to enforce a subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be

7

relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.*

Unsurprisingly, then, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes. *E.g.*, *United States v. Rockwell Int'l*, 897 F.2d 1255, 1262 (3d Cir. 1990) (holding that a recipient may challenge the summons by "disprov[ing] one of the four elements of the government's *Powell* showing, or otherwise demonstrat[ing] that enforcement of the summons will result in an abuse of the court's process"); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *United States v. Millman*, 822 F.2d 305, 308–09 (2d Cir. 1987) (holding that a summons recipient can successfully challenge the government's document request by "showing bad faith on the part of the [agency]"); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded 'unfettered authority to cast about for potential wrongdoing'" (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994))); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"); *In re Subpoena No. 25-1431-014*, No. 2:25-mc-00039-

8

MAK, 2025 WL 3252648, at *12 (E.D. Pa. Nov. 21, 2025) (quashing subpoena after finding that DOJ "lacks statutory authority because these three requests seek information which bear no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing under the Act."). Nothing in Title III justifies any different treatment. *See Oregon*, 2026 WL 318402 at *8 ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place.").

In arguing otherwise, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid "purpose" under 52 U.S.C. § 20703, as eliminating racial discrimination in voting was the explicit purpose of Title III. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). And there could be no serious question that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents had overwhelmingly been excluded from the voter rolls. *See, e.g., United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been

9

rejected"). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers." 306 F.2d at 231. Here, in contrast, DOJ seeks sensitive and private information that is regularly protected from disclosure. And even *Lynd* emphasized that, if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would need to adjudicate that issue. *Id.* at 226.

None of the factors that made *Lynd* such an easy case are present here. The avowed purpose of DOJ's request falls outside of Title III, because—even by DOJ's own telling—the demand relates not to the protection of constitutional voting rights, but merely administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms (specifically, the NVRA and HAVA). *See* Mem. in Supp. of Mot. to Dismiss Argument § I.[6] There is therefore at least a "genuine dispute" whether the records are subject to production under Title III. *Lynd*, 306 F.3d at 226. Indeed, public reporting and statements by DOJ officials themselves strongly indicate that DOJ's real purpose is to impede voting rights, not protect them. *See supra* at 3–4 & n.2. Moreover, even if DOJ could use Title III to investigate list maintenance issues governed by the NVRA and HAVA (and there is good reason to find that it cannot), DOJ has also provided no reason to believe that it has a valid basis to suspect that there are NVRA and HAVA violations *in Delaware*, much less in all 40-plus States from which DOJ has demanded similar records. Finally,

---

[6] Notably, although DOJ alleged claims under the NVRA and HAVA in its first set of otherwise identical cases against states seeking the same relief it seeks here, DOJ has abandoned those claims in later iterations of these cases, including this one against Delaware. *See* Intervenors' Mem. in Supp. of Mot. to Dismiss at 6 & n.3. In doing so, DOJ has effectively conceded that those statutes do not entitle it to the relief it seeks, and concocted instead an ill-advised theory that the CRA operates as a catch-all authorizing any demand by DOJ for any information related to voting for any purpose, without any place for judicial review. For the reasons discussed here (and in greater detail in Intervenors' motion to dismiss), this argument is not well founded.

the records that DOJ seeks here involve confidential, not public, information. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting quintessential private information about all registered voters in the entire State of Delaware, and nearly every other State, too.

Federal courts have recognized as much by adjudicating DOJ's parallel cases seeking the same type of private voter data under the Federal Rules—and holding that DOJ's CRA claim cannot survive its mandatory encounter with Rule 12. After the California court provided for "appropriate process"—full briefing of motions to dismiss under Rule 12—the court dismissed DOJ's claim. *Weber*, 2026 WL 118807, at *20.[7] So did the Oregon court. *Oregon*, 2026 WL 318402 at *10, *12.[8] Many more courts have proceeded with entertaining Rule 12 motions: defendants' and intervenors' motions to dismiss are fully briefed in Michigan, Maine, New York, Rhode Island, and Minnesota, with briefing ongoing in numerous additional states.[9] With briefing already underway before this Court, there is no reason to change course and deviate from the procedures provided by the Federal Rules.

