IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>    v.<br><br>ANTHONY ALBENCE, in his Official Capacity as State Election Commissioner of the State of Delaware,<br><br>        Defendant(s). | Case Number: 1:25-cv-01453-RGA |

**UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF FEDERAL ELECTION RECORDS (D.I. 3)**

*Counsel for the United States*

   /s/ Megan Frederick
MEGAN FREDERICK

Trial Attorney, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street, Room 8.141
Washington, D.C. 20002
Megan.Frederick@usdoj.gov
Tel. (202) 704-5430

Date: February 23, 2026

Plaintiff United States of America respectfully submits this Reply in support of its Motion to Compel Production of Federal Election Records (D.I. 3) and in response to Defendant's and Intervenor-Defendants' Oppositions to that Motion (D.I. 35, 38, & 41). The United States provides the brief in tandem with its Memorandum in Opposition ("Mem. Opp'n") to the Motions to Dismiss filed by Defendant and Intervenor-Defendants (D.I. 33, 36, & 39). This brief focuses on two fundamental points pertinent to the Court's consideration of the United States' Motion to Compel: (1) the Federal Rules of Civil Procedure do not apply to actions under Title III of the Civil Rights Act of 1960 ("CRA"); and (2) Defendant and Intervenor-Defendants are prohibited from challenging the sufficiency of the Attorney General's stated basis and purpose for her CRA demand.

## I.  INTRODUCTION AND BACKGROUND

The United States incorporates herein the "Introduction" and "Background" from its Opposition, as the facts, parties, and procedural history are identical. *See* U.S. Mem. Opp'n, D.I. 57 at 2-6.

## II.  THE FEDERAL RULES OF CIVIL PROCEDURE ARE INAPPLICABLE TO MOTIONS TO COMPEL UNDER SECTION 305 OF THE CRA.

Commissioner Albence ("Defendant") argues that the Federal Rules of Civil Procedure govern these proceedings. Def.'s Opp'n, D.I. 35 at 12-13, 16. Defendant repeats what the Fifth Circuit has described as "a basic misconception … concerning a Title III proceeding." *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962).

The "chief purpose" of Title III "is to facilitate the investigation of the records *before suit is filed*." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam) (emphasis added). "[T]he function sought to be exercised by the Attorney General is … purely investigative," *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960),

1

to evaluate "possible violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) ("*Coleman II*"). It does not require known violations of federal law.

In that manner, Title III enables the Attorney General to determine whether a federal lawsuit "should be instituted" and "to obtain evidence for use in such cases if and when filed." *Lynd*, 306 F.2d at 228. No factual allegations of a substantive violation of federal law are required. Instead, "Congress has specifically committed the investigative responsibility to the Attorney General and has equipped [her] with machinery thought suitable for the effective fulfillment of that obligation" through Title III of the CRA.[1] *Id.* at 230. That approach makes sense. The United States cannot be expected to effectively enforce federal election laws such as HAVA and the NVRA if the Attorney General is required to allege facts from federal election records that state officers of election have denied to her. *Id.* at 227 (the Attorney General's "right to records does not require that [she] show [she] could win without them").

The Attorney General's filing of an application for an order under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Id.* at 225. It is "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Id*. In structuring the statute in this way, Congress has indicated that the Federal Rules of Civil Procedure are inapplicable. "Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Id.* at 225-26; *see also Gallion*,

---

[1] Title III invests the Attorney General with a power akin to a grand jury which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Bisceglia*, 420 U.S. 141, 148 (1975). The Supreme Court has recognized statutes that vest investigative powers in Executive Branch agencies provide such agencies with grand jury-like powers and latitude. *See, e.g.*, *United States v. Powell*, 379 U.S. 48, 57 (1964) (recognizing that the IRS Commissioner has grand jury-like powers); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (same with respect to the Federal Trade Commission). The investigative powers that the Attorney General derives from Title III fall comfortably within this paradigm.

