**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br> *v.*<br><br>ANTHONY ALBENCE, in his official capacity as State Election Commissioner of the State of Delaware,<br><br>    *Defendant*,<br><br>Bethany Jennings and Gemma Lowery,<br><br>    *Intervenor-Defendants*,<br><br>Latin American Community Center, *et al.*,<br><br>    *Intervenor-Defendants*. | Case No. 1:25-cv-01453-RGA |

<u>**INTERVENORS BETHANY JENNINGS AND GEMMA LOWERY'S**</u>
<u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

Elisabeth C. Frost*
Jacob D. Shelly*
Kevin R. Kowalewski*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Tel: (202) 968-4490
efrost@elias.law
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law

\* Appearing *pro hac vice*

DATED: March 2, 2026

Mark M. Billion (DE Bar No. 5263)
**BILLION LAW**
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: (302) 428-9400
markbillion@billionlaw.com

*Attorneys for Intervenors*
*Bethany Jennings and Gemma Lowery*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I.     Rule 12(b) motions are appropriate vehicles to test the sufficiency of the
       complaint................................................................................................................... 2

II.    The Court must review the lawfulness of DOJ's demand. ........................................ 3

III.   DOJ is not entitled to the voter list because it failed to provide an adequate basis
       and purpose under the CRA. ..................................................................................... 4

       A.     DOJ failed to state a "basis" for its demand. ............................................. 4

       B.     DOJ did not provide a legally sufficient "purpose" for its demand........................ 5

IV.    Title III does not prohibit redaction of sensitive voter information................................... 8

V.     DOJ's collection of Delaware's voter list would violate the Privacy Act. ........................ 9

       CONCLUSION.......................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama ex rel. Gallion v. Rogers*,
      187 F. Supp. 848 (M.D. Ala. 1960) ................................................................. 5

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
      570 U.S. 1 (2013) .............................................................................................. 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
      854 F.3d 683 (D.C. Cir. 2017) .......................................................................... 3

*CFPB v. Source for Pub. Data, L.P.*,
      903 F.3d 456 (5th Cir. 2018) ............................................................................. 3

*Dep't of Com. v. New York*,
      588 U.S. 752 (2019) ........................................................................................... 8

*In re Coleman*,
      208 F. Supp. 199 (S.D. Miss. 1962) .................................................................. 4

*In re Visteon Corp.*,
      612 F.3d 210 (3d Cir. 2010) .............................................................................. 5

*Jones v. Bock*,
      549 U.S. 199 (2007) ......................................................................................... 10

*Kennedy v. Lynd*,
      306 F.2d 222 (5th Cir. 1962) ..................................................................... *passim*

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
      No. CV 25-0946 (CKK), 2026 WL 252420 (D.D.C. Jan. 30, 2026) .............. 10

*United States v. Milchin*,
      128 F.4th 199 (3d Cir. 2025) ............................................................................. 4

*United States v. Benson*,
      --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10,
      2026) .............................................................................................................. 1, 2

*United States v. Mo. Pac. R.R. Co.*,
      278 U.S. 269 (1929) ........................................................................................... 6

*United States v. Oregon*,
      No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................... *passim*

*United States v. Powell,*
    379 U.S. 48 (1964) ..................................................................................... 1–3

*United States v. Weber,*
    --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15,
    2026) ....................................................................................................... *passim*

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302, 321 (2014) ................................................................................ 6

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) .................................................................................... 6, 7

**Statutes**

5 U.S.C. § 552a ................................................................................................... 9

26 U.S.C. § 7604 ................................................................................................. 2

26 U.S.C. § 7605 ................................................................................................. 2

52 U.S.C. § 20510 ............................................................................................... 7

52 U.S.C § 20703 ............................................................................................ 1, 3

52 U.S.C. § 20705 ............................................................................................... 2

52 U.S.C. § 21111 ............................................................................................... 7

15 Del. C. § 304 .................................................................................................. 8

15 Del. C. § 305 .................................................................................................. 8

**Other Authorities**

106 Cong. Rec. 5086 (1960) ............................................................................... 6

106 Cong. Rec. 7766 (1960) ............................................................................... 6

106 Cong. Rec. 7767 (1960) ............................................................................... 6

Antonin Scalia & Brian A. Garner, *Reading Law* (2012) ................................... 4

*Basis, Black's Law Dictionary* (4th ed. 1968) ................................................... 4

H.R. Rep. No. 86-956 (1959) .............................................................................. 5

*Purpose, Black's Law Dictionary* (4th ed. 1968) .............................................. 5

## SUMMARY OF ARGUMENT

The Department of Justice ("DOJ") has filed dozens of lawsuits nearly identical to this one seeking to compel the production of voter lists. Every federal court to reach a decision in these cases has dismissed DOJ's complaint. *See United States v. Weber*, --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). This Court should do the same.

