**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

UNITED STATES OF AMERICA,

                *Plaintiff*,

  v.

ANTHONY ALBENCE, in his official
capacity as State Election Commissioner of
the State of Delaware,

             *Defendant*.

C.A. No. 25-cv-01453-RGA

**LATIN AMERICAN COMMUNITY CENTER, LA ESPERANZA, DELAWARE
COALITION AGAINST DOMESTIC VIOLENCE, AND JOSE MATTHEWS'
MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO
<u>DEFENDANT'S AND INTERVENORS' MOTIONS TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.   The United States Failed to State a Claim Under the Civil Rights Act. ........................ 2

        A.  The Federal Rules Apply to this Action and the CRA Does Not
            Eliminate the United States' Obligation to State a Claim in Its
            Complaint........................................................................................................ 2

        B.  The United States Failed to Meet the CRA's Statutory Requirements to
            State the Basis and Purpose of Its Requests........................................................ 4

        C.  Even If the United States Had Set Out an Adequate Basis and Purpose
            For Its Demand, It Seeks Records Beyond the Scope of Title III..................... 7

    II.  The United States Failed to Plead Compliance with Applicable Privacy Laws. .......... 9

CONCLUSION.............................................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Cases**

*American Federation of State, County & Municipal Employees, AFL-CIO v. Social Security Administration*,
No. 1:25-cv-596-ELH, D.I. No. 197 (D. Md. January 16, 2026) ........................................... 10

*Becker v. United States*,
451 U.S. 1306 (1981) .......................................................................................................... 4

*Buckley v. American Constitutional Law Foundation, Inc.*,
525 U.S. 182, 195 (1999) .................................................................................................. 10

*Coalition for Open Democracy v. Scanlan*,
No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) .......................................... 9

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .................................................................................... 2, 3, 5

*Rutan v. Republican Party of Illinois*,
497 U.S. 62 (1990) ............................................................................................................ 10

*United States v. Benson*,
No. 1:25-cv-1148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. February 10, 2026) .......... 2, 7, 8

*United States v. Oregon*,
No. 6:25-cv-1666-MTK, 2026 WL 318402 (D. Or. February 5, 2026) ......................... passim

*United States v. Powell*,
379 U.S. 48 (1964) .............................................................................................................. 3

*United States v. Weber*,
No. 2:25-CV-9149-DOC-ADS, 2026 WL 118807 (C.D. Cal. January 15, 2026) ........... passim

**Statutes**

26 U.S.C. § 7605(b) ................................................................................................................ 3

5 U.S.C. § 552a ..................................................................................................................... 10

52 U.S.C. § 20501 ................................................................................................................... 8

52 U.S.C. § 20701 ........................................................................................................... 3, 7, 8

52 U.S.C. § 20703 ........................................................................................................... 1, 4, 8

52 U.S.C. § 20705 ............................................................................................................... 3, 4

**Other Authorities**

*Basis*,
   Merriam-Webster, https://perma.cc/2CDG-7WU5 ..................................................... 5

Federal Rules of Civil Procedure ................................................................................... 4

Kyle Cheney,
   *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, Politico, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245 ....................................................................... 1

*Read Bondi's Letter to Minnesota's Governor*,
   reproduced in The New York Times, January 24, 2026,
   https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html. ................... 1

Reid Epstein & Nick Corasaniti,
   *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*,
   New York Times, February 2, 2026,
   https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html ............... 1

**INTRODUCTION**

The United States fails to plausibly plead that the Attorney General set forth, in writing, "the basis and the purpose" of her demand for Delawareans' sensitive voter data, which is an elemental requirement of the Civil Rights Act of 1960 ("CRA" or "Title III"). 52 U.S.C. § 20703. In its opposition, rather than attempting to explain the basis and purpose for its demand, the United States instead insists that the CRA—a statute designed to protect the rights of voters—requires voters' sensitive personal data to be summarily turned over, without any procedural protections or judicial review. That position contravenes statutory text, congressional purpose, binding Supreme Court precedent, the Federal Rules of Civil Procedure, and common sense. And it is more alarming in light of extensive reporting regarding the United States' ongoing efforts to create an illegal national voter database through nationwide demands for states' unredacted voter files; as well as more recent developments, including admissions by the United States that it mishandled Americans' Social Security data;[1] President Trump openly calling for his party to take over and "nationalize" federal elections;[2] and public statements by Attorney General Bondi connecting the United States' similar demand for Minnesota's unredacted statewide voter file to the federal government's surge in immigration enforcement in Minnesota (rather than its stated purpose of investigating compliance with federal list maintenance requirements).[3]

District courts in California, Oregon, and Michigan have recently dismissed materially-

---

[1] Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, Politico, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245.

