# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-01453- |
| | ) | RGA |
| ANTHONY ALBENCE, in his official capacity as State Election Commissioner of the State of Delaware, | ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)
Director of Impact Litigation
Emily V. Burton (DE Bar No. 5142)
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, DE 19801
Tel.: (302) 683-8875
ian.liston@delaware.gov
*Counsel for Defendant*

Date: March 2, 2026

**TABLE OF CONTENTS**

I. DOJ'S ARGUMENTS DO NOT SAVE ITS CRA CLAIM. .................................................. 1
   A. The Federal Rules Apply to this Case and Permit Dismissal Under Rule 12(b)(6). .......... 1
   B. The United States' CRA Claim Fails. ................................................................................ 3
      1. DOJ Has Stated No "Basis" and an Inadequate "Purpose" for Its Demand. .................. 3
      2. The Current VRL Does Not Fall Within the Scope of the CRA. ................................... 5
      3. No Law Requires Delaware's Electronic Transfer of an Unredacted VRL .................... 7
      4. DOJ Has Made No Argument Regarding Preemption of Delaware Law. ...................... 8
II. DOJ HAS NO ANSWER FOR THE APPARENT PRIVACY VIOLATIONS THAT WOULD RESULT FROM COMPLIANCE WITH ITS DEMAND. ................................... 8
III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen.*, 285 F.2d 430 (5th Cir. 1961) .................................................................. 4, 5

*Am. Civil Rights Union v. Phila. City Cmm'rs*, 872 F.3d 175 (3d Cir. 2017) ............................... 5

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ..................................................... 8

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ......................................................................... 5

*Chao v. Cmty. Tr. Co.*, 474 F.3d 75 (3d Cir. 2007) ....................................................................... 2

*EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017), *aff'd on other grounds*, 878 F.3d 371 (D.C. Cir. 2017) ............................................... 10

*F.D.I.C. v. Wentz*, 55 F.3d 905 (3d Cir. 1995) .............................................................................. 2

*Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010) .......................................................................... 8

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) ..................................................................... 4

*Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) ................................................. 7

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ...................................................................... 3, 4

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ..................................................................... 3, 4, 5

*Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127 (3d Cir. 2018) ............................................. 9

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) .............................................. 7

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ..................................... 7

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ........................................................................... 2

*Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004) ................................................................. 3

*United States v. Adair*, 38 F.4th 341 (3d Cir. 2022) ..................................................................... 3

*United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed* No. 26-1225 (6th Cir. Feb. 27, 2026) ............................................................ 1, 2, 6

*United States v. Clarke*, 573 U.S. 248 (2014) ............................................................................... 2

*United States v. Powell*, 379 U.S. 48 (1964) ................................................................................. 2

*United States v. State of Oregon,* No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) (notice of appeal filed Feb. 25, 2026) ................................................................................ passim

*United States v. Weber,* No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) (notice of appeal filed Feb. 25, 2026) ................................................................................ passim

**Statutes**

18 U.S.C. § 2721 ............................................................................................................................ 10

5 U.S.C. § 552a ........................................................................................................................... 7, 9

5 U.S.C. § 552a note ....................................................................................................................... 7

52 U.S.C. § 20507 ...................................................................................................................... 4, 7

52 U.S.C. § 20701 .......................................................................................................................... 5

52 U.S.C. § 20701 *et seq.* .............................................................................................................. 1

52 U.S.C. § 20703 ...................................................................................................................... 3, 7

52 U.S.C. § 20704 ............................................................................................................... 6
52 U.S.C. § 20705 ............................................................................................................... 1
52 U.S.C. § 21083 ............................................................................................................... 4
Civil Rights Act of 1957, Pub. L. No. 85-315, 71 Stat. 634 ............................................... 4
E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 ................................... 10

## Other Authorities

Fed. R. Civ. P. 1 .................................................................................................................. 1
Fed. R. Civ. P. 3 .................................................................................................................. 1
Fed. R. Civ. P. 81 ................................................................................................................ 1

This Court should grant Defendant's Motion to Dismiss (D.I. 33) because DOJ cannot use Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq.*, to force Delaware to electronically transfer its unredacted VRL to DOJ so that DOJ can "analyze" the VRL for NVRA and HAVA compliance. DOJ's claim fails under both the CRA and federal and state privacy laws. Indeed, all three federal courts that have examined the merits of similar demands by DOJ for other states' VRLs have dismissed DOJ's claims. *See United States v. Weber,* No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) (notice of appeal filed Feb. 25, 2026); *United States v. State of Oregon,* No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) (notice of appeal filed Feb. 25, 2026); *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed* No. 26-1225 (6th Cir. Feb. 27, 2026).