In several parallel cases (although notably not this one), DOJ has attempted to argue that an order that instructed Connecticut's Secretary of State to show cause why the court should not

---

[7] And it dismissed DOJ's NVRA and HAVA claims. *Weber*, 2026 WL 118807, at *14–16.
[8] It also dismissed DOJ's NVRA and HAVA claims. *Oregon*, 2026 WL 318402, at *6–7.
[9] *See, e.g.*, Reply in Support of Motion to Dismiss, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Jan. 9, 2026), D.I. 58; Scheduling Order, *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. Nov. 21, 2025), D.I. 38; Reply Memorandum of Law in Support of Motion to Dismiss & in Opposition to Cross-Motion to Compel, *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338-MAD-PJE (N.D.N.Y. Jan. 20, 2026), D.I. 86; Reply in Support of Motion to Dismiss, *United States v. Amore*, 1:25-cv-00639-MSM-PAS (D.R.I. Feb. 3, 2026), D.I. 34; Reply Memorandum of Law in Support of Motion to Dismiss, *United States v. Simon*, 0:25-cv-03761-KMM-EMB (D. Minn. Feb. 6, 2026), D.I. 114.

11

order the release of the State's voter registration list to DOJ supported DOJ's attempt to circumvent the Federal Rules. *See* Order to Show Cause, *United States v. Thomas,* No. 3:26-cv-00021-KAD (D. Conn. Jan. 8, 2026), D.I. 10; *see, e.g.*, Notice of Decision, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 12, 2026), D.I. 124 (submitting notice of the *Thomas* order). If DOJ has now given up its reliance on this Order, it is for good reason. That order is not only singular among the 25 (and likely counting) virtually identical cases that DOJ has filed across the country; it was issued in that case before the named defendant (the Secretary of State of Connecticut) had appeared, or for that matter, even been served. *See, e.g.*, Summonses Returned Executed, *Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 12, 2026), D.I. 20–21; Notices of Appearance, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 13, 2026), D.I. 25–26. As a result, the court had no benefit of any briefing on the question of the appropriate process, and as the Connecticut court soon recognized and clarified in a follow-up order, "the parties disagree as to the appropriate procedural posture of this case" and "the dispute shall be fully briefed followed by a hearing at which oral argument shall be had." Order, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 14, 2026), D.I. 30. The court was clear that its order should not be read to affirmatively endorse the DOJ's arguments, explaining that it had not decided whether it will "accept[] the scope and limitations of the [Civil Rights] Act as set forth in *Kennedy v. Lynd*, 306 F.2d 222[ ](5th Cir. 1962)." *Id*. In short, the Connecticut orders "amount[] to nothing more than a scheduling order delineating a briefing schedule," as the California court recognized. *Weber*, 2026 WL 118807, at *19. DOJ's choice not to raise the Connecticut orders here indicates that even DOJ may now recognize that they fail to support its arguments.[10]

---

[10] The orders also reflect important oversights. In addition to initially conflating the Voting Rights Act with the Civil Rights Act, the court did not address the Supreme Court's controlling decision

12

In sum, this Court should reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," Mem. in Supp. of Mot. for Produc. at 15, D.I. 4, and apply those Federal Rules as it does in nearly every other civil action. That starts with resolving the parties' motions to dismiss before proceeding to any necessary discovery period and summary judgment briefing.