187 F. Supp. at 854 (comparing CRA applications to compel to actions by the Securities and Exchange Commission in which procedural rules "are made specifically inapplicable to investigations"). The CRA differs from ordinary civil actions because its "chief purpose" is to facilitate *pre-suit* investigation. *See Citizens Councils*, 187 F. Supp. at 847. In stark contrast, "[t]he chief purpose of Rule 34 … is to give a party litigant the right to have records produced *after* suit has been filed." *Id.* (emphasis added). To summarize, "[t]here is no place for any other procedural device or maneuver," including the motions to dismiss presently before the Court, in response to a CRA claim. *Lynd*, 306 F.2d at 226; *see also* Fed. R. Civ. P. 81 (summarizing other federal claims to which the Federal Rules of Civil Procedure do not apply).

A recent decision issued by a District Court in the Sixth Circuit agreed with *Lynd* and rejected the arguments raised by Defendant here. *See United States v. Benson*, Case No. 1:25-cv-01148-HYJ-PJG, slip op. at 14 (W.D. Mich. Feb. 10, 2026) (attached to Neff Decl. as Ex. 13). Instead, the *Benson* court construed "a request for records under the CRA as a form of administrative subpoena." *See* slip op. at 14 (citing *Lynd*, 306 F.2d at 225 and *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963)). Therefore, "[m]ost of the Federal Rules of Civil Procedure are simply inapplicable…" *Benson*, slip op. at 15. The court acknowledged that "a district court's role in the enforcement of an administrative subpoena is a limited one." *Id*.

Two District Courts in the Ninth Circuit reached a different conclusion but erred in doing so. Both courts misread the Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964), to reject the Fifth Circuit's holding in *Lynd* that Title III of the CRA is a special statutory proceeding where the Federal Rules of Civil Procedure do not apply. *See United States v. Oregon*, Case No. 6:25-cv-01666-MTK, slip op. at 15 (D. Or. Feb. 5, 2026) (attached to Neff Decl. as Ex. 15); *United States v. Weber*, Case No. 2:25-cv-09149-DOC-ADS, slip op. at 13 & n.15 (C.D. Cal.

Jan. 15, 2026) (attached to Neff Decl. as Ex. 14).[2] *Powell* applied the Federal Rules of Civil Procedure to an IRS administrative summons. There, the Supreme Court made the unremarkable observation that because section 7604(b) of the Internal Revenue Code ("IRC") "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply…." 379 U.S. at 58 n.18. However, the *Oregon* court applied a much broader construction of *Powell* than the Supreme Court intended.

The *Oregon* court found that *Powell* involved interpretation of "a similar statute" to Title III of the CRA, and the decision's admonition that "the court may 'inquire into the underlying reasons for the examination [of records]'" therefore applied to the CRA. *Oregon*, slip op. at 15 (quoting *Powell*, 379 U.S. at 58). Although the quoted language from *Powell* is correct, *see id.*, the *Oregon* court omitted any explanation that the quoted language referred to a process expressly provided in the IRC that is missing from the CRA. The Supreme Court explained that judicial inquiry was appropriate where asked to enforce an administrative summons under the IRC to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id*. That inquiry was permitted because it was specifically authorized by section 7605(b) of the IRC, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. § 7605(b)). However, no similar language limits the Attorney General's authority to compel records under the CRA. *See* 52 U.S.C. §§ 20701-20706. Nor does the CRA provide any process for officers of election to object to Title III proceedings being initiated against them. *Id*.

---

[2] As discussed below, *Benson* addressed many of the legal errors in *Weber* that call into question whether *Weber* merits any consideration.

Moreover, even with language in the IRC limiting records to "necessary" investigations, the Supreme Court noted that strong deference is given to the Government to investigate, and "does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, *or even because it wants assurance that it is not*." *Powell*, 379 U.S. at 57 (quoting *Morton Salt*, 338 U.S. at 642-43) (emphasis added). *Powell* is completely consistent with *Lynd* and in no way restricts records demands under the CRA to the statutory limitations that Congress included in the IRC.[3]

In addition to *Powell*, the *Weber* court also referred to what it indicated was a decision of the United States Supreme Court. *See Weber*, slip op. at 13 (citing *Becker v. United States*, 451 U.S. 1306 (1981)). That is incorrect. *Becker* was an order issued by the Circuit Justice on an application for a temporary stay. *See* 451 U.S. 1306 (1981) (Rehnquist, J., in chambers) (continuing temporary stay pending review by the Court). The subsequent history indicates that the stay was continued, 452 U.S. 912 (1981), and later vacated and denied, 452 U.S. 935 (1981), leaving it without any precedential authority.