DOJ's threshold argument that Rule 12(b)(6) motions to dismiss are "inapplicable" here, D.I. 57 ("Opp.") at 5, is irreconcilable with Supreme Court precedent. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). For similar reasons, its suggestion that judicial review is restricted here is misplaced; courts review whether government document demands comply with their authorizing statutes as a matter of course. DOJ's merits arguments are wrong too. DOJ failed to satisfy the core statutory requirement that it provide both "the basis and the purpose" for its demand under Title III of the Civil Rights Act of 1960 ("CRA"). 52 U.S.C § 20703. In its opposition, DOJ does not identify *any* "basis" for the demand aside from the CRA itself. But by expressly requiring that "the basis and the purpose" be provided in any request for production of voter information, the CRA demands more. And DOJ's stated purpose—to investigate Delaware's compliance with the NVRA and HAVA—is not a valid purpose under the CRA, which is concerned with protecting the constitutional right to vote rather than with enforcing election administration rules.

Two other independent grounds warrant dismissal here: (1) Delaware law prohibits the disclosure of the information DOJ seeks, and the CRA does not preempt these privacy laws; and (2) DOJ failed to comply with prerequisites imposed by the Privacy Act. DOJ simply reasserts its position on both issues without grappling with the opposing arguments. It suggests that the CRA

preempts state privacy law—but offers no preemption analysis to that effect. And while DOJ claims that it complied with the Privacy Act, it never explains how any SORN encompasses Delaware's entire statewide voter list. For all of these reasons, this suit should be dismissed.

## ARGUMENT

### I.     Rule 12(b) motions are appropriate vehicles to test the sufficiency of the complaint.

DOJ's lead argument—that the Federal Rules of Civil Procedure, and thus Rule 12(b)(6), do not apply here—is squarely foreclosed by Supreme Court precedent. *See Powell*, 379 U.S. at 58 n.18; *see also Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *8; D.I. 38 (Jennings' Intervenors opposition to motion to compel). DOJ cites *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), but as both *Weber* and *Oregon* held, that case—which is non-binding in this Circuit in any event—is irreconcilable with *Powell. See Weber*, 2026 WL 118807, at *8 n.15; *Oregon*, 2026 WL 318402, at *8.[1] What *Powell* confirms is that when a statute simply says that it should be enforced through "appropriate process," and "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18. The relevant language in the statute examined by *Powell* is *identical* to the relevant part of the CRA—both provide that district courts "shall have jurisdiction by appropriate process to compel" the production of the records the government seeks. 52 U.S.C. § 20705; 26 U.S.C. § 7604(a).[2] Accordingly, this Court should join the *Weber*, *Oregon*, and *Benson* courts in evaluating—and ultimately dismissing—DOJ's complaint under Rule 12(b)(6).

---

[1] Even *Benson*, upon which DOJ relies, *see* D.I. 56 at 3, ultimately dismissed DOJ's claim under Rule 12(b) based on its review of whether DOJ's demand complied with the CRA. *Benson*, 2026 WL 362789, at *9–11 (dismissing DOJ's suit on alternative ground under the text of the CRA).

[2] While the Internal Revenue Code separately protects taxpayers from being "subjected to unnecessary examination or investigations," 26 U.S.C. § 7605(b), *Powell* did not rely on that subsection in applying the Federal Rules. Instead, *Powell* explained that a court may, to guard against potential "abuse" of its own process, inquire into the basis for a records examination when the government has invoked the court's process to compel compliance. 379 U.S. at 58.

## II.    The Court must review the lawfulness of DOJ's demand.

DOJ is also wrong to suggest that this Court cannot conduct meaningful judicial review of whether DOJ's demand complies with the CRA. Opp. at 2. Courts routinely review whether government demands comply with their authorizing statutes. *E.g.*, *Powell*, 379 U.S. at 57 (holding that the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose"); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (similar). As *Powell* explains, judicial review flows from the fact that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." 379 U.S. at 58.