[2] Reid Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. Times, Feb. 2, 2026, https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

[3] *Read Bondi's Letter to Minnesota's Governor* [hereinafter "Bondi Letter"], reproduced in The New York Times, Jan. 24, 2026, https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.

identical complaints seeking those states' complete voter files without leave to replead. *See United States v. Weber*, No. 2:25-CV-9149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-1666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-cv-1148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). This Court should do the same.

**ARGUMENT**

**I.   The United States Failed to State a Claim Under the Civil Rights Act.**

   **A. The Federal Rules Apply to this Action and the CRA Does Not Eliminate the United States' Obligation to State a Claim in Its Complaint.**

The United States' main argument opposing dismissal is that federal actions brought under Title III of the CRA are summary affairs that do not allow courts to consider the legal sufficiency of the complaint. D.I. 57 at 2, 5–7; *see also* D.I. 56 at 1–9. The CRA says nothing of the sort, and binding precedent and the Federal Rules are to the contrary. "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 2026 WL 118807, at *8. The Federal Rules govern this proceeding—a traditional civil action that was chosen and initiated by the United States.

The CRA does not establish a special, abbreviated procedure that insulates the United States from ordinary judicial scrutiny, including dismissal under Rule 12(b). *See, e.g.*, *id.* ("Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures."). And as explained in Intervenors' opening brief, the United States' reliance on and continued invocation of *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), is misplaced. *See* Mem. of Law in Support of the Mot. to Dismiss ("MTD Br."), D.I. 41 at 16–20. Accordingly, nothing in Title III displaces the ordinary application of the Federal Rules to this action.

Binding precedent is in accord. Shortly after the enactment of Title III, the Supreme Court held, in a case regarding an administrative summons by the Internal Revenue Service ("IRS"), that

2

proceedings under the IRS's authority to compel production of records were governed by the Federal Rules and that the government bore the burden to establish the statutory requirements prior to enforcement. *See United States v. Powell*, 379 U.S. 48, 57–58 (1964). The IRS statute discussed in *Powell* is materially identical to Title III in relevant part. *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process to compel* such attendance, testimony, or production of books, papers, records, or other data."), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process to compel* the production of such record or paper.") (emphasis added). Thus, as the court in *United States v. Oregon* held, the "Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*." 2026 WL 318402, at *8; *see also Weber*, 2026 WL 118807, at *8 n.15 (explaining *Powell*'s holding "that courts should apply standard civil procedures in ensuring [statutory] prerequisites are satisfied under a similarly worded statute").

In *Powell*, the Supreme Court found that "the Federal Rules of Civil Procedure apply," because the statute at issue, § 7604(a) of the Internal Revenue Code ("IRC"), "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction." 379 U.S. at 58 n.18. Title III similarly contains no provision specifying alternate procedures beyond the Federal Rules. *See* 52 U.S.C. § 20701 *et seq.* And while the United States tries to distinguish *Powell* by arguing that the IRC contains a provision barring the IRS from subjecting taxpayers "to unnecessary examination or investigations," 26 U.S.C. § 7605(b), and that "no similar language limits the Attorney General's authority to compel records under the CRA," D.I. 56 at 4, this substantive prohibition has nothing to do with the "appropriate process" relevant to this inquiry,

3

52 U.S.C. § 20705. Moreover, Title III also contains substantive limitations, including on the type of records that may be demanded, *see infra* Section I.C, and, of key importance here, the requirement for a "statement of the basis and the purpose" that the Attorney General must provide with any demand under Title III, 52 U.S.C. § 20703.