Delaware respectfully requests that this Court apply the Federal Rules of Civil Procedure, test DOJ's claims against relevant authority, and dismiss the Complaint (D.I. 1), rather than accept DOJ's attempt to relegate this Court's role to that of a rubber stamp.

I.     **DOJ'S ARGUMENTS DO NOT SAVE ITS CRA CLAIM.**

   A.  **The Federal Rules Apply to this Case and Permit Dismissal Under Rule 12(b)(6).**

DOJ asserts that the Federal Rules of Civil Procedure do not apply to this case. D.I. 57, at 2, 5. It offers little argument and less authority for its position. To be clear, the Federal Rules apply.

DOJ commenced this case as a "civil action" under Rule 3 "by filing a complaint with the court." Fed. R. Civ. P. 3. The Federal Rules govern "in all civil actions and proceedings . . . except as stated in Rule 81." Fed. R. Civ. P. 1. None of the exceptions stated in Rule 81 are relevant here. Fed. R. Civ. P. 81(a). DOJ does not argue otherwise. D.I. 57, at 2, 5.

The CRA itself supports this conclusion. It states that this Court has "jurisdiction *by appropriate process* to compel the production" of records covered under 52 U.S.C. § 20701 for which DOJ has made the required demand under Section 20703. *See id.* § 20705 (emphasis added).

Neither the CRA nor any local rule instructs this Court to jettison the Federal Rules, and the CRA identifies no other "appropriate process" to follow. This Court should follow the approach of other courts: examine the Complaint and dismiss for failure to state a claim. *See Weber*, 2026 WL 118807, at *6-12, *17-20; *Oregon*, 2026 WL 318402, at *5, *7-13; *Benson*, 2026 WL 362789, at *2, *6-11. Nothing "precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendant's alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 2026 WL 318402, at *8.

Supreme Court and Third Circuit precedent confirm that, where parties seek judicial enforcement of statutory demands, a court may not permit its process to be abused and should ensure the propriety of the demand when challenged. *See United States v. Powell*, 379 U.S. 48, 57-58 & 58 n.18 (1964); *United States v. Clarke*, 573 U.S. 248, 249, 254-55 (2014); *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995); *Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 79 (3d Cir. 2007). DOJ includes no Third Circuit case law on this or any other point in its Opposition. There is no sound basis for this Court to adopt DOJ's elision of process.

Even if the non-substantive *Lynd* inquiry advocated by DOJ applied, D.I. 57, at 2 (citing *Kennedy v. Lynd*, 306 F.2d 222, 225-26 (5th Cir. 1962)), DOJ fails its own test. As explained below, DOJ did not state a "basis and purpose" for its Demand consistent with the CRA, did not demand CRA-covered records, and did not seek "inspection, reproduction, and copying" at

Defendant's office, all of which distinguish this case from *Lynd*. *See* 306 F.2d at 228-29 & n.6.

### B. The United States' CRA Claim Fails.

DOJ repeatedly invokes the CRA, yet its Complaint fails to satisfy the CRA's requirements.

#### 1. DOJ Has Stated No "Basis" and an Inadequate "Purpose" for Its Demand.

A written demand under the CRA "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Defendant's Motion explained that stating a basis and stating a purpose are distinct requirements for a CRA demand, and that DOJ's Demand failed to identify any factual basis for its Demand. D.I. 34, at 12-13; *see Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004) (courts should give effect to all words of a statute); *United States v. Adair*, 38 F.4th 341, 351 (3d Cir. 2022) (use of a definite article most often seeks to identify a distinct person or thing); *Lynd*, 306 F.2d at 229 n.6 (stating the *factual* basis for the demand); *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same). For this reason, other courts have easily dismissed the United States' CRA claim. *See Weber*, 2026 WL 118807, at *9; *Oregon*, 2026 WL 318402, at *8-9. DOJ's Opposition offers no response to this authority. D.I. 57.