### III. The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery.

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion for production of records" that is not sanctioned by the Federal Rules or Title III. The Federal Rules provide for motions to dismiss for a simple and sound reason: to test "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The Federal Rules likewise set an early deadline for motions to dismiss because "[m]otions under Rule 12(b) provide litigants with a fundamental procedural safeguard and prevent burdensome discovery in meritless cases." *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 155 (3d Cir. 2003). Accordingly, Rule 12(b)(6) motions are "intended to 'streamline [] litigation,'" *id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)) (alteration in original), and "weed[] out meritless claims," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

As explained more fully in Intervenors' motion to dismiss, DOJ asserts novel authority to compel the production of an unredacted copy of Delaware's complete statewide voter registration list, without any valid statutory basis to do so. *See* Mem. in Supp. of Mot. to Dismiss Argument

---

in *Powell*, and it analogized Title III to 28 U.S.C. § 1782, a provision with very different text that does in fact specify a different procedure, unlike Title III and the statute at issue in *Powell*, both of which refer only to "appropriate process." Order, *Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), D.I. 30; Notice, *United States v. Thomas*, 3:26-cv-00021-KAD (Jan. 15, 2026), D.I. 33 ("With apologies, ECF No. 30 is hereby amended to reflect the Court's understanding that Plaintiff has invoked the Civil Rights Act of 1960, not the Voting Rights Act as erroneously indicated.").

§§ I–III. In light of the fatal legal deficiencies in DOJ's complaint, resolving DOJ's motion for production first would flip the process backwards, depriving Intervenors and the State Election Commissioner of their right to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. The motions to dismiss are thus the proper vehicle to resolve DOJ's claim. *See Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402 at *8.

Even if the Court denies the motions to dismiss, the next step would be discovery on DOJ's claim, including into the basis and purpose for DOJ's demand. It is already apparent that there are potential disputes of material fact on these central questions. For example, DOJ suggests in its filings with this Court that the purpose of its investigation into Delaware's records is to ascertain if the State is conducting "the reasonable list maintenance required by HAVA and the NVRA." Mem. in Supp. of Mot. for Produc. at 12, D.I. 4. But contrast that representation with the alarming picture painted by public reporting and the words of the administration's own officials (as well as the President himself). That reporting and those public statements support the fear that DOJ seeks to create a nationwide voter list, an unprecedented scheme not authorized by any source of law.[11] Assistant Attorney General Harmeet Dhillon's own statements support this and worse, as she makes clear that DOJ intends to use the voter information it demands to attempt to compel removal of *hundreds of thousands* of voters from the rolls. *See supra* at 3–4 & n.2. In recent days the President has repeatedly made clear that he would like the federal government to not only insert itself deep into the states' election procedures and administration but even "take over" that process. *See supra* at 3. Never mind that that would be in direct conflict with the Constitution, every State constitution, and the will of Congress expressed in the NVRA, HAVA, and other statutes. It is

---

[11] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

clear this is a top priority for the administration: Attorney General Pam Bondi recently went so far as sending a letter to Minnesota indicating that *ICE would stop its operations in that State* if Minnesota provided DOJ full "access" to its voter rolls (among other demands).[12]

These facts—which make it rather implausible that this is simply a case about DOJ checking in on Delaware's compliance with list maintenance procedures—go to the core of DOJ's claim. Granting DOJ the final relief it seeks before the Secretary and Intervenors have the opportunity to conduct discovery relevant to these factual disputes would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g.*, *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("It is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'") (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)).

## CONCLUSION

For the reasons stated above, Intervenors respectfully request that this Court deny DOJ's motion for production.

---

[12] Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html. Minnesota itself has been resisting an essentially identical demand for its voters' private, confidential information. *See United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn. Sep. 25, 2025).

February 9, 2026

Elisabeth C. Frost*
Jacob D. Shelly*
Kevin R. Kowalewski*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Tel: (202) 968-4490
efrost@elias.law
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law

*Appearing *pro hac vice*

Respectfully submitted,

*/s/ Mark Billion (DE Bar #5263)*

Mark M. Billion
**BILLION LAW**
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: (302) 428-9400
markbillion@billionlaw.com

*Attorneys for Intervenors*
*Bethany Jennings and Gemma Lowery*

16