Moreover, in *Becker*, which involved an administrative summons under the IRC, then-Justice Rehnquist specifically recognized that *Powell*'s reference to the Federal Rules of Civil Procedure applying to records demanded under the IRC was "not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and adversary hearing, if requested, is made available." *Becker*, 451 U.S. at 1308 (Rehnquist, J., in chambers)

---

[3] The *Oregon* decision similarly misread *Lynd* by reasoning "the Court doubts its applicability here where Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation" instead of applying "directly to the court for the records." *Oregon*, slip op. at 15 n.1. *Lynd* does not say filing a pleading waives the expedited process under the CRA. Instead, as discussed above, the Fifth Circuit explained only that any pleadings that are filed do not need to "satisfy usual notions under the Federal Rules of Civil Procedure." 306 F.2d at 225-26.

(quoting *Donaldson v. United States*, 400 U.S. 517, 528-29 (1971)). Justice Rehnquist distinguished between agency efforts to "to take what is potentially income-producing property" from efforts to "merely require [the respondent] to produce evidence." *Id.* at 1308. Although "the need for summary enforcement of IRS summonses is clear and justifies dispensing with Federal Rules" in the latter context (gathering evidence), "the need to proceed summarily is less clear, as is the justification for dispensing with otherwise applicable provisions of the Federal Rules" in the former context (seizing income-producing property). *Id.*; *see id.* at 1310-11. When it comes to requests for evidence, "[o]bviously the taxpayer cannot simply write his own ticket as to the manner in which relevant nonprivileged evidence shall be made available to the IRS." *Id.* at 1311. In other words, far from supporting Defendant's argument that the summary proceeding does not apply to production of federal records under the CRA, Justice Rehnquist's opinion in *Becker* undercuts it.

Accordingly, the "usual notions under the Federal Rules of Civil Procedure" do not apply to the CRA's "special statutory proceeding" to compel production of federal election records. *Lynd*, 306 F.2d at 225-26; *see also Gallion*, 187 F. Supp. at 852 (same).

### III. DEFENDANT AND THE INTERVENORS CANNOT CHALLENGE THE ATTORNEY GENERAL's BASIS AND PURPOSE TO INVESTIGATE DELAWARE'S HAVA & NVRA COMPLIANCE.

The CRA establishes a straightforward requirement for the Attorney General to make a written demand to officers of election for federal election records. It covers "all records and papers" which come into possession of an officer of election that relate to any prerequisite to voting in a federal election, including voter registration applications and records. 52 U.S.C. § 20701. Pursuant to Section 303 of the Act, to obtain those federal election records, the Attorney General need only make to an officer of election with custody, possession, or control of those records a "demand in writing" for "inspection, reproduction, and copying," accompanied by "a statement of

6

the basis and the purpose therefor." 52 U.S.C. § 20703. After that written demand has been made, and the officer of election has rejected it, the Attorney General may seek an order from the federal court "to compel the production of such record or paper." 52 U.S.C. § 20705.

In the August 14 Letter, the Attorney General made a written demand under Section 303 of the CRA for Delaware's federal election records, including its SVRL. For the basis, the letter cited the NVRA and HAVA. D.I. 4-4. After explaining why those statutes supported the request, the letter specifically cited Section 303 of the CRA, stating that "[p]ursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Delaware's complete and current [SVRL]." D.I. 4-4. It further explained that the purpose "is to ascertain Delaware's compliance with the list maintenance requirements of the NVRA and HAVA." *Id*.