Here, the CRA includes the express requirement that any demand state "the basis and the purpose" for the government's request. 52 U.S.C. § 20703. Even under the *Lynd* court's understanding of the CRA, a court must decide "whether the written demand has been made" according to "§ [20703]." 306 F.2d at 226. The Court is therefore obliged to review DOJ's demand for Delaware's voter list to determine whether it complies with the CRA. *See, e.g.*, *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 690 (D.C. Cir. 2017) (declining to enforce civil investigative demand where agency failed to comply with statutory requirements). As other courts have recently concluded in conducting this sort of judicial review, DOJ's nationwide demands do not comply with the CRA's substantive requirements. *See Weber*, 2026 WL 118807, at *8–10 (holding that "DOJ has not complied with Title III of the CRA and has provided an inadequate statement of basis and purpose" and dismissing claim as a result); *Oregon*, 2026 WL 318402, at *7–10 (similar).

3

**III.    DOJ is not entitled to the voter list because it failed to provide an adequate basis and purpose under the CRA.**

**A.    DOJ failed to state a "basis" for its demand.**

DOJ failed to include *any* statement of the "basis" for its demand in its August 14 letter to Commissioner Albence. DOJ puzzlingly responds that "the basis for the demand was Title III of the CRA." Opp. at 4; *see also id.* at 20. But that is the *authority* under which the request was purportedly made, not the factual *basis* for the request. *E.g.*, *Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). DOJ's contrary argument is circular—the CRA cannot be the "basis" for a demand under that statute; if it could, the statutory requirement to provide the "basis" would be superfluous. *United States v. Milchin*, 128 F.4th 199, 202 (3d Cir. 2025) ("The canon against surplusage counsels against adopting interpretations that render a statute "superfluous, void, or insignificant." (citation omitted)). DOJ's own past practice shows that this novel argument is contrived. In *Lynd*, for example, DOJ explained that its basis for demanding records under Title III was that it had "information . . . tending to show" that racial discrimination in voter registration had occurred in the target jurisdiction. 306 F.2d at 229 n.6. In other words, it had a "foundation" and factual "support" for its investigation into southern jurisdictions for refusing to register Black voters. *See Black's Law Dictionary*, *supra*; *see also In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (upholding CRA demand "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction"), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963); *Lynd*, 306 F.2d at 229 n.6. In contrast, DOJ's demand does not even suggest, never mind provide a basis to think, that Delaware is violating any law. *See* D.I. 4-4.

Nor can DOJ rely on the letter's language going squarely to *purpose*, which is obviously

not the same as the "*basis*" for the request. Those are different words, with different meanings. *See Purpose*, *Black's Law Dictionary* (4th rev. ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project"). In stating that it would use Delaware's voter list to evaluate the State's compliance with list maintenance obligations, DOJ has indicated what it purportedly intends to *do* with the voter list, *i.e.*, its "purpose" in requesting it. But in no way can DOJ be said to have explained its *basis* for requesting the list. *See Oregon*, 2026 WL 318402, at *9 ("Reading 'basis' in the way [DOJ] suggests collapses its meaning with that of 'purpose.' Title III explicitly requires a statement of 'the basis *and* the purpose.'" (citation omitted)).

### B.     DOJ did not provide a legally sufficient "purpose" for its demand.

DOJ's demand also fails to satisfy Title III's separate "purpose" requirement. Congress enacted Title III "to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"). But DOJ is not seeking Delaware's voter list because it suspects any specific violations of federal law or infringement of the right to vote. Rather, DOJ admits that it seeks the list to assess Delaware's compliance with the NVRA and HAVA. *See* Opp. at 4. As explained, this is not a legally sufficient purpose under Title III. *See* MTD at 12–13.

DOJ's opposition contends that CRA investigations cannot be limited to those based on racial discrimination or violations of the right to vote. Opp. at 15. But DOJ's argument ignores that, when construing the "purpose" requirement, the "statute is to be read as a whole." *In re Visteon Corp.*, 612 F.3d 210, 222 (3d Cir. 2010) (subsequent history omitted); *see also* Antonin Scalia & Brian A. Garner, *Reading Law* 145 (2012) ("The text must be construed as a whole.").

DOJ also ignores the well-established principle that courts must "account for both the specific context in which language is used and the broader context of the statute as a whole." D.I. 37 ("MTD") at 9 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (citation modified)).