*Powell* controls here,[4] and the "appropriate process" for judicial review of records requests under the CRA follows the Federal Rules, which "govern the procedure in *all* civil actions and proceedings in the United States district courts." 52 U.S.C. § 20705; Fed. R. Civ. P. 1 (emphasis added); *see also Weber*, 2026 WL 118807, at *8.

### B. The United States Failed to Meet the CRA's Statutory Requirements to State the Basis and Purpose of Its Requests.

The Court should dismiss the Complaint for failure to satisfy the CRA's statutory requirement for a statement of the basis and purpose for the United States's demand. 52 U.S.C. § 20703; *see, e.g.*, *Weber*, 2026 WL 118807 at *8, *9 (finding government failed to meet CRA's requirements). The United States barely addresses these arguments for dismissal, let alone refutes them. Instead, it invokes *Lynd* and other non-binding cases, asserting that Title III is a "special statutory proceeding" requiring only a minimal written statement. D.I. 56 at 1–9; *see also* D.I. 57 at 2, 7. Here, the United States' demand fails to meet the CRA's basis-and-purpose requirement for multiple independent reasons, none of which are adequately addressed by the United States in its briefs (even with a significant extension of its page limits).

---

[4] The United States also argues that "*Powell*'s reference to the Federal Rules of Civil Procedure applying to records demanded under the IRC was 'not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and adversary hearing, if requested, is made available.'" D.I. 56 at 5–6 (citing *Becker v. United States*, 451 U.S. 1306, 1308 (1981) (Rehnquist, J., in chambers)). First, *Becker* is the assessment of a single Justice and cannot overcome the controlling holdings of *Powell*. But, even accepting the substance of *Becker*, what the United States demands here goes much further, and does not even allow for "the rights of the party summoned" to be "protected," or for any kind of "adversary hearing." *See* D.I. 56 at 1–9.

4

*First*, the United States never articulated any basis in its initial demand letters to Delaware, *see* MTD Br., D.I. 41 at 1–4, and through this litigation has continually failed to set forth a clear and consistent basis for its demand, even in its most recent filings. Plaintiff claims in one instance that "[a]s stated in the [August 14, 2025] letter, the basis for the demand was Title III of the CRA"—a purported basis so broad, vague, and circular so as to render the statutory requirement meaningless. *See* D.I. 57 at 4. However, in a concurrent filing, Plaintiff included an entirely different but similarly vague description, merely noting that "[f]or the basis, the [August 14] letter cited the NVRA and HAVA," without further explanation. *See* D.I. 56 at 7. Title III's requirement for a statement of the basis and purpose is a "critical safeguard" against "fishing expedition[s]" to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law, *Weber*, 2026 WL 118807, at *9, and in that light, the United States' shifting purported basis is both revealing and alarming.

The "basis" for a CRA request is a statement of why the United States believes there may be some relevant violation of law. *See Lynd*, 306 F.2d at 229 n.6; *accord Weber*, 2026 WL 118807, at *9–10 (explaining that the "basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law"); *see also Basis*, Merriam-Webster, https://perma.cc/2CDG-7WU5 ("something on which something else is established or based"). To date, the United States has not articulated any basis whatsoever for why the United States believes Delaware's list maintenance procedures might violate the NVRA or HAVA, and this is sufficient grounds for dismissal of this action.

*Second*, the United States has failed to plead that it adequately set forth "the purpose" of its request. *See Lynd*, 306 F.2d at 229 n.6 (showing that the "purpose" under Title III explains how the requested records would help determine if there is a relevant violation of law). Plaintiff asserts

5

that its purpose was to "ascertain Delaware's compliance with the list maintenance requirements of the NVRA and HAVA." D.I. 57 at 4. But the United States still has not explained *why* Delaware's full and unredacted statewide voter file is necessary for this purported purpose. *See generally* D.I. 56, 57. And as described in Intervenors' opening brief, an electronic snapshot of Delaware's unredacted voter file is not necessary or suitable to that end. *See* MTD Br., D.I. 41 at 11–12. As the *Oregon* court noted: "If *any* purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function. The Court cannot read 'purpose' so broadly that it would 'sap the interpreted provision of all practical significance.'" 2026 WL 318402, at *9 (citation omitted). The United States' attempt to obscure these deficiencies fails.