Delaware argued that DOJ's Complaint must be dismissed because its Demand did not state its basis. D.I. 34, at 2, 12-13. In its factual recitation, DOJ writes that "the basis for the demand was Title III of the CRA." D.I. 57, at 4. But this is the *statutory authority*, not the *factual basis*, for the Demand. DOJ's Opposition offers no argument with respect to how its position as to statutory authority satisfies the CRA's requirement that a demand identify a factual basis.

DOJ's Opposition (D.I. 57) also shows that the Demand lacks a purpose consistent with the CRA or DOJ's statutory authority under the NVRA or HAVA. *See* D.I. 34, at 13-15. DOJ argues that a CRA demand need not relate to race discrimination in voting. D.I. 57, at 6-7. But Title III of the CRA was enacted to enforce the 1957 Civil Rights Act and its protections *against*

3

*race discrimination in voting. See Lynd*, 306 F.2d at 227-28, 230 (citing 42 U.S.C. § 1971); Civil Rights Act of 1957, Pub. L. No. 85-315, 71 Stat. 634. The CRA is an investigative tool for discriminatory denials of the right to vote, *see* D.I. 34, at 5, 13-14, as DOJ acknowledges. D.I. 57, at 15. It follows, therefore, that early CRA cases were about race discrimination, and any broad language in those cases was in the context of, and involved demands relating to, race discrimination in voting. *See, e.g.*, *Lynd*, 306 F.2d at 225, 227-30; *Bruce*, 298 F.2d at 861-62; *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853-54 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen.*, 285 F.2d 430 (5th Cir. 1961); *In re Coleman*, 208 F. Supp. 199, 199-201 (S.D. Miss. 1962). The CRA does not invite fishing expeditions under the NVRA and HAVA, and those statutes do not support such endeavors.[1]

Similarly, Defendant's Motion explained that DOJ's stated purpose does not support its Demand, because DOJ does not need the unredacted VRL to ensure that Delaware has implemented "a general program that makes a reasonable effort" to remove ineligible voters consistent with the NVRA, 52 U.S.C. § 20507(a)(4), or established a program consistent with the NVRA's safe-harbor provision, *see id.* § 20507(c)(1). D.I. 34, at 3, 14-15; *see also* 52 U.S.C. § 21083(a)(4)(A) (stating HAVA's "reasonable effort" requirement and referencing the NVRA's safeguards). Sensitive VRL data that state law protects from disclosure may enable *Delaware* to maintain its list, but it is not needed for *DOJ* to assess Delaware's compliance with the NVRA and HAVA. *See Weber*, 2026 WL 118807, at *9; *Oregon*, 2026 WL 318402, at *10-12.

DOJ's response that it requires the VRL to independently test voter eligibility, D.I. 57, at 15, is unavailing where Defendant's Motion demonstrated that neither the NVRA nor HAVA

---

[1] Far from justifying DOJ's CRA Demand here, DOJ's recent HAVA enforcement action against North Carolina demonstrates only that DOJ is able to ensure compliance with federal law *without* resorting to the CRA. *See* D.I. 57, at 8 n.3.

authorizes DOJ to conduct its own list-maintenance activities on Delaware's VRL. D.I. 34, at 15. The statutes also do not require or permit Delaware to automatically remove every potentially ineligible voter from its VRL. D.I. 34, at 15 (citing *Bellitto v. Snipes*, 935 F.3d 1192, 1200, 1205 (11th Cir. 2019), and *Am. Civil Rights Union v. Phila. City Cmm'rs*, 872 F.3d 175, 182-84 (3d Cir. 2017)). DOJ can ensure Delaware's compliance with federal law by evaluating its list-maintenance procedures, reviewing reports that Delaware generates, and working with Delaware to address any specific concerns. Accordingly, the Complaint fails the basis-and-purpose requirement and should be dismissed. *See Weber*, 2026 WL 118807, at *8-10; *Oregon*, 2026 WL 318402, at *8-10.