Nevertheless, Defendant argues that the United States failed to provide a sufficient statement of the basis and purpose of its request for federal election records. Defendant criticizes the demand, stating the Attorney General "failed to state an adequate 'basis and the purpose.'" Def.'s Opp'n, D.I. 35 at 17. Federal courts have rejected contentions that parallel those made by Defendant. Instead, a reference to the statutory basis for making the demand, namely the CRA, suffices.[4]

---

[4] Even if more of an explanation was required, to wit, why the records are needed, the Attorney General did so in her August 14 Letter, in which she wrote:

> …the electronic copy of the [SVRL] must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number [SSN4] as required under … HAVA … to register individuals for federal elections.

D.I. 4-4 (emphasis in original). An accompanying footnote explained that when Congress charged the Attorney General with HAVA enforcement, it "plainly intended that DOJ be able to conduct an independent review of each state's list…." *Id.* at n.1.

7

Similarly, Section 303's requirement that the written demand "contain a statement of the basis and the purpose therefor," 52 U.S.C. § 20703, "means only that the Attorney General [must] identify in a general way the reasons for [her] demand." *Coleman II*, 313 F.2d at 868 (per curiam) (citation omitted). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible violations* of a Federal statute." *Id.* (emphasis added); *see also Coleman v. Campbell*, 208 F. Supp. 199, 200 (S.D. Miss. 1962) ("*Coleman I*") (the written demand need only indicate the records were needed "to see if any federal laws were violated"); *cf. Morton Salt*, 338 U.S. at 642-43 (same construction of administrative subpoena by the FTC). The United States satisfied that requirement by stating, "[t]he purpose of the request is to ascertain Delaware's compliance with the list maintenance requirements of the NVRA and HAVA." D.I. 4-4.

Contrary to what Defendant argues, Defendant and Intervenor-Defendants are prohibited from using "any procedural device or maneuver," including their motions to dismiss, to challenge or "ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd*, 306 F.2d at 226 & n.5 (quoting 52 U.S.C. § 20703). No discovery or other tools ordinarily available under the Federal Rules of Civil Procedure may be used to question or examine "the reasons why the Attorney General considers the records essential…." *Id*. "Questions of relevancy or good cause or other like considerations" that may be assessed under other statutes to which the Federal Rules of Civil Procedure may apply "are completely foreign to the summary proceeding" under Section 304 of the CRA. *Id.* at 228; *see also Benson*, slip op. at 16-17 ("[T]he CRA does not allow courts to evaluate the substance of the DOJ's purported basis and purpose."). Congress vested the Attorney General with broad authority to obtain federal election records under Title III of the CRA.

8

*Coleman I*, 208 F. Supp. at 200-01.  In sum, "the factual foundation for, or the sufficiency of, the Attorney General's" written demand under Section 303 "is not open to judicial review or ascertainment."  *Lynd*, 306 F.2d at 226; *cf. Powell*, 379 U.S. at 56 (explaining that there is no judicial oversight "to oversee the [IRS] Commissioner's determinations to investigate"); *see also Benson,* slip op. at 16-17.  Defendants' motions to dismiss the CRA claim for not meeting an elevated showing of statement of "the basis and the purpose" fail under the plain language of the statute, as applied by federal courts.

## IV.    CONCLUSION

For all the foregoing reasons, the Court should grant the United States' Motion to Compel Production of Federal Election Records under Title III of the CRA (D.I. 3).

Dated: February 23, 2026.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General

ERIC V. NEFF
Acting Chief, Voting Section

/s/ *Megan Frederick*
MEGAN FREDERICK (VA Bar No: 79682)
Trial Attorney, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street, Room 8.137
Washington, D.C. 20002
Megan.Frederick@usdoj.gov
Tel. (202) 304-2927

Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, a true and correct copy of the foregoing document was served via the CM/ECF email system to all counsel of record.

                                            /s/ *Megan Frederick*
                                      MEGAN FREDERICK
                                      Trial Attorney, Voting Section
                                      Civil Rights Division
                                      U.S. Department of Justice
                                      4 Constitution Square
                                      150 M Street NE, Room 8.141
                                      Washington, D.C. 20002
                                      Telephone: (202) 704-5430