Here, the term "purpose" must be read in the context of the CRA—a law designed to enhance DOJ's enforcement powers for the protection of *civil rights* provided by the Civil Rights Act of 1957. *See* MTD at 9–10; *see also United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) ("[T]he reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used."). To do otherwise would be to assume Congress intended for DOJ to be able to demand state election records for the purpose of investigating compliance with *any* federal statute, even if those statutes dealt with subjects as far afield from the CRA as antitrust, bankruptcy, or admiralty law. Had Congress intended such a sweeping result, it surely would have said so explicitly. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

DOJ's reliance on *Coleman* changes none of this—that case indisputably concerned an investigation into racial discrimination in voting, the heartland concern of the CRA. Opp. Br. at 7 (citing *Coleman*, 313 F.2d at 868). Nor can DOJ rely upon isolated snippets of Senator Keating's floor statement, which in reality confirm that Title III was meant "to add essential features to the laws already on the statute books toward ending discrimination in the voting privileges of our citizens." 106 Cong. Rec. 7767 (1960). As Senator Saltonstall—another key sponsor of the CRA— explained, Title III "requires the preservation of voting records and gives the Justice Department power to inspect them *in enforcing the 1957 act*." 106 Cong. Rec. 5086 (1960) (emphasis added); *see also* 106 Cong. Rec. 7766 (1960) (Senator Saltonstall explaining the 1960 act "builds on the 1957 Civil Rights Act by preserving Federal election records for inspection by the Justice

Department . . . where discrimination has been shown"). The legislative history overwhelmingly reflects Congress's intent that Title III be used to combat discrimination in voting generally, and to enforce the 1957 act specifically. In contrast, nothing in the CRA's history suggests Congress intended to empower the Attorney General to obtain voting records for open ended purposes.

DOJ, tellingly, cannot cite any case in which a court has granted a demand made under the CRA to assess a State's HAVA compliance, or for *any* purpose beyond investigation into the infringement of federal voting rights. DOJ now contends that it "has pursued successful matters" to obtain voter lists under the CRA for this purpose. Opp. at 15. But, in the first matter it cites, Georgia entered a consent decree with DOJ immediately after DOJ sued to "resolv[e] this matter without the need for litigation," and in the second, Texas chose to enter a Memorandum of Understanding with DOJ without any litigation. *See* Decl. of Eric Neff, Exs. 8–10, D.I. 58-1, 56-2, 58-3. In neither instance was the applicability of the CRA contested or resolved by a court.

DOJ further contends that the CRA must be read broadly, lest it restrict "the Attorney General's enforcement requirements in HAVA and the NVRA[.]" Opp. at 8. But that argument makes no sense at all. The NVRA and HAVA were enacted *after* the CRA, and Congress specifically prescribed DOJ's enforcement powers *within* those statutes. *See* 52 U.S.C. § 20510(a); 52 U.S.C. § 21111. Nothing in the text or history of those laws suggest Congress intended for the CRA—an entirely separate, decades-old law—to be used as a federal policing mechanism for voter list maintenance issues. In reality, what this case shows is that DOJ is dissatisfied with the enforcement powers Congress actually afforded it under the NVRA and HAVA, and thus seeks to find backdoor enforcement power through an entirely unrelated statute. *But see Whitman*, 531 U.S. at 468.

Finally, whatever the propriety of DOJ's stated purpose, there is ample evidence that it

does not reflect DOJ's true or full purpose. *See* MTD at 12. While some of the 1960s-era cases interpreting Title III offered deference to DOJ's statement of a "basis and . . . purpose," *see Lynd*, 306 F.2d at 226, those cases reflect instances where Title III was unquestionably being used for its intended purpose: investigations into the denial of voting rights due to race. In contrast, DOJ does not even pretend here that it seeks to investigate any possible denial of the constitutional right to vote. Rather, DOJ's public statements in the present context have repeatedly made clear that its purposes go "beyond [its] purported compliance check . . . and into the territory of comprehensive data collection." *Weber*, 2026 WL 118807, at *10 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 756 (2019)); *see also Oregon*, 2026 WL 318402, at *11. The Court is not obliged to accept DOJ's "contrived" purpose. *Weber*, 2026 WL 118807, at *10.

## IV. Title III does not prohibit redaction of sensitive voter information.

DOJ's complaint must also be dismissed because Delaware is entitled to redact sensitive personal information from any production of the statewide voter list, including if produced in response to a demand under the CRA. *See* MTD at 13–17. DOJ does not contest that Delaware law protects such information, *see* 15 Del. C. §§ 304(h), 305(a), yet it fails to explain how the CRA preempts such state law protections. It does not.

*First*, Title III does not preempt Delaware's privacy laws protecting the information at issue. *See* MTD at 13–17. DOJ hints that the CRA preempts state laws—but it fails to make any argument to this effect or to conduct any preemption analysis. *See* Opp. at 3; 16–17. Congress may preempt state election law, but that power extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). Where Congress has not spoken on an issue, state law controls. *See id.* Nothing in Title III specifically addresses state-law confidentiality protections for especially sensitive data, and *Lynd* shows that it has long been understood that the CRA reaches only "public records" rather than "confidential, private papers

and effects." 306 F.2d at 231. Indeed, the private information sought here was not even required to be provided on registration forms until well after the enactment of Title III, which means Congress could not have intended it to require disclosure of that information.