*Third*, the CRA claim is separately subject to dismissal because the stated reason for requesting voters' personal data—ascertaining compliance with the NVRA and HAVA—is pretextual. Considering the same robust set of public reporting and documents presented in this case, the *Weber* court found that "[i]t appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database," and noted that the court "is not obliged to accept a contrived statement and purpose" in place of an accurate one. 2026 WL 118807, at *10. Plaintiff attempts to cursorily dismiss these public documents altogether as "third-party hearsay" without addressing any of these reports or documents, including statements by the Attorney General herself discussing similar requests for statewide voter files in the context of immigration (rather than voter list maintenance) enforcement, MTD Br., D.I. 41 at 7–8,[5] and agreements executed by the DOJ with terms that

---

[5] *See also Oregon*, 2026 WL 318402, at *11 ("The context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data.").

contravene, rather than enforce, the NVRA and HAVA, *see id.* at 13.[6]

The United States' suggestion that the Court must ignore the government's own statements and admissions about what it is doing, accept a flimsy, conclusory pretext instead, and then grant summary relief on that basis in violation of the Federal Rules is an affront to the rule of law, the role of the judiciary, and the intelligence and rights of the American public. "Congress passed the NVRA, Civil Rights Act, and HAVA to protect voting rights. If the DOJ wants to instead use these statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose." *Weber*, 2026 WL 118807, at \*12. And as the *Oregon* court found, in these circumstances, the "presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." 2026 WL 318402, at \*11.

## C. Even If the United States Had Set Out an Adequate Basis and Purpose For Its Demand, It Seeks Records Beyond the Scope of Title III.

Even had the United States provided a sufficient statement of basis and purpose, as Plaintiff acknowledges, a district court in an analogous case in Michigan recently dismissed a similar lawsuit seeking Michigan's unredacted statewide voter file on yet another ground. *See Benson*, 2026 WL 362789, at \*9–10; *see also* D.I. 57 at 11–15.

Section 301 of the CRA requires elections officials to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. And Section 303 only obligates officials to turn over "[a]ny record or paper required by [Section 301] to be retained and preserved by [Section

---

[6] The United States acknowledges that it "offered several states a memorandum of understanding, or MOU" relating to its demands for statewide voter files, D.I. 57 at 17 n.7, but did not address how this MOU conflicts with the very statutes it purports to enforce, the NVRA and HAVA.

301]," *id.* § 20703, that is, records that have "come into [their] possession," *id.* § 20701. As held by *Benson*, the phrase "come into . . . possession," refers to records that elections officials obtain, rather than those they create. 2026 WL 362789, at *9 ("Congress frequently uses the phrase 'come into possession' to refer to items that a person *obtains* rather than *creates*." (emphasis in original) (compiling statutes)). As *Benson* noted, a statewide voter registration file is a live, continuously updated document *created* by state officials—so it is not a record or paper "which come[s] into [election officials'] possession." 52 U.S.C. § 20701; *Benson*, 2026 WL 362789, at *10. Per *Benson*, the United States' analogous request in Delaware would also fall outside the scope of Title III, and its demand would fail as a matter of law. 2026 WL 362789, at *9–10.

The United States argues against *Benson*'s interpretation, noting that courts have "rejected similar attempts to limit the scope of voting records under other statutes" like the NVRA. D.I. 57 at 12. But the relevant language at issue in Title III of the CRA—"all records and papers *which come into [their] possession*"—is not found in the NVRA, so those cases are inapposite. *Compare* 52 U.S.C. § 20701 (emphasis added), *with* 52 U.S.C. § 20501 *et seq.* And while the United States asserts that "the Attorney General needs to examine both applications to register to vote *and* the final voting rolls, including the electronic SVRL, so as to assure herself that the applications are being properly processed and that reasonable list maintenance efforts have been practiced," D.I. 57 at 15, as the *Benson* court explained, given the history of Title III and the specific concern about the destruction of documents submitted by Black voter registration applicants, "the distinction between applications and a voter list is perfectly logical: a voter application can be examined to determine whether it was unlawfully rejected, whereas a list of those who *successfully* registered to vote would be little help in such an investigation." *Benson*, 2026 WL 362789, at *9–10. The reasoning from *Benson* supplies another independent basis for dismissal.