        2.       The Current VRL Does Not Fall Within the Scope of the CRA.

The CRA claim additionally fails because the record DOJ seeks—Delaware's current VRL—is not covered by the CRA. The plain language of Title III makes clear that the CRA covers records "relating to . . . registration . . . or other act[s] requisite to voting in" a specific *prior* election, as evidenced by the requirement that election officials retain and preserve such records "for a period of twenty-two months *from the date of* . . . such election." 52 U.S.C. § 20701 (emphasis added). The *Gallion* court explained that Title III's scope was "clear and unambiguous" in that "records . . . must be retained and preserved for a period of twenty-two months from the date of any [federal election] . . . *if* they relate to acts requisite to voting *in such election*." *Gallion,* 187 F. Supp. at 855 (emphases added) (cleaned up). In other words, a record is only covered under Title III if it relates to a specific federal election, with the date of the election used to calculate the preservation period. *See Lynd*, 306 F.2d at 231 n.1 ("The time and the nature of the elections are tied together."). DOJ largely ignores this requirement, failing to even argue that its Demand relates to a federal election within the last 22 months (or any election for that matter). As noted in the Motion, Delaware's *current* VRL—a dynamic record that changes daily—does not meet this criteria. D.I. 34, at 15-16.

5

DOJ acknowledges that "the 22-month qualification describes the time required for preservation," but then inexplicably asserts that this qualification has no relation to "the specific election to which any records request applies." D.I. 57, at 14 n.5. DOJ cites no authority for this position. Thus, the claim here fails another CRA requirement.

Rather than responding to Delaware's arguments, DOJ dedicates several pages of its opposition brief to refuting the *Benson* court's reasons for denying DOJ's demand for Michigan's VRL. D.I. 57, at 11-15 (citing *Benson*, 2026 WL 362789). DOJ acknowledges that these arguments were "not raised by [Delaware]," D.I. 57, at 11, and this Court need not reach them to dismiss the Complaint. This Court should not rely on *Benson* and its analysis of the CRA for reasons Defendant has already explained regarding the scope of the CRA. *See* D.I. 34, at 5-6, 11-17. In any event, *Benson* ultimately dismissed DOJ's claim upon holding DOJ was not entitled to the information it sought. *See Benson,* 2026 WL 362789, at *9-11. The important takeaway is that *no federal court has permitted DOJ access to unredacted VRLs when disputed under the CRA.*[2]

---

[2] DOJ points to negotiated agreements with Georgia and Texas from over 15 years ago to try to legitimize its current Demand for Delaware's VRL. D.I. 57, at 15 & n.6; *see* D.I. 58-1, at 1 (stating that Texas and DOJ had "engaged in good faith negotiations"); D.I. 58-3, at 2 (same for Georgia). Those negotiations resulted in agreements that included protections beyond those the CRA affords. For example, they provided for the destruction of data, did not permit disclosures to other "governmental agencies," *see* 52 U.S.C. § 20704, and, as to the Texas agreement, required notice and "the opportunity to take whatever action . . . necessary to ensure that [the VRL] remain[ed] confidential and [wa]s not disclosed to the public" if DOJ "receive[d] a request to provide or disclose [the VRL] to *anyone outside of DOJ*." D.I. 58-1, at 2 (emphasis added); D.I. 58-3, at 3-4. Further, those agreements were made under materially different factual circumstances, where there is evidence today that DOJ intends to run states' VRLs through DHS's SAVE Program. *See* Letter from David P. Cook, Gen. Counsel, Office of the West Virgina Sec'y of State, to Eric Neff, Acting Chief, DOJ Voting Section (Feb. 11, 2026), https://perma.cc/J3ZF-MFKC ("Based on recent verbal communications with your office, the alleged purpose of the DOJ's request is to run West Virginia's entire [VRL] through [SAVE]."); Email from Maureen S. Riordan, Acting Chief, DOJ Voting Section, to Austin James, Chief Legal Counsel, Montana Dir. of Elections (July 14, 2025), https://perma.cc/RHB6-MJFR (seeking the state's VRL to "facilitate a review for noncitizens and dead voters via DHS").