*Second*, the overwhelming judicial consensus that redaction is permitted under the NVRA reinforces that the same must be true of the CRA. *See* MTD at 16–17. Numerous courts have held that the NVRA does not prohibit States from redacting precisely the information that DOJ demands here. *See, e.g.*, MTD at 16 n.6 (collecting cases); *Weber*, 2026 WL 118807, at *12–13; *Oregon*, 2026 WL 318402, at *12. It would make little sense to conclude that the CRA requires Delaware to disclose sensitive information for purposes of allowing DOJ to assess the State's NVRA and HAVA compliance, when those statutes do not require such disclosure at all. DOJ, once again, has no answer to this, and this too is another independent basis for dismissal.[3]

## V.    DOJ's collection of Delaware's voter list would violate the Privacy Act.

Finally, DOJ's failure to comply with the Privacy Act also requires dismissal. *See* MTD at 17–20. DOJ contends that the Privacy Act "does not restrict the ability of state actors to share information with federal agencies." Opp. at 21. But the Privacy Act is triggered whenever an agency "collects" or "maintains" any "system of records"—and the statute makes no distinctions based on the *source* of the records. *See* 5 U.S.C. § 552a(a)(3)–(4), (e). DOJ does not dispute that Delaware's voter registration list is a "system of records," and therefore by attempting to "collect" the list from Delaware and to "maintain" it on government servers, the Privacy Act is implicated.

---

[3] There is no merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested." Opp. at 18. This indisputable fact has been repeatedly pointed out to DOJ, *e.g.*, Reply in Supp. of Mot. to Dismiss, *Weber*, No. 2:25-CV-09149 (C.D. Cal. Nov. 3, 2025), D.I. 31, yet DOJ persists in repeating its false claim here.

DOJ next insists that it is not required to plead compliance with the Privacy Act. Opp. at 19. But it is well established that a motion to dismiss may be granted when the "allegations in the complaint suffice to establish" "the basis for dismissal." *Jones v. Bock*, 549 U.S. 199, 215 (2007). As DOJ does not contest, it was required to publish a System of Records Notice ("SORN") that applies to Delaware's statewide voter list before collecting and maintaining such information. *See* MTD at 18–20. Rather than point to a specific SORN that actually does this, DOJ cites to a table of every SORN ever issued by DOJ. *See* Opp. at 20 (citing Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147 (May 25, 2017)). But DOJ makes no effort to explain how any particular SORN encompasses Delaware's statewide voter registration list. No such SORN exists. "It is flatly inconsistent with the text, structure, and purpose of the Privacy Act" for DOJ to "initiate a major new data-sharing program" only to "validate that program as a 'routine use' months *after* it . . . beg[ins]." *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2026 WL 252420, at *55 (D.D.C. Jan. 30, 2026) (entering declaratory judgment against federal government to comply with the Privacy Act) (emphasis added). Until DOJ complies with the Privacy Act's procedural requirements by publishing an appropriate SORN and allowing for public comment, the Privacy Act bars it from collecting and maintaining Delaware's voter list. *Weber*, 2026 WL 118807 at *18 ("Because the DOJ has not fulfilled its requirements under the Privacy Act, it cannot collect the sensitive, unredacted voting records of millions of Californians."). DOJ's CRA demand fails to comply with the Privacy Act as a matter of law.

## CONCLUSION

Intervenors respectfully request that the Court dismiss the complaint under Rule 12(b)(6).

March 2, 2026                                  Respectfully submitted,

                                               /s/ Mark M. Billion #5263
Elisabeth C. Frost*                            Mark M. Billion
Jacob D. Shelly*                               **BILLION LAW**
Kevin R. Kowalewski*                           20184 Coastal Hwy. Suite 205
James J. Pinchak*                              Rehoboth Beach, DE 19971
**ELIAS LAW GROUP LLP**                        Tel: (302) 428-9400
250 Massachusetts Ave. NW, Suite 400           markbillion@billionlaw.com
Washington, DC 20001
Tel: (202) 968-4490                            *Attorneys for Intervenors*
efrost@elias.law                               *Bethany Jennings and Gemma Lowery*
jshelly@elias.law
kkowalewski@elias.law
jpinchak@elias.law

* Appearing *pro hac vice*