8

**II.      The United States Failed to Plead Compliance with Applicable Privacy Laws.**

The Complaint is separately deficient because the United States seeks the unredacted voter file with Delawareans' sensitive personal information with no provision for redactions or modifications to safeguard privacy rights and comply with relevant laws. Here too, the United States largely misrepresents the substance. For example, it points to a New Hampshire case involving private parties challenging a state law requiring new forms of proof of citizenship to register to vote (i.e., a case nothing like this one) and asserts based on the course of discovery in that litigation that "private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights." D.I. 57 at 18. But the New Hampshire case proves Intervenors' point. There, the New Hampshire voter file that was produced (which was extremely relevant to determining the impact of the challenged registration restriction) did *not* include sensitive information like Social Security numbers or driver's license numbers, and was produced in discovery subject to severe restrictions, including a scrupulous protective order that designated the voter file as "highly confidential," restricted its use to the present litigation, restricted viewing to only a tight circle of designated personnel using "air-gapped computers," and mandated destruction of the data after the case is closed. *See* Ex. A, Protective Order, D.I. 87, at 4, 13–17, *Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025); Ex. B, Sched. A to Protective Order, D.I. 87-1, at 2–3, *Coal. for Open Democracy v. Scanlan*, 2025 WL 1503937.

The United States, by contrast, seeks the full and unredacted Delaware voter file—with all voters' personal information, including Social Security numbers and driver's license numbers—subject to zero restrictions except its own assurances that it will comply with federal privacy rules, despite its previous failures to comply with such requirements. *See, e.g.*, D.I. 57 at 4, n.2; Notice of Corrections to the Record at 5–6, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc.*

*Sec. Admin.*, No. 1:25-cv-596-ELH, D.I. No. 197 (D. Md. Jan. 16, 2026) (admitting, in a filing by DOJ itself, that federal actors recently shared unknown amounts of Social Security data on an unapproved third-party server, in a "manner [that] is outside SSA's security protocols."). As the *Oregon* court recognized: "When Plaintiff, in this case, conveys assurances that any private and sensitive data will remain private and used only for a declared and limited purpose, it must be thoroughly scrutinized and squared with its open and public statements to the contrary." 2026 WL 318402, at *11.

Moreover, the United States' assurances would not prevent the Privacy Act violation of maintaining records "describing how any individual exercises rights guaranteed by the First Amendment," like voting and registering to vote, 5 U.S.C. § 552a(e)(7); MTD Br., D.I. 41, at 13; *see also id.* at §§ 552a(a)(3), (a)(5), (e)(4), (f). This alone is grounds for dismissal. *See Weber*, 2026 WL 118807, at *17 ("The Privacy Act bars DOJ's request for California's unredacted voter roll because fulfillment of that request would include information regarding previous election participation and party affiliation[,] . . . types of political expression protected by the First Amendment." (citing *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999), and *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75–76 (1990)).

The United States has failed to plead its entitlement to the sensitive personal data of hundreds of thousands of Delaware voters. Its transparent misuse of civil rights laws as a pretext should be rejected.

## CONCLUSION

For all these reasons, the United States' Motion to Compel should be denied and the Complaint dismissed.

10

Dated: March 2, 2026

Theresa J. Lee*
Jonathan Topaz*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
jtopaz@aclu.org
slakin@aclu.org

Patricia J. Yan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20001
(202) 457-0800
pyan@aclu.org

Respectfully submitted,

/s/ Andrew Bernstein
Andrew Bernstein (#7161)
100 W. 10th St. #706
Wilmington, DE 19801
Phone: (302) 551-6809 Ext. 119
Email: abernstein@aclu-de.org

*Attorneys for Intervenors Latin American
Community Center, La Esperanza, Delaware
Coalition Against Domestic Violence, and Jose
Matthews*

*Admitted pro hac vice*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record on March 2, 2026, and will be served on Defendant in accordance with Federal Rule of Civil Procedure 5(a).

/s/ Andrew Bernstein
Andrew Bernstein

12