6

In the absence of any authority establishing that Delaware's current VRL is a record covered under Title III of the CRA, DOJ turns to inapposite NVRA cases. *See* D.I. 57, at 12. All three of these cases involved advocacy organizations that sought records under Section 8(i) of the NVRA. *See Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) (concerning only voter registration applications, not a VRL). Unlike Title III, Section 8(i) of the NVRA refers to "official lists of eligible voters" and does not limit applicable records to a specific federal election. 52 U.S.C. § 20507(i)(1). DOJ chose not to base its Demand on Section 8(i). In any event, NVRA public-disclosure cases have not ordered the release of sensitive voter information even where they have found that VRLs are subject to disclosure under the NVRA. *See, e.g.*, *Kemp*, 208 F. Supp. at 1344; *see also* D.I. 34, at 4 (collecting cases).

3. <u>No Law Requires Delaware's Electronic Transfer of an Unredacted VRL.</u>

Finally, 52 U.S.C. § 20703 permits "inspection, reproduction, and copying" of covered records *at Defendant's principal office*. D.I. 34, at 16. DOJ's Opposition resorts to the CRA's confidentiality provision, 52 U.S.C. § 20704, to argue that the CRA requires Delaware to electronically transfer its unredacted VRL. D.I. 57, at 16-17. DOJ fails to address both the statutory text of the CRA and Delaware's argument that any present-day use of the CRA must be read against the backdrop of the Privacy Act, 5 U.S.C. § 552a, and Congress's growing concern about computerized information and the unnecessary collection of individualized records, *id.* § 552a note. *See* D.I. 34, at 16-17.[3] And as already explained with respect to DOJ's asserted purpose for its

---

[3] DOJ claims that it has "offered several states a memorandum of understanding" (MOU) "to address any reasonable privacy concerns," and that two states have agreed to provide their VRLs under the MOU. D.I. 57, at 17 n.7. But DOJ did not offer any MOU to Delaware, and news reports indicate six states refused to enter into the MOU, including three states—Mississippi,

7

Demand, DOJ does not need to take possession and control of Delaware's unredacted VRL to assess Delaware's compliance with federal law. *See* pp. 4-5, *supra*.[4]

          4.      <u>DOJ Has Made No Argument Regarding Preemption of Delaware Law.</u>

DOJ's Opposition offers no response to Delaware's argument in its Motion that Delaware's statutory prohibition on the disclosure of sensitive voter information bounds the scope of Delaware's response to DOJ's Demand. *See* D.I. 34, at 4, 20 (citing cases holding that states may omit sensitive information when producing records under the NVRA). Nor could DOJ make such a showing where DOJ can assess the reasonableness of Delaware's list-maintenance efforts based on other information and Congress has not authorized DOJ to conduct list-maintenance activities. *See Farina v. Nokia Inc.*, 625 F.3d 97, 115-16 (3d Cir. 2010) (explaining conflict preemption); *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013) (explaining preemption under the Elections Clause); *Oregon*, 2026 WL 318402, at *12 (finding no preemption).

## II. DOJ HAS NO ANSWER FOR THE APPARENT PRIVACY VIOLATIONS THAT WOULD RESULT FROM COMPLIANCE WITH ITS DEMAND.

DOJ cannot avoid the privacy violations that would result from compliance with its Demand for sensitive data on over 95% of Delaware's voting-age citizens and has no answer for

---

South Dakota, and Tennessee—that provided their VRL but raised unresolved concerns that the MOU would violate the NVRA. *See, e.g.*, Blake Troli, *Exclusive: South Dakota Secretary of State responds to DNC concerns over sharing of voter information with DOJ*, Kota Territory (Jan. 21, 2026), https://perma.cc/CV88-Y4XS.

[4] There are multiple critical distinctions between DOJ's Demand and Delaware's voluntary participation in ERIC. *See* D.I. 57, at 18. First, data provided to ERIC is hashed, encrypted, and stored on non-internet-connected servers. No party—including ERIC and its members—can access voters' sensitive information using the hashed data. *See* ERIC, Technology & Security Overview, https://ericstates.org/security/. Unlike ERIC, it appears that DOJ would store Delaware's VRL on a cloud-hosted system with inevitable vulnerabilities. *See* D.I. 57, at 22-23 & nn.11-12. Second, ERIC's usage of the hashed data is subject to strict limits, while DOJ apparently intends to use VRLs for multiple purposes. *See* note 2, *supra*. Third, Delaware has an oversight role with respect to ERIC data but lacks any such role with respect to DOJ. *See* ERIC, Technology & Security Overview, https://ericstates.org/security/.

the central problem Defendant identified: there is no basis for DOJ's collection of this information and federal law counsels against its compilation. Instead, DOJ points to its System of Records Notice ("SORN") and makes assertions outside the Complaint regarding the maintenance, use, and security of its files. D.I. 57, at 19-24 & nn.10-12. Because the privacy violations are "apparent on the face of the complaint and documents relied on in the complaint," dismissal is appropriate. *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (citation modified); *see Weber*, 2026 WL 118807, at *17-19 (dismissing under the CRA and for federal privacy violations).

DOJ has no response to Delaware's concerns about violations of the **Privacy Act**. DOJ completely ignores the Privacy Act's requirement that federal agencies maintain only such information about an individual as relevant and necessary to accomplish a lawfully authorized purpose. *See* 5 U.S.C. § 552a(e)(1). DOJ downplays the Act's important prohibition on collecting information related to an individual's exercise of First Amendment rights, *id.* § 552a(e)(7), and does not even try to furnish a factual basis for amassing registrants' political affiliation or voter history or to demonstrate their relevance to assessing Delaware's NVRA and HAVA compliance. *Compare* D.I. 57, at 21-22, *with* D.I. 34, at 18 (citing cases stating that a relevancy standard applies and a factual showing is required). Finally, DOJ ignores that its SORN lacks the required notice to Congress and the public, even more important here, where DOJ plans to maintain individual information in general Civil Rights Division files based only on individuals' right to register to vote. *See* D.I. 34, at 18-19; *Weber*, 2026 WL 118807, at *18.

DOJ's Demand also violates the **E-Government Act**. DOJ argues that the Act does not apply because it "is not initiating a new process" of "contacting individuals for information," but rather collecting Delaware's VRL. D.I. 57, at 22. Yet taking individual voter information from Delaware remains "a new collection of information" *by the federal government* that "permit[s] the

9

physical or online contacting of a specific individual." *See* E-Government Act of 2002, Pub. L. No. 107-347, § 208(b)(1)(A)(ii), 116 Stat. 2899, 2921-22. Regardless of whatever information DOJ may uncover through discovery and subject to a protective order in an enforcement action, *cf.* D.I. 57, at 23, its separate effort to collect almost a million Delawareans' voter records to assure itself of *no federal violation* implicates Section 208. Further, *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017), *aff'd on other grounds*, 878 F.3d 371 (D.C. Cir. 2017), does not undermine Defendant's position, but makes precisely Defendant's point: The E-Government Act "is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information." D.I. 57, at 23-24 (quoting *EPIC*, 878 F.3d at 378). The privacy assessment is necessary *before* any collection, not when it is too late to unring the bell.[5]

Finally, as to the **Driver's Privacy Protection Act**, simply because Delaware "may" provide DOJ with information obtained through motor vehicle records, 18 U.S.C. § 2721(b)(1), (4), without incurring liability under the Act does not mean Delaware *must* provide such data, and certainly not where there is no plausible factual basis for DOJ's Demand or its relationship to statutorily authorized law enforcement activities. *See Weber*, 2026 WL 118807, at *19.

### III. CONCLUSION

For the foregoing reasons and those included in Defendant's Memorandum in Support of Motion to Dismiss (D.I. 34), this Court should grant Defendant's Motion to Dismiss (D.I. 33).

Respectfully submitted,

---

[5] DOJ's statement (D.I. 57, at 23 n.11) that that the Civil Rights Division's "JCON" network requires no privacy impact assessment is inconsistent with the Civil Division's contrary acknowledgment that its "JCON" network requires a privacy impact assessment because its case files include information in identifiable form. *See* Civil Div., Privacy Impact Assessment for [CIV-JCON] (Mar. 20, 2025), https://perma.cc/E6XZ-QANV.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

<u>*/s/ Ian R. Liston*</u>
Ian R. Liston (DE Bar No. 5507)
Director of Impact Litigation
Emily V. Burton (DE Bar No. 5142)
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, DE  19801
Tel.: (302) 683-8875
ian.liston@delaware.gov
*Counsel for Defendant*

11

12

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I filed the foregoing Defendant's Reply in Support of Motion to Dismiss electronically using this Court's CM/ECF system. All counsel of record are registered CM/ECF users and will be served electronically via the Court's CM/ECF system.

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)
